**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRYSTAL SANCHEZ,<br><br>                              Plaintiff,<br><br>v.<br><br>SANTANDER BANK, N.A., a subsidiary of Santander Holdings USA, Inc,;<br>GHOUS AGHA; NADIA JOSEPH; KRISTEN RIMEK; JOHN & JANE DOE 1-10; XYZ CORPORATION (1-10),<br><br>                              Defendants. | Civil Action No.: 3:17-cv-05775 – PGS-DEA<br><br><br><u>Civil Action</u><br><br>**FIRST AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Crystal Sanchez, residing in the County of Middlesex, State of New Jersey, by way of this First Amended Complaint against Defendants Santander Bank, N.A., a subsidiary of Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, John Doe 1-10, and XYZ Corporations (1-10), hereby says:

## I.      IDENTIFICATION OF THE PARTIES

1.     Defendant Santander Bank, N.A., a subsidiary of Santander Holdings USA ("Santander") at all times relevant hereto, provides banking products and services, and operates 674 branch offices in various states throughout the United States including one located at 920 Route 9, South Amboy, New Jersey. The following is believed to accurately describe Santander:

> Santander Bank, N. A. provides banking products and services. It offers personal checking accounts, savings and money market accounts, certificates of deposit, online and mobile banking, overdrafts, lines of credit, loans, mortgages, investment services, insurance services, and credit cards; and business banking, including basic services, business cash management, business online banking, professional service banking, advanced services, international services, merchant services,

and small business borrowing; and corporate commercial banking, specialty banking, real estate banking, lending, international services, capital markets, and treasury management. The company was formerly known as Sovereign Bank, National Association and changed its name to Santander Bank, N. A. in October 2013. Santander Bank, N. A. operates as a subsidiary of Santander Holdings USA, Inc.

2. Defendant Ghous Agha ("Agha") is, at all times relevant hereto, employed by Santander as a bank teller at its branch located at 920 Route 9, South Amboy, New Jersey, and upon information and belief, resides in the State of New Jersey.

3. Defendant Nadia Joseph (Joseph") is, at all times relevant hereto, employed by Santander as a District Manager, and upon information and belief, resides in the State of New Jersey.

4. Defendant Kristen Rimek ("Rimek") is, at all times relevant hereto, employed by Santander as a Branch Manager at its branch located at 920 Route 9, South Amboy, New Jersey, and upon information and belief, resides in the State of New Jersey.

5. Defendants John and Jane Does (1-10) and XYZ Corporations (1-10) are fictitious names for any presently unknown person(s), corporation(s), partnership(s), business and/or entity who, at times relevant hereto, incited, aided and/or abetted Defendants Santander, Agha, Joseph and Rimek, jointly or severally, in the unlawful conduct Plaintiff Crystal Sanchez was subjected to as alleged in the paragraphs of this Complaint.

6. Plaintiff Crystal Sanchez ("Sanchez") is, at all relevant times, employed by Santander as a Branch Operations Manager at its branch located at 920 Route 9, South Amboy, New Jersey ("the branch").

## II.      GENERAL ALLEGATIONS

7.      In or about July - August 2014, Sanchez began working for Santander at its branch located at 920 Route 9, South Amboy, New Jersey as a Part Time Teller.

8.      In or about September or October 2014 Sanchez was promoted to Full Time with a pay decrease.

9.      In or about November 2014, the Branch Operations Manager quit so Sanchez began performing the duties of an Operations Manager while still being paid as a teller.

10.      In or about February 2016, Sanchez was promoted to Branch Operations Manager earning $14.81 per hour.

11.      Sanchez was a Branch Operations Manager for Santander from February 2016 until her employment with Santander ended on or about August 5, 2016.

## III.      ALLEGATIONS AS TO PLAINTIFF'S FLSA AND WAGE AND HOUR LAW VIOLATION CLAIMS

12.      Santander employ several different types of workers, including but not limited to, Branch Operations Managers, and other corporate employees.

13.      The job duties of a Branch Operations Manager include:
      (a) processing customer transactions;
      (b) count and balance cash vault;
      (c) inventory control and organizing incoming materials;
      (d) place work orders;
      (e) order and verify weekly cash shipment;
      (f) screen, prioritize and route incoming documents and calls; and
      (g) report production to the district executive.

14.   Plaintiff's duties as an Branch Operations Manager did not include hiring, firing, managing, or disciplining other employees.

15.   Plaintiff did not exercise a meaningful degree of independent discretion with respect to the exercise of her duties as a Branch Operations Manager.

16.   Plaintiff was not employed in an executive, administrative, or professional capacity by Defendant.

17.   Plaintiff was not an employee whose suggestions and recommendations as to the hiring or firing and as to the advancement of or any other change of status of other employees would be given any significant weight by Defendant.

18.   Thus, Plaintiff was a non-exempt employee throughout the period of her employment as a Branch Operations Manager who should have been paid by the Defendant for all time worked including overtime for hours worked in excess of 40 hours per week.

19.   Each of Santander's branches receives a scorecard rating the branch's performance.

20.   Soon after she was promoted to Branch Operations Manager, Sanchez was informed Santander's scorecard policy had changed.

21.   Sanchez was told the changing of the bank's scorecard meant her working overtime i.e., more than 40 hours per workweek, would no longer be permitted.

22.   Sanchez was also told that as Branch Operations Manager the bank's scorecard would be her responsibility and that if the score was not good it would affect her incentive pay and bonus.

23.   Sanchez requested the branch to hire more employees, or at least receive help from other branches, since it would not be possible to effectively operate the branch while at the same time avoiding working overtime with only two other persons in addition to herself who could perform the duties of a teller; one of whom was only a part time teller.

24.   Sanchez would send out emails to the District Manager asking for additional teller help for the branch only to be told that the other bank branches were understaffed as well.

25.   Because of the short staffing and the prohibition on working overtime, Sanchez felt compelled to work 10-12 hours per week off the clock, i.e., uncompensated, so that the branch would be able to effectively serve its customers.

26.   The Regional Operations Manager Stephanie Stone, Joseph, and Rimek were actually or constructively aware that Sanchez was working 10-12 hours per week uncompensated off the clock, and yet did nothing to change this unlawful and unfair circumstance.

