UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRYSTAL SANCHEZ, et al., | : |
| Plaintiff, | : Civil No. 17-5775 (PGS)(DEA) |
| v. | : |
| | : **MEMORANDUM ORDER AND** |
| SANTANDER BANK, N.A., et. al., | : **REPORT & RECOMMENDATION** |
| Defendants. | : |

This matter comes before the Court on the following two motions by Plaintiff Crystal Sanchez and the opt-in Plaintiffs (together, "Plaintiffs"): (1) Plaintiffs' motion for conditional certification and for Court-authorized notice under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (ECF No. 100);[1] and (2) Plaintiffs' motion for equitable tolling of the applicable statute of limitations (ECF No. 116).[2] The first motion seeks conditional certification of this matter as a collective action under the FLSA as well as the Court's approval of a proposed form of notice, a notice period and notice process. Defendants oppose this motion in part. While not opposing the request for conditional certification, Defendants object to certain aspects of the form and method of notice.

The second motion asks the Court to toll the statute of limitations for the FLSA claims as of August 15, 2017, the date Plaintiff Sanchez filed her Amended Complaint first alleging violations of the FLSA. Defendants oppose this motion. For the reasons below, Plaintiffs' motion for conditional certification and Court-authorized notice is granted subject to the

---
[1] The parties have consented to the jurisdiction of the undersigned for disposition of this motion. *See* ECF No. 115.
[2] This motion has been referred to the undersigned for a Report and Recommendation by the Hon. Peter G. Sheridan, U.S.D.J.

limitations set forth herein. As to the motion for equitable tolling, the Court recommends the motion be granted in part and denied in part.

I.       **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Sanchez is a former Branch Operations Manager for Defendant Santander Bank N.A. ("Defendant" or "Santander"). She worked at one of Santander's branches from approximately February 2016 to August 2016. In June 2017, Plaintiff filed this suit in the Superior Court of New Jersey, purportedly on behalf of herself and other similarly situated employees of Santander in New Jersey. In the state court Complaint, Sanchez alleged violations of New Jersey wage and hour laws, unjust enrichment, discrimination, whistleblowing, retaliation, fraudulent inducement, promissory estoppel, constructive discharge, and intentional infliction of emotional distress. Defendants removed the action to this Court.

On August 15, 2017, Sanchez filed a First Amended Complaint, adding claims under the Fair Labor Standards Act ("FLSA") purportedly on behalf of herself and other similarly situated employees of Santander. (Doc. 9, p. 20 ¶ 3). On November 11, 2017, Sanchez filed a Second Amended Complaint ("SAC") restating her claims, including her FLSA collective action claims.

**II. DISCUSSION**

A. Conditional Certification & Notice

Plaintiffs have filed the instant motion requesting that the Court grant conditional certification of an FLSA collective action on behalf of all "Branch Operations Managers who were employed by Defendant Santander [] at least one week from June 29, 2014 to [the present]". ECF No. 100-58. According to Plaintiffs, "Branch Operations Managers" are Santander employees with the following job titles: (1) Retail Banking Branch Operations Manager: (2) Retail Banking Branch Operations Manager II; and (3) Senior Specialist, Branch

Operations Management (collectively, "BOMs").  Santander pays an hourly rate to all BOMs and classifies them as non-exempt employees, meaning they are eligible for overtime.  However, Plaintiffs contend that "Santander's policies and practices were designed to dissuade, deter, discourage, intimidate and/or coerce Plaintiff and the putative class of BOMs from reporting overtime hours worked" while at the same time compelling the BOMs to work "off the clock" in order to avoid giving rise to overtime pay.