27.   Consistent with Santander's policy, pattern and/or practice, Plaintiff regularly worked as an Branch Operations Manager in excess of 40 hours per workweek with each hour over 40 being unpaid and "off the clock" without pay, inclusive of not being paid a legally required overtime rate of 1.5 times her regular rate of compensation for the hours she worked in excess of 40 per workweek.

28.   Santander knew that failing to pay Plaintiff for hours worked in excess of 40 hours per week and failure to pay overtime pay would financially injure Plaintiff and similarly situated employees and violates the FLSA, and New Jersey state wage and hour laws.

29.   By their failure to act, Joseph, Rimek, and Santander approved, ratified, and otherwise condoned Sanchez working 10-12 hours per week uncompensated off the clock.

30.     Working 10-12 hours per week uncompensated and off the clock, has and continues to cause Sanchez significant financial loss and mental and emotional anguish.

## IV. ALLEGATIONS AS TO PLAINTIFF'S SEXUAL HARASSMENT CLAIM

31.     Towards the end of February 2016, Ghous Agha was hired as a bank teller.

32.     As Branch Operations Manager, Sanchez supervised Agha.

33.     After Agha began working for Santander, he subjected Sanchez to unwelcome sexually offensive and gender based behavior including, but not limited to, the following:

- Repeatedly offering to buy Sanchez food after she told him not to do so;
- Repeatedly making sexually offensive and unwelcome remarks about Sanchez's body including her legs, buttock, face, and petite shape;
- Offering to rub hot oil on Sanchez's body; and
- Being rude, annoying, disrespectful, and insubordinate towards Sanchez such as telling her she was "too serious" and should learn to have "fun," and telling customers how he hated Sanchez as his supervisor because he hates having to report to a female just a few years older than him.

34.     Sanchez reported Agha's sexually offensive and gender inappropriate behavior to Branch Manager Rimek.

35.     Because of Agha's sexually offensive and gender inappropriate behavior, Sanchez requested Rimek to put a stop to Agha's sexual harassment of her.

36.     Despite Sanchez requesting Rimek to take remedial action against Agha, Rimek did not.

37. Despite reporting Agha's unwelcome, sexually offensive and gender inappropriate behavior to Branch Manager Rimek, Rimek failed to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

38. Upon information and belief, Rimek informed District Manager Joseph of Sanchez complaining that Agha was subjecting her to unwelcome, sexually offensive and gender inappropriate behavior.

39. Despite Joseph learning of Agha's sexually offensive and gender inappropriate behavior, Joseph failed to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

40. Upon information and belief, Rimek informed Santander's Human Resources Department (HR) of Sanchez complaining that Agha was subjecting her to sexually offensive and gender inappropriate behavior.

41. Other than giving Agha a written warning, which did not stop his sexually offensive and gender inappropriate behavior, Santander failed to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

42. Santander failed to engage in a timely and effective investigation of complaints of sex and/or gender based harassment brought to its attention by Sanchez.

43. Joseph failed to engage in a timely and effective investigation of complaints of sex and/or gender based harassment brought to its attention by Sanchez.

44. Rimek failed to engage in a timely and effective investigation of complaints of sex and/or gender based harassment brought to its attention by Sanchez.

45.  Santander failed to undertake prompt and effective remedial measures to put a stop to the sex and/or gender based harassment caused to Sanchez by Agha.

46.  Joseph failed to undertake prompt and effective remedial measures to put a stop to the sex and/or gender based harassment caused to Sanchez by Agha.

47.  Rimek failed to undertake prompt and effective remedial measures to put a stop to the sex and/or gender based harassment caused to Sanchez by Agha.

48.  Agha's sexually offensive and gender inappropriate behavior towards Sanchez caused Sanchez great mental and emotional distress.

49.  The failure of Rimek, Joseph, and Santander to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez, Sanchez has and continues to suffer from great mental and emotional distress.

50.  Because of Agha's sexually offensive and gender inappropriate behavior towards Sanchez and the failure of Rimek, Joseph, and Santander to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez, Sanchez suffered mental and emotional distress, became physically ill, and was required to seek medical evaluation and treatment.

## V.  ALLEGATIONS AS TO PLAINTIFF'S WHISTLEBLOWING CLAIM

51.     When Agha started working as a teller, Sanchez noticed bills in large denominations stored in the vault were depleting at an alarming rate and the money was not lasting the full week as it usually did.  Sanchez reported to Rimek her suspicions that Agha was the cause of the depletion of large denominations in the vault, that is, he was embezzling money from the bank. To confirm her suspicions, Sanchez informed Rimek that she would arrange for Agha to come to work on a day he did not normally work so that she could audit him.

52.     On the date of Agha's audit, Sanchez instructed him not to open his cash drawer at his teller window after which she left him to inform Rimek that she would be auditing Agha's cash drawer.

53.     When Sanchez returned to Agha's teller window to perform the audit, Agha had left. A few minutes later Sanchez received a text message from Agha stating he forced balanced his cash drawer.

54.     Sanchez reported what had occurred to Rimek and requested her to audit Agha's cash box under dual control.

55.     Agha never returned to work at Santander.

56.     Thereafter, Sanchez and Rimek performed a dual control audit of Agha's cash draw and discovered almost $8,000.00 was missing. The results of the audit were reported to Santander's compliance office.

57.     A few weeks later, Rimek informed Sanchez that HR had contacted her, and asked if Agha had ever complimented Sanchez or shown a romantic interest in Sanchez.

58.  Rimek advised Sanchez that Rimek had informed HR of Sanchez's sexual harassment complaints against Agha and their suspicions that Agha had embezzled money from the bank.

59.  Several days after her conversation with Rimek, HR came to the branch to question Sanchez. They told her that Agha had made multiple accusations against her, including an allegation that Sanchez had sexually harassed Agha and at one point tried to have sex with him, but he refused.

60.  HR also informed Sanchez of Agha's claim that Sanchez was a racist and that the audit of his cash drawer was nothing more than a set up by Sanchez to make him look bad in the eyes of the bank.

61.  Sanchez informed HR that all of Agha's claims were nothing more than outlandish lies.

62.  HR instructed Sanchez she was not to talk to anyone about Agha's claims or HR's investigation, and if she did so, Sanchez would be subject to an immediate job termination.