In addition to their request for conditional certification, Plaintiffs further request that the Court issue an Order as follows:

(1) permitting Plaintiffs to send a notice of this lawsuit to all BOMs who worked for Santander "at any time during the Collective Action Period (defined as June 29, 2014 to the date of the Court's Order granting Plaintiffs' Motion)";

(2) setting a notice period of 90 days;

(3) permitting the notice and consent to join forms to be sent via U.S. mail and email;

(4) compelling Santander to post the notice form in a conspicuous location in each of its branches during the notice period;

(5) permitting Plaintiffs to set up an interactive website providing notice of this action and serving as a portal allowing parties to electronically consent to join this action;

(6) permit Plaintiffs to send a reminder postcard via U.S. Mail and email to individuals who do not submit a completed consent to join form;

(7) directing Santander to produce a computer readable data file containing the full names, addresses, telephone numbers, dates/location of employment, and personal email addresses for all potential collective action members; and

(8) directing Santander to provide the last four digits of the Social Security numbers for all potential collective action members for whom a notice is returned.

Defendants do not oppose conditional certification and concede that notice should issue. However, Defendants oppose certain aspects of the form and method of notice. Specifically, Defendants oppose the following aspects of the motion:

• Plaintiffs' request that the Collective Action Period for potential opt-in Plaintiffs commence three years prior to the date Sanchez filed her initial Complaint;

• Plaintiffs' request for notice to be issued by e-mail, posting at Santander's branches, posting on an interactive web portal, and sending a reminder notice by mail and e-mail, in addition to notice by mail;

• Plaintiffs' request for a 90-day opt-in period; and

• Plaintiffs' alleged "omission" of language in the Notice Form (1) advising potential Plaintiffs of their obligations and potential liabilities if they join this action, and (2) explaining the share of recovery that class counsel will seek.

B. Analysis

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Pursuant to the Act, "similarly situated" employees may bring suit against an employer for violations of the FLSA in a collective action. 29 U.S.C. § 216(b); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F.Supp.2d 493, 495 (D.N.J. 2000). A collective action is distinct from class actions brought under Fed. R. Civ. P. 23, and employees "must affirmatively opt-in by filing written consents with the court." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 242-43 (3d Circ. 2013).

Courts in the Third Circuit "follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). The inquiry during the first step of the analysis – the stage at which this case presently stands – "requires a named plaintiff to make a modest factual showing" demonstrating "a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). The Third Circuit has explained that the first step, commonly referred to as "conditional certification", "is not really a certification" but is "actually the district court's exercise of [its] discretionary power … to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under [the] FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012) (internal quotations omitted, alteration in original). "Thus, the main purpose served by the first step of conditional certification is to provide notice of the lawsuit to potential class members and allow them the opportunity to opt-in to the action." *Kaiser v. Daiichi Sankyo, Inc.*, No. 11-2414, 2012 WL 13042875, at *2 (D.N.J. Apr. 27, 2012).

There is no dispute between the parties that conditional certification and notice is appropriate in this case. The Court, therefore, will grant Plaintiffs' request for conditional certification. As noted above, however, Defendants oppose certain aspects of the form and method of Plaintiffs' proposed notice. As the Court has broad discretion to authorize and facilitate notice to potential collective action members, *see Hoffman–La Roche*, 493 U.S. 165, 171 (1989), the Court addresses Defendants' objections below.

1. Method of Notice

Plaintiffs seek the Court's approval to provide notice to potential collective action members by the following methods: (1) transmitting a notice and a reminder notice by U.S. mail and email; (2) posting a notice at Santander's branches; and (3) posting the notice on an interactive website through which parties can opt in. Defendants argue that Plaintiffs should be limited to a single notice, with no reminder, sent only by U.S. mail. In support of their position, Defendants point to a handful of district court cases that have not permitted notice beyond first class mail absent a showing that first class mail would be inadequate. *See*, *e.g.*, *Steinberg v. TD Bank, N.A.*, No. 10-5600, 2012 U.S. Dist. LEXIS 89086, at *10 (D.N.J. June 27, 2012); *Aboud v. City of Wildwood*, No. 12-7195, 2013 U.S. Dist. LEXIS 70083, at *8 (D.N.J. May 17, 2013); *Sawyer v. Health Care Sols. at Home, Inc.*, No. 16-5674, 2018 U.S. Dist. LEXIS 70152, at *14-15 (E.D. Pa. Apr. 25, 2018).