63.  HR made Sanchez feel as if she had done something wrong and Agha was the true victim.

64.  Following her instructions with HR, management and coworkers questioned Sanchez asking if Agha's allegations were true. For example, Rimek was present when the Regional Operations Manager Stephanie Stone asked Sanchez if Agha's allegations about her attempting to have sex with him were true.

65.   Sanchez could not respond to the Regional Operations Manager or anyone else asking her questions about Agha's claims because to do so would have violated HR's instructions to her and risk the loss of her job.

66.   Making Sanchez's work environment even more hostile, Rimek warned Sanchez to be "careful" because she was being "watched."

67.   Thereafter, Rimek informed Sanchez that she learned from speaking with someone at Capital One, Agha's prior employer, that they believed Agha had stolen money from Capital One while working for them.

68.   Apparently, Santander did not do an adequate background and reference check before hiring Agha. Had they done so, Agha would not have been hired and Sanchez would not have had to endure the malicious, wanton, harassing, and willful behavior he directed at her.

69.   Santander and its HR Department never informed Sanchez that the retaliatory false accusations Agha made against her were found to be without merit. Because of this willfully indifferent omission on the part of Santander, Sanchez has and continues to suffer from severe mental and emotional distress.

70.   Sanchez later learned from Rimek that Santander had never reported Agha's theft of monies from the bank to the police.

71.   Sanchez suffered retaliation for having disclosed the theft of money committed by Agha. For instance, by the time the second quarter of 2016 ended, Sanchez had opened close to 50 new bank accounts. When she received her incentive bonus, Sanchez discovered that she had only been paid a bonus for about 24 accounts and did not receive the bonus Branch Operations Managers get quarterly.

72.   When Sanchez went to Rimek and questioned why she had not been given an incentive bonus commensurate with opening close to 50 new bank accounts, she was told it was because the bank employee who opened the accounts on the system made too many errors.

73.   Because of Santander's retaliatory conduct, Sanchez has and continues to sustain economic loss and suffer from severe mental and emotional distress.

## VI.   ALLEGATIONS AS TO PLAINTIFF'S CLAIMS OF FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL

74.   Before accepting the position of Branch Operations Manager in or about February 2016, Sanchez engaged in negotiations with Joseph regarding what the position's pay rate would be.

75.   Sanchez believed that the offered pay rate was insufficient considering the duties, responsibilities and understaffing at the branch; she had performed the duties of the position out of title for the two months prior and was practically performing the jobs of two to three employees at all times. As such, Sanchez emphasized from the very beginning of negotiations that pay was her primary concern.

76.   Sanchez initially requested pay at the rate of $16.00/hour, which she learned was the minimum standard rate of pay for the position.

77.   Joseph refused and countered with approximately $14.03/hour.

78.   It was eventually agreed between Sanchez and Joseph that Sanchez would begin working for $14.81/hour subject to and with the express understanding Sanchez would receive a raise to $16.00/hour in six months so long as she doubled her sales and maintained sound operations within the branch as she had been.

79.   For the next six months Sanchez worked tirelessly and effectively for Santander.

80.   Sanchez more than doubled her sales and maintained excellent bank operations, despite her worsening medical condition and the inadequate assistance.

81.   Shortly before the six-month period ended, Sanchez asked Joseph if she would be receiving the raise since she met her end of the negotiated bargain.

82.   In response, Joseph tried to manipulate and intimidate Sanchez by asking her what Sanchez would do if Joseph refused to give her the promised raise, and why she shouldn't expect Sanchez to come back in another six months and demand another raise (as was her lawful right).

83.   Despite the clear promise and agreement between them, Joseph reneged on her promise and breached their agreement by refusing to grant Sanchez the raise.

84.   Joseph never had any intention of honoring the promises and agreement she made with Sanchez.

85.   Joseph made misrepresentations to Sanchez solely to induce Sanchez into accepting the Branch Operations Manager position for a lower rate of pay than Sanchez wanted.

86.   Because of Joseph's intentional and knowing misrepresentations, Sanchez has and continues to sustain economic loss and suffer from severe mental and emotional distress.

### VII. ALLEGATIONS AS TO PLAINTIFF'S CLAIMS FOR DISABILITY DISCRIMINATION AND WORKERS' COMPENSATION CLAIM INTERFERENCE AND RETALIATION

87.  On April 13, 2016, Sanchez requested a day off work from Rimek so that she could seek medical treatment. She went to JFK Medical Center where she was diagnosed with vertigo, headaches, nausea and vomiting, and gastritis.

88.  Following her visit, she took an extra day off as recommended by her treating physician.

89.  When Sanchez returned to work, she reported her condition to Rimek and provided her with a doctor's note explaining and excusing her absences.

90.  Several days later, Joseph conducted a routine branch visit and heard about and/or discovered the note.

91.  Instead of expressing empathy or concern about Sanchez's hospitalization, she instead reprimanded both Sanchez and Rimek for discussing Sanchez's medical issues at work.

92.  Joseph told Sanchez and Rimek that they were not to discuss Sanchez's medical condition otherwise Joseph and Rimek would be required to report Sanchez's medical condition to the bank's HR Department and the bank's workers' compensation carrier.

93.  Joseph directed Rimek to throw Sanchez's doctor's note into the trash directly in front of Sanchez, which Rimek did.

94.  Thereafter, Sanchez reasonably felt compelled to deal with her medical condition on her own, and to not seek help from her employer for fear of facing the wrath of Joseph and an adverse employment action. However, Sanchez continued to update Rimek regarding Sanchez's ongoing and worsening physical, mental, and emotional condition. Because Santander failed to provide Sanchez with workers' compensation benefits after

she informed Joseph and Rimek of her work-related stress and anxiety symptoms and need for medical treatment, Sanchez's medical condition further worsened and eventually became disabling.

95.   Because Santander, Joseph, and Rimek failed to provide Sanchez with a reasonable accommodation of an authorized medical leave so that she could receive treatment for her work-related stress and anxiety symptoms and need for medical treatment, Sanchez's medical condition further worsened and eventually became disabling.