As Plaintiffs point out, district courts may "regulate their practice [of facilitating notice] in any manner not inconsistent with federal or local rules." *Hoffmann–La Roche*, 493 U.S. at 170, 110 S.Ct. 482 (1989). In this day of electronic communications, courts in this District have found notice by electronic means in conjunction with first class mail to be an appropriate method of facilitating notice. *See*, *e.g.*, *Ornelas v. Hooper Holmes, Inc.*, No. 12-3106(JAP), 2014 U.S. Dist. LEXIS 172903, at *13 (D.N.J. Aug. 1, 2014); *Gervasio v. Wawa Inc.*, No. 17-245(PGS), 2018 U.S. Dist. LEXIS 4899, at *18; *Porter v. Merrill Lynch Pierce*, No. 17-8043(FLW), 2018 U.S. Dist. LEXIS 192061, at *14. The Court does not find Defendants' arguments to the contrary or the cases Defendants rely on to be persuasive. Defendants point to, for example, *Spack v. Trans World Entm't Corp.*, in which a court in a sister District denied a request for emailed notice, expressing concern that (1) "electronic communication inherently has the

potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court"; (2) "[e]lectronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process"; and (3) "email messages could be forwarded to nonclass members and posted to internet sites with great ease." 2019 WL 192344, at *14 (N.D.N.Y. Jan. 15, 2019). However, given the ease with which current technology permits anyone so motivated to convert a hardcopy notice to electronic form and disseminate it, the Court disagrees that emailed notice presents any greater risk to the integrity of the notice process than notice provided by first class mail.

Therefore, the Court will permit Plaintiff to both mail and email an initial notice. The Court will also permit a reminder notice to be sent by mail and email halfway through the notice period. *See*, *e.g.*, *Porter*, 2018 U.S. Dist. LEXIS at *14 (allowing reminder notice); *Gervasio v. Wawa Inc.*, 2018 U.S. Dist. LEXIS 4899, at *18 (same). However, the Court will deny Plaintiffs' requests to provide notice through an interactive website and for the Court to compel Santander to post notice in all of its branches. The Court finds that two forms of initial notice – mail and email – along with a reminder notice are sufficient to ensure that potential collective action members receive accurate and timely notice of the action. Additional methods of notice sought by Plaintiffs, *i.e.*, providing notice in branches and on a website, are duplicative unnecessary.

2. Length of Opt-In Period

The parties disagree as to the appropriate length of the opt-in period. Plaintiffs request a 90-day period, arguing that this provides a reasonable time for potential opt-in Plaintiffs to exercise their rights. Plaintiffs further argue that Defendants have not shown they would be

demonstrably prejudiced by a 90-day period. Defendants, on the other hand, argue that the notice period should be 45 days. Defendants contend that Plaintiffs have not demonstrated a need for a period longer than 45 days.

The Court will permit a 60-day notice period. This is sufficient time to provide each potential collective action member the opportunity to make an informed decision about whether to opt into this action, while not needlessly delaying resolution of the litigation.

3. Content of Notice

Defendants contend that Plaintiffs' proposed notice contains an "inaccurate description of the obligations and potential liabilities for opt-in Plaintiffs who join the action." ECF No. 110 at 12. Defendants propose revising the notice as follows: (1) advise potential Plaintiffs that by joining the action, they may have to participate in written discovery and appear for depositions and trial in the District of New Jersey; (2) inform potential Plaintiffs that they could be liable for court costs; and (3) specify the portion of the settlement or judgment that class counsel will seek. Plaintiffs object to such revisions, arguing that they are improper, inaccurate, unnecessary, and designed to "intimidate and dissuade" potential Plaintiffs from opting in. ECF No. 114-1 at 11.

The Court declines to require the revisions sought by Defendants. In this regard, the Court finds the decision in *Ingram v. Coach USA, Inc.*, No. 06-3425, 2008 WL 281224 (D.N.J. Jan. 28, 2008) to be instructive. In that case the court noted that:

> First, the notice serves as a means to identify those who believe that they have been injured by the defendants' overtime policy and to give them a forum to pursue their potential claims. The decision to actually pursue the claim can be made after the opt-in plaintiff consults with counsel and counsel advises him/her of their duties and obligations. Second, the proposed notice already states that counsel is being paid on a contingency basis, … and plaintiff's counsel are obligated to explain what this means to each plaintiff. Contingency arrangements often address the topic of cost and so this will be explained to each potential plaintiff.