### VII.   ALLEGATIONS OF CONSTRUCTIVE DISCHARGE AND EMOTIONAL DISTRESS DAMAGES RELATED TO ALL CLAIMS

96.   In or around November 2015, Sanchez's psychological distress and physical symptoms began to manifest themselves. Around that time, she initially experienced nausea and vomiting, headaches, and loss of appetite. These symptoms occurred occasionally for several months, but began occurring more frequently and with greater severity in April 2016.

97.   Between April 2016 and August 2016, Sanchez's physical and mental health further deteriorated.

98.   Because of the unlawful conduct of Santander, Joseph, and Rimek as discussed in the previous paragraphs of this Complaint, Sanchez's work conditions had become intolerable with her experiencing memory loss, blurred vision, blackouts of her vision, and loss of cognitive and motor functions. For example, she was frequently unable to stand up or walk straight without stumbling around or into walls, and she had problems talking without forgetting what she was saying, or involuntarily switching between English and Spanish in conversations at work.

99.     Consequently, Sanchez felt compelled to inform Joseph and Rimek that she was resigning her position of employment with the bank effective close of business on Friday, August 5, 2016. Rimek advised Sanchez she could return to work at the branch in the future.

100.    On or about Friday, August 5, 2016, Sanchez went to work and told Rimek about her previously mentioned symptoms and how poorly she was feeling.  Rimek told Sanchez that she could leave work early.

101.    Later that same day of August 5, 2016, Sanchez went to a walk-in Urgent Care Center for evaluation, and the doctor referred her to be evaluated by a Neurologist.

102.    On Saturday, August 6, 2016, Sanchez went to the emergency room at JFK Hospital in Edison, New Jersey because she was experiencing uncontrollable vomiting and feeling as if she was going to black out.

103.    On Monday, August 8, 2016, Sanchez went to a Neurologist and followed up with the doctor at the Urgent Care Center. She was told she was suffering from severe anxiety and major depression and that she should start treating with a psychotherapist.

104.    The doctor at the Urgent Care Center further recommended that Sanchez not return to work because of the stress she was enduring there.

105.    Thereafter, Sanchez went to see Rimek at the branch and informed Rimek of her medical condition and doctor recommendations. Sanchez informed Rimek that she would not be returning to work.

106.   On or about August 5, 2016, and unbeknownst to Sanchez, Santander terminated Sanchez's health insurance, despite Santander's Human Resource Department having previously informed her that her health insurance coverage would continue through the first week of September 2016, i.e., one month following Sanchez's last day of work.

107.   Santander failed to provide Sanchez with the proper notice and/or option for continued coverage in violation of COBRA, which resulted in Sanchez incurring significant medical expenses, and prevented her from receiving recommended, necessary, and proper medical treatment. Because of this, Sanchez's already severe emotional distress and pain and suffering was greatly exacerbated.

108.   By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a hostile work environment and disparate treatment due to Sanchez's sex and/or gender (female) in violation of New Jersey's Law Against Discrimination (LAD).

109.   By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a hostile work environment, and disparate treatment due to Sanchez's mental health disabilities (anxiety and major depression), and failure to reasonably accommodate those disabilities, all in violation of New Jersey's LAD.

110.   By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) Sanchez had her right to receive workers' compensation benefits interfered with and denied in violation of New Jersey Workers Compensation Laws.

111.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a retaliatory based hostile work environment and constructive discharge in violation of New Jersey's Conscientious Employee Protection Act (CEPA).

112.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) failed to pay Sanchez for all time worked over 40 hours in a workweek including overtime pay at a rate of one and one-half time her regular hour rate of pay for all hours worked in excess of 40 in a workweek.

113.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez was involuntarily, constructively, and wrongfully discharged from her position of employment at Santander.

114.    Santander is liable as a matter of law for the unlawful acts and omissions of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10).

115.    By their joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under LAD for inciting, aiding, and abetting each other's discriminatory conduct as is outlined above.

116. By their joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under CEPA for inciting, aiding, and abetting each other's retaliatory conduct as is outlined above.

117. Because of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

118. As a result of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

## CAUSES OF ACTION

### FIRST COUNT

### COLLECTIVE ACTION CLAIMS
### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, et seq.
### FAILURE TO PAY OVERTIME WAGES

1.      Plaintiff re-alleges and incorporates by reference the allegations Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 118 of the Complaint as if set forth at length herein.

2.      29 U.S.C. § 2017(a)(1) provides as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one half times the regular rate at which he is employed."

3.      Plaintiff brings this collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on her own behalf and on behalf of a putative Class of similarly situated current and former Operations Managers employed by Santander, defined to include:

> All persons employed in the United States and Puerto Rico by Santander, N.A. a subsidiary of Santander Holdings USA, as a Branch Operations Manager who are or were employed at any time in the last three years, who worked in excess of 40 hours per workweek with each hour over 40 being unpaid and "off the clock", inclusive of not being paid a legally required overtime rate of 1.5 times their regular rate of compensation for the hours worked in excess of 40 per workweek.

Plaintiff has executed her consent to sue form as required under FLSA which is attached hereto as  *Exhibit A.*

4.   Plaintiff does not bring this action on behalf of any executive, administrative, or professional employee exempt from coverage under the FLSA.

5.   With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the Branch Operations Managers described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims are based upon the same legal theories

6.   Plaintiff's and other members of the Class' entitlement to compensation for time worked over 40 hours in a workweek and overtime pay, except for amount, is identical and depends on two uniform factual questions: 1) Did Branch Operations Managers work "off the clock" meaning without pay for time worked in excess of 40 hours in a workweek?; and 2) Did Defendant pay its Branch Operations Managers overtime compensation for hours worked over forty (40) at a rate of 1.5 times their regular rate of compensation for hours worked in a workweek?

7.     Similarly, the classification status of the Class and Plaintiff involves identical legal questions: Were Santander's Branch Operations Manager non-exempt employees such that Santander owes them a) compensation for time worked over 40 hours in a workweek under the FLSA; and b) overtime compensation for hours worked over 40 in a workweek under the FLSA?