8

2008 WL 281224, at *8. As the court did in *Ingram*, this Court directs Plaintiffs' counsel "to advise each opt-in of his or her obligations before the consent form is filed, including advising the opt-in plaintiffs that they may be required to provide factual information (which may include responses to interrogatories and/or a deposition) and pay costs if the defendants prevail …." *Id.* The filing of a consent form by counsel will be deemed "to reflect counsel's representation that he or she has discussed with the opt-in plaintiff identified on the form the fee arrangement, cost obligations, and requirements to provide information." *Id.* To the extent that counsel has not already had such a discussion with the parties who have already filed their consent forms, counsel is directed to promptly do so. Counsel's continued appearance on behalf of those opt-in Plaintiffs will be deemed to reflect counsel's representation to this Court that he or she has had the appropriate discussion with those parties.

4. Equitable Tolling - Report & Recommendation

An action for unpaid overtime compensation under the FLSA must be commenced within two years after the cause of action accrues, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrues. 29 U.S.C. § 255(a). An action is considered "commenced" under FLSA for the named Plaintiff on the date the Complaint is filed. However, in a collective action, an action does not "commence" for an opt-in Plaintiff until the date that individual's consent is filed. When appropriate, a court may toll the limitations period on equitable grounds. *See Adami v. Cardo Windows, Inc.*, 299 F.R.D. 68, 82 (D.N.J. 2014).

Here, Plaintiffs seek to provide notice of this lawsuit to all BOMs who worked for Santander during the period beginning June 29, 2014 (three years prior to the commencement of this action) through the date of the Court's Order granting the instant motion. Plaintiffs define

9

this as the "Collective Action Period." Defendants, however, argue that notice should be limited to potential Plaintiffs who are within the maximum three-year limitations period for FLSA claims.

Plaintiffs' initial response to Defendants' argument, as set forth in their reply brief, is that "the law of the case doctrine" precludes Defendants from "arguing a different liability period," because this Plaintiffs contend that "this Court has already authorized Plaintiffs' counsel to contact BOMs employed by Santander from June 29, 2014." ECF No. 114-1 at 14. The Court finds that this argument has no merit. It is presumably based on this Court's Order of October 22, 2019, which denied Defendants' application for an Order limiting Plaintiffs' contact with Santander's BOMs. That Order relates to discovery, and it simply has no bearing on the present issue.

Plaintiffs further argue in their reply brief that Defendants have "waived" any objection to the Plaintiff-defined Collective Action Period and should be "estopped" from objecting now because Defendants did not raise the issue earlier in the case. The Court finds this argument to be similarly without merit.

Two months after filing their reply brief, Plaintiffs filed the instant motion seeking an Order equitably tolling the statute of limitations on the FLSA claims as of August 15, 2017, the date Plaintiff Sanchez filed her First Amended Complaint alleging violations of the FLSA.[3] Plaintiffs contend that "judicial delay" in deciding motions and applications before the Court as well as alleged "delay tactics" by Defendant Santander constitute extraordinary circumstances that warrant equitable tolling. ECF No. 114-1.

---

[3] It is unclear whether Plaintiffs are moving to toll the statute of limitations solely on behalf of the potential opt-in Plaintiffs or on behalf of all Plaintiffs, including those who have opted-in to date. In the interests of justice, the Court will construe Plaintiffs' motion as one on behalf of all Plaintiffs, including current and potential opt-in Plaintiffs.

Defendant Santander opposes the motion. First, it contends that there are no circumstances here that justify tolling the statute of limitations and, further, the running of the statute of limitations for potential opt-in Plaintiffs was a result anticipated by Congress when it expressly required individuals to file consent forms in order to toll the statute of limitations on their claims. Second, Santander argues that because the potential opt-in Plaintiffs are not presently before the Court, the Court cannot grant them relief.