8.     Plaintiff shares the same interests as the other members of the putative Class she seeks to represent in that the outcome of this action will determine whether they are either exempt or non-exempt employees under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

10.    By authorizing, permitting or otherwise condoning the practice of Branch Operations Managers working "off the clock" without pay for hours worked in excess of 40 in a workweek, Santander failed to pay minimum wage for such hours worked in violation of the FLSA.

11.    Defendant Santander's unlawful conduct has been widespread, repeated, and willful. Defendant Santander knew or should have known that its policies and practices were unlawful and unfair.

**WHEREFORE**, Plaintiff Sanchez hereby demand judgment be entered against Santander as to the First Count of the Complaint as follows:

a.     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims which are set forth above;

b.     Declaring that Defendant Santander willfully violated its/their obligations under the FLSA and its attendant regulations set forth above;

c.    Designation of Plaintiff as Representative of the Class;

d.    Designation of Plaintiff's counsel of record as Class Counsel for the Class;

e.    An appropriate service payment to Plaintiff for her service as Class Representative;

f.    Granting judgment in favor of Plaintiff and against Defendant Santander and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of forty (40) hours per week for the past three years;

g.    Awarding liquidated damages to Plaintiff in an amount equal to the amount of unpaid overtime found owing to them;

h.    Awarding reasonable attorney fees and costs incurred by Plaintiff in filing this action;

i.    Awarding pre and post judgment interest to Plaintiff on these damages;

j.    An injunction against Santander and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law from, engaging in each of the unlawful practices, policies and patterns set forth in this First Amended Complaint; and

k.    Such further relief as this court deems appropriate.

**SECOND COUNT**

**NEW JERSEY CLASS ACTION CLAIM**
**VIOLATION OF NEW JERSEY WAGE AND HOUR LAWS**

1.    Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 118 and the First Count of the Complaint as if set forth at length herein.

2.    Plaintiff brings this Count for violation of the New Jersey Wage and Hour Law (NJWHL) on behalf of herself, and all other similarly situated current and former employees of Santander in New Jersey, to recover for the Defendants' willful violation of the New

Jersey Wage and Hour Law N.J.S.A., 34:11-56.1 to -56.12 ("NJWHL"), the New Jersey Minimum Wage Act ("NJMWA") and the New Jersey Wage Payment Law ("NJWPL").

3.    Plaintiff, and those similarly situated, were subjected to Santander's policy and practice of not paying overtime which compelled them to work "off the clock" without pay to avoid working in excess of forty (40) hours during a workweek thereby triggering overtime provisions in the NJWHL requiring Santander to pay these workers pay at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek.

4.    Under the class action claims brought under the NJWHL, NJMWA, and the NJWPL, the proposed Class consists of all persons employed by Santander as Branch Operations Managers at any time two years prior to the filing of this action through the entry of judgment and who worked in Santander branch offices located in New Jersey who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek (hereinafter the proposed "NJ Class").

5.      To remedy her damages and the damages of the NJ Class members, Plaintiff seeks a declaration that her rights, and the rights of other NJ Class members were violated, and an award of all available statutory damages including, but not limited to, unpaid wages, interest, and reasonable attorneys' fees and costs to make them whole for damages suffered.

6.      The New Jersey Wage and Hour Law (NJWHL) under N.J.S.A., 34:11-56a4 provides in relevant part: "Every employer shall pay to each of his employees' wages at a rate of not less than …for 40 hours of working time in any week and 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week, except this overtime rate shall not include any individual employed in a bona fide executive, administrative, or professional capacity…." (emphasis added).

7.      Plaintiff and the NJ Class members do not qualify for exemptions under NJWHL. Thus, she/they is/are not exempt.

8.      Santander failed to pay Plaintiff and the NJ Class members for hours worked over forty (40) hours in a week.

9.      New Jersey's Minimum Wage Act (NJMWA) N.J.S.A., 34:11-56a states: "It is declared to be the public policy of this State to establish a minimum wage level for workers to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being."

        a.  Effective January 1, 2014, the minimum wage rate in New Jersey was $8.25 per hour.

        b.  Effective January 1, 2015, the minimum wage rate in New Jersey was $8.38 per hour.

c.  Effective January 1, 2016, the minimum wage rate in New Jersey remained at $8.38 per hour.

d.  Effective January 1, 2017, the minimum wage rate in New Jersey became $8.44 per hour.

10.   By authorizing, permitting or otherwise condoning the practice of Branch Operations Managers working "off the clock" without pay for hours worked in excess of 40 in a workweek, Santander failed to pay minimum wage for such hours worked in violation of NJMWA.

11.   The New Jersey Wage Payment Law (NJWPL) requires an employer to pay its employees all wages due under the New Jersey Wage and Hour Law (NJWHL) at least twice during a calendar month. N.J.S.A. 34:11-4.2.

12.   The WPL further states the following:

> "It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act, except to pay wages at shorter intervals than as herein provided, or to pay wages in advance. Every agreement made in violation of this section shall be deemed to be null and void, and the penalties in this act provided may be enforced notwithstanding such agreement; and each and every employee with whom any agreement in violation of this section shall be made by any such employer, or the agent or agents thereof, shall have a right of civil action against any such employer for the full amount of his wages in any court of competent jurisdiction in this State."
> N.J.S.A. 34:11-4.7.

13.   By authorizing, permitting or otherwise condoning the practice of Operations Managers working "off the clock" without pay for hours worked in excess of 40 in a workweek, Santander failed to pay minimum wage for such hours worked in violation of the NJWPL.

14.     Santander's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices were unlawful and unfair.

15.     Because of Defendant's violations of the NJWHL, NJMWA and the NJWPL. Plaintiff and the NJ Class members have suffered damages by being denied pay for all of the hours t h e y worked, by being denied overtime wages in accordance with the NJWHL in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment and post judgment interest, reasonable attorneys' fees and costs pursuant to the NJWHL.