The Court of Appeals for the Third Circuit has "instructed that there are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *abrogated on other grounds*, *Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018). "Whether a statute of limitations should be tolled requires a case-specific inquiry into what is fair and in the interests of justice." *Thompson v. Real Estate Mortg. Network, Inc.*, No. 11-1494, 2019 WL 2636307, at *12 (D.N.J. June 26, 2019). It is "is a rare remedy to be applied in unusual circumstances, not as a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Here, Plaintiffs bear the burden to show that equitable tolling is appropriate. *Vargas v. Gen. Nutrition Centers, Inc.*, No. 10-867, 2012 WL 5336166, at *5 (W.D. Pa. Oct. 26, 2012).

Plaintiffs assert that "extraordinary circumstances" exist that warrant the tolling the statute of limitations for all Plaintiffs as of the time the FLSA claims were first asserted. First, Plaintiffs point to alleged "judicial delay." ECF No. 120. Specifically, Plaintiffs allege: (1) a

11

"175[-]day delay" in deciding Defendants' motion to dismiss;[4] (2) a "delay of 116 days" in deciding Defendants' informal application to limit Plaintiff's counsel's contact with potential collection action members;[5] (3) "a delay in scheduling the Rule 16 conference, which did not take place until 114 days after the Court denied Defendant's motion to dismiss";[6] and (4) the "Court's delay" in deciding the instant two motions. ECF No. 120 at 1. According to Plaintiffs, these have resulted in a delay in the issuance of court-approved notice, preventing the potential opt-in Plaintiffs from learning of this action.

Plaintiffs also contend that Defendant Santander delayed this litigation -- and, therefore, Plaintiffs' ability to file their motion for conditional certification -- by engaging in "delay tactics" during discovery. ECF No. 114 at 14. As a result of these alleged delays as well as the alleged judicial delays, Plaintiffs assert that some Plaintiffs' claims may be time-barred or limited in temporal scope.

As an initial matter, the Court finds that Plaintiffs mischaracterize as "delay" much of what is simply the process of litigation. Merriam-Webster defines "delay" as "the act of … causing something to occur more slowly than normal." However, there is little, if anything, that is remarkable or unusual about the timeline of this matter. Moreover, the Court finds Plaintiffs' assertion of "delay" to be exaggerated and somewhat disingenuous. For example, the purported "175[-]day delay" with respect to the motion to dismiss includes the time the parties spent

---

[4] Defendants' motion to dismiss was filed September 12, 2017. It was originally returnable October 16, 2017. Plaintiffs requested an adjournment to November 6, 2017. Plaintiffs cross-moved to amend the Complaint. Both motions were fully briefed on October 30, 2017. Oral argument was held November 20, 2017, on which date Judge Sheridan granted the cross motion to amend the Complaint. On March 6, 2018, Judge Sheridan entered a Memorandum and Order denying the motion to dismiss.
[5] The parties first raised the issue during the status conference conducted on July 27, 2018. The Court asked for briefing, which was submitted August 10, 2019. The Court entered a decision on October 22, 2018.
[6] After the parties stipulated to an extension of time for Defendants to Answer the Amended Complaint, the Answer was filed on April 20, 2018. On May 8, 2018, the Court entered a Notice scheduling the initial conference for June 26, 2018 (which was subsequently adjourned to June 28, 2018).

briefing the motion and an adjournment of one motion cycle requested by Plaintiffs themselves. Similarly, the purported 114-day "delay" in convening the initial conference, which as a matter of practice is not scheduled until an Answer is filed, includes Defendants' time to Answer, which was extended with consent of Plaintiffs. Overall, the Court sees nothing in Plaintiffs' summary of the events in this litigation that constitutes extraordinary "delay" by either the Court or Defendants sufficient to justify the broad tolling of the statute of limitations sought by Plaintiffs.