**WHEREFORE**, Plaintiff Sanchez hereby demand judgment be entered against Santander as to the Second Count of the Complaint as follows:

a.      Certifying this case as a class action in accordance with New Jersey Rule of Court R. 4:32-1 (Rule 32) with respect to the NJWHL, NJMWA, NJWPL, and Unjust Enrichment claims set forth above;

b.      Declaring that Santander violated its obligations under the NJWHL, NJMWA, and NJPL and its attendant regulations;

c.      Designation of Plaintiff's counsel of record as Class Counsel for the Class;

d.      An appropriate service payment to Plaintiff for her service as Class Representative;

e.      Granting judgment in favor of Plaintiff and against Santander and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of forty (40) hours per week for the past three years;

f.   Judgment for Plaintiffs and the NJ Class members for all statutory, compensatory, liquidated and consequential damages, or any other damages authorized by law or equity, sustained because of defendants' unlawful conduct, as well as prejudgment and post-judgment interest;

g.   An award to Plaintiff and the NJ Class members for their reasonable attorneys' fees, costs, including expert fees, and expenses authorized by law;

h.   Awarding pre and post judgment interest to Plaintiff on these damages;

i.   An injunction against Santander and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law from, engaging in each of the unlawful practices, policies and patterns set forth in this First Amended Complaint; and

j.   Such further relief as this court deems appropriate.

## THIRD COUNT

## UNJUST ENRICHMENT

3.   Plaintiff re-alleges and incorporates by reference the allegations Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 118 and the First and Second Count of the Complaint as if set forth at length herein.

4.   Defendant Santander unlawfully failed to pay Plaintiff and the putative NJ Class members for hours worked over forty (40) hours in a week for that respective period at a rate of 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week.

5.     By failing to pay Plaintiff and the putative NJ Class members for hours worked over forty (40) hours in a week for that respective period at a rate of 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week, Santander has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the NJ Class.

6.     By failing to pay Plaintiff and the putative NJ Class members minimum wages for hours worked over forty (40) hours in a week, Santander has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the NJ Class.

7.     It would be inequitable for Santander to be permitted to retain the unpaid wages it avoided paying to Plaintiff and the Class overtime wages at a rate of 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week. Therefore, Santander should be compelled to disgorge to the Plaintiff and the NJ Class all amounts it retained and received as a result of its wrongful and inequitable practices.

8.     It would be inequitable for Santander to be permitted to retain the unpaid wages it avoided paying to Plaintiff and the NJ Class minimum wages for hours worked over forty (40) hours in a week. Therefore, Santander should be compelled to disgorge to the Plaintiff and the NJ Class all amounts it retained and received as a result of its wrongful and inequitable practices.

**WHEREFORE**, Plaintiff Crystal hereby demand judgment be entered against Santander as to the Third Count of the Complaint as follows:

a.     Granting judgment in favor of Plaintiff and against Santander and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff worked in excess of forty (40) hours per week for the past three years;

      b.     Judgment for Plaintiffs and the Collective Class and NJ Class members for all statutory, compensatory, liquidated and consequential damages, or any other damages authorized by law or equity, sustained because of defendants' unlawful conduct, as well as prejudgment and post-judgment interest;

      c.     An award to Plaintiff and the Collective Class and NJ Class members for their reasonable attorneys' fees, costs, including expert fees, and expenses authorized by law;

      d.     Awarding pre and post judgment interest to Plaintiff on these damages; and

      e.     Such further relief as this court deems appropriate.

## FOURTH COUNT

**VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION (SEX AND DISABLITY DISCRIMINATION – HOSTILE WORK ENVIRONMENT, DISPARATE TREATMENT, FAILURE TO ACCOMMODATE, AIDING AND ABETTING LIABILITY AND CONSTRUCTIVE DISCHARGE CLAIMS)**

1.    Plaintiff repeats and re-alleges each allegation of paragraphs 1-118 of this First Amended Complaint as if set forth at length herein.

2.    The New Jersey Law Against Discrimination (LAD), N.J.S.A., 10:5-1 et seq., prohibits unlawful employment discrimination/hostile work environment against any person because of, inter alia, their sex or disability (handicap).

3.    Hostile work environment harassment involves harassing conduct for the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

4.     Sanchez experienced a severe and pervasive sexually harassing work environment while employed at Santander because of her sex (female) and disabilities (anxiety disorder and major depression). Accordingly, Sanchez falls under the protections of the LAD.

6.     An employer is strictly liable for damages caused by the unlawful harassment committed by managers, supervisors, by non-supervisory employees and in some instances by third parties if the employer knew or should have known about the conduct, had control over the harasser, and failed to take prompt appropriate corrective action.

7.     Santander is strictly liable for damages caused to Sanchez by the unlawful harassment committed or permitted by managers, supervisors, and by non-supervisory employees named in this Complaint as well as others.

9.     Santander is strictly liable for damages caused to Sanchez by the failure of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), and other in the management team at Santander and to put a stop to the unlawful harassment caused to Sanchez by and others.

10.    Santander is strictly liable for damages caused to Sanchez because it knew or should have known about the abuse and harassment of Sanchez, had control over other employees who were harassing Sanchez, yet failed to take prompt appropriate corrective action to put a stop to the harassment.

13.    An employer will also be found liable if they fail to establish, publicize, and enforce an anti-harassment policy that contains an affective grievance procedure - one that is known to the victim and that timely stops the harassment.

14.   Santander is liable for damages caused to Sanchez because it failed to establish  and effectively publicize and enforce an anti-harassment policy that contains an effective grievance procedure.

15.   Santander is liable for damages caused to Sanchez because it failed to establish reasonably and effectively publicize and enforce policies prohibiting racial and sexual based harassment that contains an effective grievance procedure.

16.   Santander violated New Jersey's LAD by failing to put a stop to the sexual harassment and hostile work environment Sanchez was subjected to during her employment.

17.   Santander violated New Jersey's LAD by allowing the harassment to continue and escalate in retaliation for Sanchez reporting that she was subjected to harassment and a hostile work environment because of her sex and disabilities.

18.   New Jersey Division of Civil Rights regulations require employers to provide reasonable accommodations for the handicapped.N.J.A.C.13:13-2.5. DCR states that this requirement of reasonable accommodation is implicit in the LAD provision that an individual may not be denied employment opportunities because of a handicap unless the nature and extent of the handicap reasonably precludes job performance.

19.   Santander is liable to Sanchez under LAD for failing to reasonably accommodate Plaintiff's disabilities.

20.   Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), or any one or more of them, are liable to Sanchez for inciting, aiding and abetting Santander in furtherance of the defendant corporation's failure to reasonably accommodate Plaintiff's medical conditions.