Further, tolling the statute of limitations to the extent requested by Plaintiffs, *i.e.*, as of the date Plaintiff Sanchez first filed a Complaint containing her FLSA claims, is inconsistent with the statutory scheme created by Congress for FLSA actions. As one court aptly noted, "[i]n establishing this statutory scheme, Congress knew ... that time would lapse between the filing of the collective action complaint by the named plaintiff and the filing of written consents by the opt-in plaintiffs, yet it chose not to provide for tolling of the limitations period." *Alvarez v. BI Inc.*, No. 16-2705, 2018 WL 2288286, at *16 (E.D. Pa. May 17, 2018) (internal quotations omitted). The court continued:

> Indeed, in any putative collective action, a motion for conditional certification will be pending for *some* amount of time. And in many (if not most) putative collective actions, the filing of the conditional certification motion will be preceded by *some* period of certification-related discovery. As these stages in the life of a collective action unfold, the statute of limitations for potential opt-in plaintiffs continues to run, even though such potential plaintiffs have not received a court-approved notice of the collective action. This will be true in every collective action.

*Id.* (emphasis in original). Thus, while recognizing that equitable tolling may be appropriate in some circumstances, it "should not be applied so broadly and routinely that the statutory scheme itself is altered." *Id.*

In addressing motions seeking relief significantly more limited in scope than Plaintiffs' motion, some courts in this District have held that the time spent deciding a motion for

13

conditional certification and/or approving notice to potential opt-in Plaintiffs is a sufficient basis for equitably tolling the statute of limitations for that limited time period. *See*, *e.g.*, *Depalma v. Scotts Co. LLC,* No. 13-7740, 2017 WL 1243134, (D.N.J. Jan. 20, 2017) (granting request for equitable tolling from the date the conditional certification motion was filed until ten days after entry of the Order deciding it); *Ornelas v. Hooper Holmes, Inc.*, No. 12-3106, 2014 WL 7051868, (D.N.J. Dec. 12, 2014) (granting request for equitable tolling from date of completed briefing on motion for conditional certification until decision setting opt-in period). In the present case, the instant motion has been pending for several months, and notice cannot be finalized and issued until the tolling motion is resolved by Order from the District Judge with respect to this Report and Recommendation. Therefore, the Court concludes that some tolling relief is appropriate here. The Court finds it would be appropriate to toll the statute of limitations for Plaintiffs' FLSA claims from the date the motion for conditional certification was fully briefed, *i.e.*, May 3, 2019, until the date an Order is entered by the District Judge with respect to this Report and Recommendation.

The Court next turns to the question of to whom this equitable tolling applies. Plaintiffs have purportedly moved for equitable tolling on behalf of the potential opt-in Plaintiffs, but Defendants argue that the Court lacks jurisdiction to grant such a motion because those parties are not before the Court. Defendants contend that any ruling on the issue as to the potential opt-in Plaintiffs would constitute an impermissible advisory opinion.

The Court of Appeals for Third Circuit has not yet considered whether tolling the statute of limitations for potential opt-in Plaintiffs constitutes an impermissible advisory opinion. Indeed, despite the volume of decisions that have resolved tolling motions similar to the present motion, it appears that only a handful courts – one court of appeals and a several district courts –

have considered similar jurisdictional arguments. Most that have addressed the issue have found a lack of jurisdiction.

In *United States v. Cook*, 795 F.2d 987 (Fed. Cir. 1986), the Court of Appeals for the Federal Circuit vacated a lower court Order that tolled the statute of limitations for putative members of an FLSA collective action pending an interlocutory appeal. In vacating the Order, the Federal Circuit held that the employees covered by the tolling order had not filed claims, and, therefore, the lower court did not have the "power to give advisory opinions" regarding these non-parties "[u]nder general principles derived from the 'case or controversy' requirement of Article II, Section 2, Clause 1 of the U.S. Constitution." *Cook*, 795 F.2d at 994.