21.   By their joint and several acts and omissions, defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a hostile work environment due to Sanchez's sex (female) and disabilities (anxiety disorder and major depression) in violation of New Jersey's LAD.

22.   By their joint and several acts and omissions, defendants joint and several acts and/or omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez was involuntarily, constructively, and wrongfully discharged from her position of employment at Santander in violation of LAD.

23.   Santander is liable as a matter of law for the unlawful acts and/or omissions of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10).

24.   By their joint and several acts and omissions, defendants joint and several acts and omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under LAD for inciting, aiding, and abetting each other's discriminatory conduct as is outlined above.

25.   The legislature has determined that persons subjected to unlawful discrimination may suffer diverse and substantial hardships which give rise to remedies under LAD, including compensatory damages; economic loss; physical and emotional distress; search and relocation difficulties; anxiety caused by a lack of information, uncertainty and resultant planning difficulty; career, education, family and social disruption; adjustment problems; and severe emotional trauma, illness, homelessness, or other irreparable harm resulting from the strain of employment controversies.

26.   A person subject to unlawful discrimination is also afforded the remedy of punitive damages.  See N.J.S.A., 10:5-3.

27.   The legislature has also determined that the prevailing party may be awarded reasonable counsel fees.  N.J.S.A., 10:5-27.1.

28.   Because of the joint and several acts and omissions, defendants joint and several acts and omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present, and future.

29.   As a result of the joint and several acts and omissions, defendants joint and several acts and omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE,** Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, John Doe 1-10, and XYZ Corporations (1-10), jointly and severally, and requests the following relief:

a.   Judgment directing the Defendants make Plaintiff whole for all losses she has suffered in terms of lost wages (back pay and front pay damages), benefits, insurance and pension coverage, and any other fringe benefits of her employment;

b.   Judgment awarding Plaintiff compensatory damages for all probable damages and injuries, including emotional distress, suffered because of Defendants' failure to prevent or put a stop to the harm caused to Plaintiff in violation of New Jersey Law Against Discrimination;

c.    Judgment awarding Plaintiff punitive damages on the grounds that Defendants' acts in failing to prevent the harm caused Plaintiff, as required under the law, was especially egregious or that same occurred as a result of the wanton and willful disregard for the rights of Plaintiff;

d.    Judgment awarding Plaintiff accrued interest and costs of suit;

e.    Directing Defendants to pay Plaintiff Sanchez for all of her attorneys' fees and costs incurred to the full extent permitted under N.J.S.A. 10:5-1 et seq. and Rendine v. Pantzer, 141 N.J. 292 (1995).

f.    Plaintiff requests equitable relief in the form of the Court declaring that the practices of the named Defendants contested herein violate New Jersey law as set forth herein;

g.    Plaintiff requests equitable relief in the form of the Court ordering the named Defendants to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and as to all other persons similarly situated;

h.    Granting Plaintiff such relief as the Court deems just and proper.

## FIFTH COUNT

### <u>VIOLATION OF NEW JERSEY CONSCIENTUOUS EMPLOYEE PROTECTION ACT – HOSTILE WORK ENVIRONMENT, FAILURE TO PROVIDE A PROMISED RAISE, AIDING AND ABETTING LIABILITY AND CONSTRUCTIVE DISCHARGE CLAIMS)</u>

1. Plaintiff repeats and re-alleges each allegation of paragraphs 1-118 this First Amended Complaint as if set forth at length herein.

2. New Jersey's Conscientious Employee Protection Act (CEPA) allows an employee an action for retaliation when the employee discloses, threatens to disclose, objects to, or refuses to participate in certain actions that the employees reasonably believe are either illegal or a violation of public policy and is then subject to a course of retaliator conduct by the employer.

3. Sanchez disclosed to defendants Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), her reasonable belief that Agha was the cause of the depletion of large denominations in Santander's vault, that is, he was embezzling and otherwise stealing money from the bank.

4. Sanchez is a person protected under CEPA as the acts that she complained of are violations of law and regulations and rules related thereto and/or violations of clear mandates of public policy.

5. Shortly after making her disclosures, Sanchez was subject to retaliation in the form of a hostile work environment, denial of a promised pay raise, and constructive discharge from employment.

6. Santander is liable as a matter of law for the unlawful acts and/or omissions of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10).

7. By their joint and several acts and omissions, defendants joint and several acts and omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under CEPA for inciting, aiding and abetting each other's retaliatory conduct as is outlined above.

8. The legislature has determined that persons subjected to unlawful discrimination may suffer diverse and substantial hardships which give rise to remedies under CEPA, including compensatory damages: economic loss; physical and emotional distress; search and relocation difficulties; anxiety caused by a lack of information, uncertainty and resultant planning difficulty; career, education, family and social disruption; adjustment problems; and severe emotional trauma, illness, homelessness, or other irreparable harm resulting from the strain of employment controversies.

9. Because of the joint and several acts and omissions, defendants joint and several acts and omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been rendered vocationally disabled, and has and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

10. As a result of the joint and several acts and omissions, defendants joint and several acts and omissions, defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10),Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE,** Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, John Doe 1-10, and XYZ Corporations (1-10), jointly and severally, and requests the following relief:

a.  Directing the Defendants to make Plaintiff Sanchez whole for any and all losses she has suffered in the past, present and in the future in terms of lost wages, benefits, insurance and pension coverage, and any other fringe benefits of his employment;

b.  Directing the Defendants, in lieu of reinstating Plaintiff Sanchez to her former position with Santander, to fully compensate her with front pay and benefits for the retaliatory acts;

c.  Directing Defendants to pay Plaintiff Sanchez compensatory and consequential damages for all non-economic damages including, but not limited to, mental and emotional distress damages, suffered as a result of Defendants' retaliatory acts in violation of New Jersey Conscientious Employee Protection Act;

d.  Directing the Defendants to pay Plaintiff Sanchez punitive damages because the acts of Defendants and its agents, servants and employees were especially egregious, evil minded and/or were committed with a wanton and willful disregard for the rights of Plaintiff;

e.  Directing Defendants to pay Plaintiff Sanchez for all her attorneys' fees and costs incurred to the full extent permitted under N.J.S.A.34:19-1 et seq., and Rendine v. Pantzer, 141 N.J. 292 (1995).

f.  Awarding interest and costs of suit;

g.   Plaintiff requests equitable relief in the form of the Court declaring that the practices of the named Defendants contested herein violate New Jersey law as set forth herein;

h.   Plaintiff requests equitable relief in the form of the Court ordering the named Defendants to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and as to all other persons similarly situated;

i.   Plaintiff requests equitable relief in the form of the Court Ordering Defendant Santander to expunge and other purge from its files and records including, but not limited to, Plaintiff's personnel file maintained by the said Defendant any reference which violates the statutes implicated in the above captioned action; and

j.   Granting Plaintiff such relief as the Court deems just and proper.

## SIXTH COUNT

## <u>COMMON LAW PUBLIC POLICY CLAIM</u>
## <u>(PIERCE CLAIM)</u>

1.   Plaintiff repeats each allegation set forth in paragraphs 1 through and including 118 and the Fifth Count of this First Amended Complaint as if set forth more fully at length herein.

2.   In <u>Pierce v. Ortho Pharmaceutical Corp.</u>, 84 <u>N.J.</u> 58, 72 (1980) the Supreme Court established a New Jersey public policy exception to at-will-employment. The Supreme Court established that:

> An employee has a cause of action [in tort or contract or both] for wrongful discharge when the discharge is contrary to a clear mandate of public policy. The sources of public policy include legislation; administrative rules, regulations, and decisions; and

judicial decisions. In certain instances, a professional code of ethics may contain an expression of public policy.

3.    The public policies of the State of New Jersey underpinning Plaintiff Sanchez's complaints are found, _inter alia_, in the statutes, codes, and regulations applicable to business practices, fraud, and international law.

4.    The above facts establish a public policy violation.

5.    Because of the retaliatory actions undertaken by Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff Sanchez has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

6.    Because of the retaliatory actions undertaken by Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

    **WHEREFORE,** Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

**SEVENTH COUNT**

**<u>VIOLATION OF N.J.S.A. 34:15-39.1 ET. SEQ.</u>**
**<u>(WORKER'S COMPENSATION RETALIATION)</u>**

1.    Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 118 and the Fourth through the Sixth Counts of this First Amended Complaint as if set forth at length herein.

2.    The New Jersey Workers Compensation Act, <u>N.J.S.A.</u> 34:15-1 <u>et. seq.</u>, ("the Act") requires employers to compensate their employees for personal injuries caused by an "accident arising out of and in the course of their employment," without proof of fault.

3.    It is unlawful under the Act for an employer to discharge or discriminate against an employee because such employee has claimed or attempted to claim worker's compensation benefits from his employer.

4.    For violations of the Act, employers are subject to fines and/or imprisonment of up to 60 days.

5.    The Act provides for reinstatement with back pay for any employee who is the subject of such discrimination.

6.    An employee discharged because such discrimination has a common-law right of action for wrongful discharge.

7.    Because of the unlawful joint and several acts and/or omissions of Defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has and continues to sustain economic loss and pecuniary harm.

8.    As a result of the joint and several acts and omissions of the Defendants, Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical

manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE,** Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## EIGHTH COUNT
## FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL

1.  Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 118 and the First through the Seventh Count of this Complaint as if set forth at length herein.

2.  In or about February 2016, Santander and Joseph made a clear and definite promise to Sanchez that Sanchez would receive a raise to $16.00/hour in six months so long as she doubled her sales and maintained sound operations within the branch as she had been.

3.  In reliance on this promise, Crystal accepted a position as Operations Manager.

4.  Had Santander and Joseph not made this promise, Crystal would not have accepted the position of Operations Manager and would have instead remained a full-time bank teller.

5.  Santander and Joseph made this promise to Sanchez with the expectation that Sanchez would rely on the promise.

6.      Thereafter, Sanchez reasonably relied on the promise made by Santander and Joseph as evidenced by the fact that she more than doubled her sales and maintained excellent bank operations.

7.      Despite the clear promise and agreement between them, Santander Joseph reneged on their promise and breached their agreement by refusing to grant Sanchez the raise.

8.      Santander and Joseph never had any intention of honoring the promises and agreement Joseph made with Sanchez.

9.      Santander and Joseph made misrepresentations to Sanchez solely to induce Sanchez into accepting the Operations Manager position for a lower rate of pay than Sanchez wanted.

10.     Because of Joseph's intentional and knowing misrepresentations, Sanchez has and continues to sustain economic loss and suffer from severe mental and emotional distress

11.     Because of the unlawful acts and omissions of Santander and Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

12.     As a result of the unlawful acts and omission of Defendants Santander, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10),jointly or severally, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of

appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE,** Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA and Nadia Joseph, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## NINTH COUNT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.   Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 118 and the First through and including Eighth Counts of the Complaint as if set forth at length herein.

2.   The acts of the Defendants Santander, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, was done with malice, intent and/ or with the reckless indifference to causing Plaintiff Sanchez emotional distress.

3.   Because of the unlawful acts and omissions of Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present, and future.

4.   As a result of the unlawful acts and omission of Defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10),jointly or severally, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness,

sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE,** Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable in this action.

## DESIGNATED TRIAL ATTORNEY

Stephan T. Mashel, Esquire is hereby designated as Plaintiff's trial attorney.

**MASHEL LAW, L.L.C.**
**500 Campus Drive, Suite 303**
**Morganville, New Jersey 07751**
**(732) 536-6161**
**Attorneys for Plaintiff Crystal Sanchez and the**
**Putative FLSA Collective Class and the NJ Class**

By: _____
    **Stephan T. Mashel, Esquire**
    **Attorney I.D. No. 03185-1986**

Dated:  August 15, 2017

Page **45** of **45**

# EXHIBIT A

## FAIR LABOR STANDARDS ACT CONSENT

I consent to be a party plaintiff in a lawsuit against Santander Bank, N.A., to seek redress for violations of the Fair Labor Standards Act. pursuant to 29 U .S.C. 216(b).   I hereby designate the law firm of Mashel Law, L.L.C. to represent me in such a lawsuit.

Dated:

08/14/2017

Crystal Sanchez