Several district courts have similarly denied tolling requests because potential opt-in Plaintiffs were not before the court. *See, e.g., Ruder v. CWL Investments LLC*, No. 16-4460, 2017 WL 3834783, at *2 (D. Ariz. July 27, 2017) (holding that "granting equitable tolling for hypothetical opt-in plaintiffs would constitute an impermissible advisory opinion"); *Richert v. LaBelle HomeHealth Care Serv. LLC*, No. 16-437, 2017 WL 4349084, at *6 (S.D. Ohio Sept. 29, 2017) (denying equitable tolling based on lack of information regarding potential opt-in plaintiffs and noting that the application of the requisite factors "to a group of potential opt-in plaintiffs, who have not yet received notice of the collective action and are not yet parties to the lawsuit, is convoluted at best."); *Roberts v. TJX Companies, Inc.*, No. 13-13142, 2017 WL 1217114, at *8 (D. Mass. Mar. 31, 2017) (denying motion for equitable tolling because of "the extraordinary nature of equitable tolling" and the possibility "that no putative plaintiffs whose claims are time-barred [may] ultimately elect to opt-in"); *Biggio v. H20 Hair Inc.*, No. 15-6034, 2016 WL 1031344, at *5 (E.D. La. Mar. 14, 2016) (finding that "the question of equitable tolling is not ripe for adjudication" because "argument for equitable tolling is wholly contingent on future

15

events that may never occur"); *In re Amazon.com, Inc., Fulfillment Ctr. FLSA Wage & Hour Litig.*, No. 14-2504, 2014 WL 3695750, at *3 (W.D. Ky. July 24, 2014) (finding that it would be "premature to grant blanket equitable tolling for plaintiffs who are currently hypothetical and have not yet come before this court.... [T]he Court does not yet possess knowledge sufficient to establish the diligence of all opt-in plaintiffs."); *Piekarski v. Amedisys Illinois, LLC*, No. 12-7346, 2013 WL 2357536, at *3 (N.D. Ill. May 28, 2013) (relying on *Cook* in finding "it would be improper for the Court to toll the statute of limitations for prospective plaintiffs"); *Tidd v. Adecco USA, Inc.*, No. 07-11214, 2010 WL 996769, at *3 (D. Mass. Mar. 16, 2010) (finding that "the plaintiffs' request for equitable tolling of the statute of limitations for potential class members is premature" and "[b]ecause these persons have not yet opted into the case, the plaintiffs are, in effect, asking for an advisory opinion, which the Court cannot issue.")

The Court finds these decisions persuasive. The potential opt-in Plaintiffs are not before the Court. Consequently, any decision as to them would constitute an impermissible advisory opinion. Accordingly, the Court will recommend denying that part of Plaintiffs' motion seeking equitable tolling on behalf of potential opt-in Plaintiffs.

## III. CONCLUSION, ORDER and RECOMENDATION

For the reasons above, Plaintiffs' motion for conditional certification and for Court-authorized notice under the FLSA is granted in part and denied in part. It is hereby recommended that Plaintiffs' motion for equitable tolling of the applicable statute of limitations for putative opt-in Plaintiffs be granted in part and denied in part. Accordingly,

IT IS on this 15th day of November 2019

ORDERED that Plaintiffs' motion for conditional certification and for court-authorized notice [ECF No. 100] is GRANTED subject to the limitations set forth in this Opinion and, if applicable, the future Order addressing the Report and Recommendation; and it is further

RECOMMENDED that Plaintiffs' motion for equitable tolling [ECF No. 116] be GRANTED IN PART as set forth in the Report and Recommendation; and it is further

RECOMMENDED that the statute of limitations for Plaintiffs' FLSA claims be tolled as of May 3, 2019 (the date the motion for conditional certification was fully briefed) through the date of the Order addressing the Report and Recommendation; and it is further

ORDERED that pursuant to Fed. R. Civ. P. 72, any objections to this Report and Recommendation are to be filed within 14 days after service hereof. Any party may respond to another party's objections within 14 days after being served with a copy thereof; and it is further

ORDERED that the Clerk is to terminate the motion at ECF No. 116 and activate this Report and Recommendation; and it is further

ORDERED that the parties are to submit to the Court a joint proposed notice form, consistent with the accompanying Opinion and, if applicable, the Order addressing the Report and Recommendation, within 21 days after entry of an Order by the District Judge with respect to the recommendations herein.

s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge