UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CRYSTAL SANCHEZ, SHAUNSEY JACKSON, MICHELLE ROMANO, JONI HENDERSON, RABIA AHMED, ANDREA BLANCHARD, PEARL MONTEIRO, and PETER SANO** <br> on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> **SANTANDER BANK, N.A.,** a subsidiary of Santander Holdings USA, Inc.; **GHOUS AGHA; KRISTEN RIMEK; and NADIA JOSEPH; JOHN & JANE DOE 1-10; XYZ CORPORATION (1-10),** <br><br> Defendants. | Civil Action No: 3:17-cv-05775-PGS-DEA <br><br> **Civil Action** <br><br> **THIRD AMENDED COMPLAINT AND JURY DEMAND** |

Named Plaintiffs Crystal Sanchez, Shaunsey Jackson, Michelle Romano, Joni Henderson, Rabia Ahmed, Andrea Blanchard, Pearl Monteiro, and Peter Sano (collectively "Named Plaintiffs") individually and on behalf of all others similarly situated, complains against the Defendant Santander Bank, N.A. a subsidiary of Santander Holdings USA, Inc. as follows:

## I.  NATURE OF THE ACTION

### A. AS TO PLAINTIFFS' WAGE AND HOUR CLAIMS

1.      Named Plaintiffs bring collective and class action claims against Defendant Santander Bank, N.A., a subsidiary of Santander Holdings USA, Inc. ("Santander"), on behalf of

themselves and all similarly situated current and former Branch Operations Managers ("BOMs") employed by Santander to recover for the Defendants' willful violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and pursuant to the wage and hour laws of multiple states.

2.      This action is brought to recover for Named Plaintiffs, and those similarly situated to them, unpaid wages, unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs of this action from Defendants pursuant to the FLSA, 29 U.S.C. §216(b), and, pursuant to the wage and hour laws of multiple states, including Connecticut, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, and Rhode Island to recover for Named Plaintiffs, and those similarly situated, unpaid applicable minimum wages, unpaid wages at the agreed rates of pay, unpaid overtime wages, liquidated damages, and reasonable attorneys' fees and costs of this action from Defendants.

3.      Named Plaintiffs have initiated the instant action to redress violations by Defendants of the FLSA and certain state laws.  Named Plaintiffs assert that Defendant failed to pay wages and overtime pay to Named Plaintiffs and those similarly situated for certain hours worked in violation of the law.

4.      In addition to pursuing claims under the FLSA, Named Plaintiffs Crystal Sanchez and Shaunsey Jackson (collectively "NJ Named Plaintiffs") also seek relief on behalf of themselves and all similarly situated current and former BOMs employer by Santander in the state of New Jersey to recover for Defendants' violations of the New Jersey Wage and Hour Law N.J.S.A., 34:11-56.1 to -56.12 ("NJWHL"), the New Jersey Minimum Wage Act ("NJMWA"), the New Jersey Wage Payment Law ("NJWPL") (collectively "NJ Wage Laws").

5.      In addition to pursuing claims under the FLSA, Named Plaintiff Joni Henderson ("PA Named Plaintiff") has initiated the instant action to redress violations by Defendant of the

Pennsylvania Minimum Wage Act, 43P.S. §§333.101-.115 ("PMWA") and the Pennsylvania Wage Payment Collection Law, 43 P.S. §260.1 et seq. ("PWPCL") (collectively "PA Wage Laws"). PA Named Plaintiff asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of PA Wage Laws.

6. In addition to pursuing claims under the FLSA, Named Plaintiff Michelle Romano ("NY Named Plaintiff"), has initiated the instant action to redress violations by Defendant of the New York Minimum Wage Act, N.Y. Lab. Law §§ 650 et. seq., N.Y. Lab. Law § §190 et. seq., and 12 N.Y.C.C.R. § 142 (collectively, "NY Wage Laws"). NY Named Plaintiff asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of NY Wage Laws.

7. In addition to pursuing claims under the FLSA, Named Plaintiff Rabia Ahmed ("CT Named Plaintiff"), has initiated the instant action to redress violations by Defendant of the Connecticut Minimum Wage Law, 31 CT ST Ch. 558, §§ 31-60, et al. and the Connecticut Wage Payment Law, 31 CT ST Ch. 558 § 31-71, et al. (collectively, "CT Wage Laws"). CT Named Plaintiff asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of CT Wage Laws.

8. In addition to pursuing claims under the FLSA, Named Plaintiff Pearl Monteiro ("MA Named Plaintiff"), has initiated the instant action to redress violations by Defendant of the Massachusetts Wage Act and the Massachusetts Minimum Wage Law, M.G.L. Ch. 149 and M.F.L. Ch. 151 et al. (collectively the "MA Wage Laws"). MA Named Plaintiff asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of MA Wage Laws.

9.       In addition to pursuing claims under the FLSA, Named Plaintiff Andrea Blanchard ("NH Named Plaintiff"), has initiated the instant action to redress violations by Defendant of the New Hampshire Minimum Wage Law and the New Hampshire Wage Payment Law, NH Rev. Stat. § 279, et al. (collectively the "NH Wage Laws").  NH Named Plaintiff asserts Defendant failed to pay her and those similarly situated proper overtime compensation and wages for all hours worked, in violation of NH Wage Laws.

10.      In addition to pursuing claims under the FLSA, Named Plaintiff Peter Sano ("RI Named Plaintiff"), has initiated the instant action to redress violations by Defendant of the Rhode Island Minimum Wage Act, R.I.G.L. § 28-12-1 et seq., and the Rhode Island Payment of Wages Act, R.I. Gen. Laws § 28-14-19.2, et seq. (collectively the "RI Wage Laws"). RI Named Plaintiff asserts Defendant failed to pay him and those similarly situated proper overtime compensation and wages for all hours worked, in violation of the RI Wage Laws.

## JURISDICTION AND VENUE

11.      The foregoing paragraphs are incorporated herein as if set forth in full.

12.      This Court has personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

13.      This Court has original subject matter jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 because the claims herein arise under laws of the United States, the FLSA.  This Court has supplemental jurisdiction over related state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

14.      The Court additionally has jurisdiction over the state law claims under the Class

Action Fairness Act of 2005 because the aggregate value of the putative class claims is in excess of $5 million and at least one class member is domiciled in a state other than the domicile of Defendants.

      15.    Venue is properly in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

      15.    The foregoing paragraphs are incorporated herein as if set forth in full.

      16.    Plaintiff Sanchez is an adult individual who resides in New Jersey.

      17.    Throughout the Relevant Period, Plaintiff Sanchez worked for Defendant in New Jersey as a BOM.

      18.    Plaintiff Jackson is an adult individual who resides in New Jersey.

      19.    Throughout the Relevant Period, Plaintiff Jackson worked for Defendant in New Jersey as a BOM.

      20.    Plaintiff Henderson is an adult individual who resides in Pennsylvania.

      21.    Throughout the Relevant Period, Plaintiff Henderson worked for Defendant in Pennsylvania as a BOM.

      22.    Plaintiff Romano is an adult individual who resides in New York.

      23.    Throughout the Relevant Period, Plaintiff Romano worked for Defendant in New York as a BOM.

      24.    Plaintiff Ahmed is an adult individual who resides in Connecticut.

25.     Throughout the Relevant Period, Plaintiff Ahmed worked for Defendant in Connecticut as a BOM.

26.     Plaintiff Monteiro is an adult individual who resides in Massachusetts.

27.     Throughout the Relevant Period, Plaintiff Monteiro worked for Defendant in Massachusetts as a BOM.

28.     Plaintiff Blanchard is an adult individual who resides in New Hampshire.

29.     Throughout the Relevant Period, Plaintiff Blanchard worked for Defendant in New Hampshire as a BOM.

30.     Plaintiff Sano is an adult individual who resides in Rhode Island.

31.     Throughout the Relevant Period, Plaintiff Sano worked for Defendant in Rhode Island as a BOM.

32.     Defendant Santander is a corporation with its principal executive offices located at 75 State Street, Boston, MA 02109.

33.     The following is believed to accurately describe Santander:

Santander Bank, N. A. provides banking products and services. It offers personal checking accounts, savings and money market accounts, certificates of deposit, online and mobile banking, overdrafts, lines of credit, loans, mortgages, investment services, insurance services, and credit cards; and business banking, including basic services, business cash management, business online banking, professional service banking, advanced services, international services, merchant services, and small business borrowing; and corporate commercial banking, specialty banking, real estate banking, lending, international services, capital markets, and treasury management. The company was formerly known as Sovereign Bank, National Association and changed its name to Santander Bank, N. A. in October Santander Bank, N. A. operates as a subsidiary of Santander Holdings USA, Inc.

34.     At all times relevant herein, Santander was/were Named Plaintiffs' and those similarly situated's "employers," and Defendant was engaged in "interstate commerce" as defined in the FLSA.

35.    Since three years prior to the filing of this action for those Plaintiffs covered by the FLSA, New Jersey Wage Laws, PA Wage Laws, NH Wage Laws, CT Wage Laws, RI Wage Laws and/or MA Wage Laws (the "Relevant Period"), and since six years from the filing of this action for those individuals working in the state of New York, Defendants failed to pay Named Plaintiffs, and those similarly situated, for work activities they were required to perform.  Because Named Plaintiffs work 40 or more hours per week, the failure to pay for such time constitutes a failure to pay for all overtime worked.

36.    Throughout the Relevant Period, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times within the course and scope of their employment with and for Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS
### *General Allegations*

15.    The foregoing paragraphs are incorporated herein as if set forth in full.

15.    In addition to bringing this action individually, Named Plaintiffs bring this action for violations of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all Branch Operations Managers and those with substantially similar job duties currently and formerly employed by Defendant subject to Defendant's unlawful pay practices and policies and who, since the three years prior to the filing date of this action to the present date and continuing during the pendency of the litigation, Defendant failed to pay for all overtime worked.

16.    Under the collective action brought under FLSA, the proposed Collective consists of All persons employed in the United States and Puerto Rico by Santander, N.A. a subsidiary of Santander Holdings USA, as a Branch Operations Manager who are or were employed at any time

from June 29, 2014 through o the entry of Judgment in this action, who worked in excess of 40 hours per workweek with each hour over 40 being unpaid and "off the clock", inclusive of not being paid a legally required overtime rate of 1.5 times their regular rate of compensation for the hours worked in excess of 40 per workweek (hereinafter the proposed "Nationwide Collective Class").

17.    Named Plaintiffs and Collective Plaintiffs are similarly situated, have substantially similar job duties, have substantially similar pay provisions, and are (or have been) subject to Defendant's unlawful policies and practices as discussed infra.

18.    There are numerous similarly situated current and former employees of Defendant who were compensated improperly for overtime work in violation of the FLSA and who may benefit from the issuance of a Court Supervised Notice of the instant lawsuit advising of their right to join in the present lawsuit, in accordance with 29 U.S.C. §216(b).

19.    Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and may be located through Defendant's records.

20.    To remedy their damages and the Nationwide Collective Class members Named Plaintiffs seek to represent under FLSA, Named Plaintiffs bring this action as a nation-wide collective action pursuant to 29 U.S.C. § 216(b).

21.    Specifically, under FLSA, Named Plaintiffs seek a declaration that their rights, and the rights of other Nationwide Collective Class members were violated, and an award of unpaid wages, liquidated damages, interest, and reasonable attorneys' fees and costs to make them whole for damages suffered.

22.      Therefore, Named Plaintiffs should be permitted to bring this action as a collective action for and on behalf of themselves and those employees similarly situated, pursuant to the "opt-in" provisions of the FLSA, 29 U.S.C. § 216(b).

23.      Plaintiff does not bring this action on behalf of any executive, administrative, or professional employee exempt from coverage under the FLSA.

24.      With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the BOMs described are "similarly situated" to Plaintiff. The class of employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; (c) they were paid substantially similar pay provisions; and (d) their claims are based upon the same legal theories.

25.      Plaintiff estimates that the collective Nationwide Collective Class, including both current and former BOMs over the relevant period will be in the hundreds, if not thousands. According to the Certification of Ryan Morin, Senior Vice President, Human Resources Head of Compensation for Santander Bank, N.A., filed with the Court in support of Santander's Notice of Removal, "preliminary review of Santander's business records, it appears that in the state of New Jersey, Santander employed 148 BOMs in 2015, 143 in 2016 and 142 in 2017." Morin Cert. ¶This means in New Jersey alone between the years 2015-2017, Santander employed 443 BOMs. It is reasonable to assume that Santander maintains similar business records such as personnel, scheduling, time, and payroll records for the branches it operates in states other than New Jersey. Therefore, the precise number of collective Nationwide Collective Class members should be readily available from Defendant Santander and from input received from the Nationwide

Collective Class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).

26.    As of 2011 it was reported that Santander had nearly \$77 billion in assets and 723 branches in nine states.[1]  According to Santander's Form 10-K filing with the United States Securities and Exchange Commission, as of December 31, 2014 Santander's principal market was the Mid-Atlantic and Northeastern United States where it operated over 700 branches, and employed 14,000 team members.[2]  Given the substantial scope of its operations, it is fair to say that the collective Nationwide Collective Class of BOMs will number in excess of a thousand.

27.    Plaintiff's and other potential Nationwide Collective Class members' entitlement to compensation for time worked over 40 hours in a workweek and overtime pay, except for amount, is identical and depends on two uniform factual questions: (1) Did BOMs work "off the clock," meaning without pay, for time worked in excess of 40 hours in a workweek? and (2) Did Defendant pay its BOMs overtime compensation for each hour worked over forty (40) in a workweek at a rate of 1.5 times their regular rate of compensation?

28.    In its Notice of Removal, Santander sets forth calculations as to what it believes unpaid overtime wages to the putative class of BOMs who only worked in New Jersey as follows:

> ¶Assuming that plaintiff's claims are representative of the putative class (which, as stated above, defendants dispute), each BOM worked in branches that were understaffed, resulting in them each working 10-12 hours per week off-the-clock. (reference to exhibit omitted). The average hourly rate for a BOM was \$17.28 in 2015, \$17.39 in 2016 and \$18.21 in (reference to exhibit omitted). Thus, the average overtime rate for a BOM (at time and a half) would be calculated to be \$25.92 in 2015, \$26.09 in 2016 and \$27.32 in 2017.

---

[1] Source: http://archive.boston.com/business/articles/2011/09/28/sovereign_changes_its_name_to_santander/

[2] Source: https://www.sec.gov/Archives/edgar/data/811830/000081183015000004/santanderholdings10-k2014.htm

¶Using the time period of two years set forth in plaintiff's definition of the class, the Court should consider the potential overtime worked by the BOMs from June 29, 2015- June 29, 2017, containing approximately six months in 2015, the full year in 2016 and six months in 2017.

¶The Court should likewise consider that each class member could have worked 10-12 hours off-the-clock, as alleged by plaintiff (and again, denied by defendants).

¶Therefore, assuming each class member worked 12 hours of overtime per week, the class members worked a total of $1,196,881.92 in overtime in the six months in 2015, $2,328,062.88 in overtime in 2016, and $1,210,385.28 in overtime in the six months in 2017, totaling **$4,735,330.08** in overtime. (footnote omitted)

¶Further, case law supports the inclusion of two additional years post-filing of the Complaint for calculating potential liability for NJWHL claims. *Faltaous v. Johnson & Johnson,* 2007 WL 3256833, at \*9 (D.N.J. Nov. 5, 2007) (Report and Recommendation, Falk, M.J., adopted in full by Linares, C.J.); *and Alegre v. Atl Ctrl. Logistics,* 2015 WL 4607196, at \*3-4 (D.N.J. July 25, 2015) (Chesler J., citing *Faltaous, supra).* Thus, using the 2017 number of BOMs and average overtime rate, an additional two years of liability could amount to an additional **$4,841,541.12** in damages. (footnote omitted)

¶The total claimed unpaid wages through judgment is **$9,576,871.**(footnote omitted).

(emphases included in original)

29.     Considering there are 8 states other than New Jersey where Santander maintains and operates branches, it may be safely assumed the total claimed unpaid wages that Santander

will owe the Nationwide Class will be in the tens of millions of dollars.

30.     The classification status of the Nationwide Collective Class and Named Plaintiffs involves identical legal questions: Were Santander's BOMs non-exempt employees such that Santander owes them: a) compensation for time worked over 40 hours in a workweek under the FLSA; and b) overtime compensation for hours worked over 40 in a workweek under the FLSA?

31.     Plaintiff shares the same interests as the Nationwide Collective Class in that the outcome of this action will determine whether they are either exempt or non-exempt employees under the FLSA. Because the facts in this case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## CLASS ACTION ALLEGATIONS
### *Class of New Jersey Employees*

32.     The foregoing paragraphs are incorporated herein as if set forth in full.

33.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, NJ Named Plaintiffs bring their claim for relief to redress Defendant's violations of the NJ Wage Laws on behalf of themselves and those similarly situated.

16.     Specifically, NJ Named Plaintiffs seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from June 29, 2015 through the entry of judgment and who worked in Santander's branches located in New Jersey and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "NJ Class").

34.     NJ Named Plaintiffs and members of the NJ Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

35.     The class is so numerous that the joinder of all class members is impracticable, because the NJ Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

36.     The NJ Named Plaintiffs' claims are typical of the claims of the NJ Class because NJ Named Plaintiffs, like all members of the NJ Class, were employed by Defendant during the Relevant Time Period in New Jersey (1) whom Defendant forced to work off-the-clock and (2) whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by New Jersey Wage Laws.

37.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

38.     Therefore, NJ Named Plaintiffs should be permitted to bring this action as a class action for and on behalf of themselves and those New Jersey employees similarly situated.

### *Class of Pennsylvania Employees*

39.     The foregoing paragraphs are incorporated herein as if set forth in full.

40.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, PA Named Plaintiff brings her claim for relief to redress Defendant's violations of the PA Wage Laws on behalf of herself and those similarly situated.

17.     Specifically, PA Named Plaintiff seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from the three years prior to the filling of this action through the entry of judgment and who worked in Santander's branches located in Pennsylvania and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "PA

Class").

41.     PA Named Plaintiff and members of the PA Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

42.     The class is so numerous that the joinder of all class members is impracticable, because the PA Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

43.     The PA Named Plaintiff's claims are typical of the claims of the PA Class because PA Named Plaintiff, like all members of the PA Class, was employed by Defendant during the Relevant Time Period in Pennsylvania (1) whom Defendant forced to work off-the-clock and (2) whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by PA Wage Laws.

44.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

45.     Therefore, PA Named Plaintiff should be permitted to bring this action as a class action for and on behalf of themselves and those Pennsylvania employees similarly situated.

### *Class of New York Employees*

46.     The foregoing paragraphs are incorporated herein as if set forth in full.

47.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, NY Named Plaintiff brings her claim for relief to redress Defendant's violations of the NY Wage Laws on behalf of herself and those similarly situated.

18.     Specifically, NY Named Plaintiff seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from the six years prior to

the filling of this action through the entry of judgment and who worked in Santander's branches located in New York and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "NY Class").

48.     NY Named Plaintiff and members of the NY Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

49.     The class is so numerous that the joinder of all class members is impracticable, because the NY Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

50.     The NY Named Plaintiff's claims are typical of the claims of the NY Class because NY Named Plaintiff, like all members of the NY Class, was employed by Defendant during the Relevant Time Period in New York (1) whom Defendant forced to work off-the-clock and (2) whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by NY Wage Laws.

51.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

52.     Therefore, NY Named Plaintiff should be permitted to bring this action as a class action for and on behalf of themselves and those New York employees similarly situated.

### ***Class of Massachusetts Employees***

53.     The foregoing paragraphs are incorporated herein as if set forth in full.

54.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, MA Named Plaintiff brings her claim for relief to redress Defendant's violations of the MA Wage Laws on behalf of herself and those similarly situated.

19.     Specifically, MA Named Plaintiff seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from the three years prior to the filling of this action through the entry of judgment and who worked in Santander's branches located in New York and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "MA Class").

55.     MA Named Plaintiff and members of the MA Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

56.     The class is so numerous that the joinder of all class members is impracticable, because the MA Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

57.     The MA Named Plaintiff's claims are typical of the claims of the MA Class because MA Named Plaintiff, like all members of the MA Class, was employed by Defendant during the Relevant Time Period in Massachusetts (1) whom Defendant forced to work off-the-clock and (2) whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by MA Wage Laws.

58.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

59.     Therefore, MA Named Plaintiff should be permitted to bring this action as a class action for and on behalf of themselves and those Massachusetts employees similarly situated.

### *Class of Connecticut Employees*

60.     The foregoing paragraphs are incorporated herein as if set forth in full.

61.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, CT Named Plaintiff brings her claim for relief to redress Defendant's violations of the CT Wage Laws on behalf of herself and those similarly situated.

20.     Specifically, CT Named Plaintiff seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from the three years prior to the filling of this action through the entry of judgment and who worked in Santander's branches located in Connecticut and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "CT Class").

62.     CT Named Plaintiff and members of the CT Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

63.     The class is so numerous that the joinder of all class members is impracticable, because the CT Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

64.     The CT Named Plaintiff's claims are typical of the claims of the CT Class because MA Named Plaintiff, like all members of the CT Class, was employed by Defendant during the Relevant Time Period in Massachusetts (1) whom Defendant forced to work off-the-clock and (2)

whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by CT Wage Laws.

65. Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

66. Therefore, CT Named Plaintiff should be permitted to bring this action as a class action for and on behalf of themselves and those Connecticut employees similarly situated.

### *Class of New Hampshire Employees*

67. The foregoing paragraphs are incorporated herein as if set forth in full.

68. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, NH Named Plaintiff brings her claim for relief to redress Defendant's violations of the NH Wage Laws on behalf of herself and those similarly situated.

21. Specifically, NH Named Plaintiff seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from the three years prior to the filling of this action through the entry of judgment and who worked in Santander's branches located in New Hampshire and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "NH Class").

69. NH Named Plaintiff and members of the NH Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

70.     The class is so numerous that the joinder of all class members is impracticable, because the NH Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

71.     The NH Named Plaintiff's claims are typical of the claims of the NH Class because NH Named Plaintiff, like all members of the NH Class, was employed by Defendant during the Relevant Time Period in New Hampshire (1) whom Defendant forced to work off-the-clock and (2) whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by NH Wage Laws.

72.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

73.     Therefore, NH Named Plaintiff should be permitted to bring this action as a class action for and on behalf of themselves and those New Hampshire employees similarly situated.

### *Class of Rhode Island Employees*

74.     The foregoing paragraphs are incorporated herein as if set forth in full.

75.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, RI Named Plaintiff brings his claim for relief to redress Defendant's violations of the RI Wage Laws on behalf of herself and those similarly situated.

22.     Specifically, RI Named Plaintiff seek to bring this action on behalf of all BOMs and those with substantially similar job duties by Santander at any time from the two years prior to the filling of this action through the entry of judgment and who worked in Santander's branches located in Rhode Island and who worked over 40 hours per week and worked "off the clock" without pay and were not paid overtime pay at a rate of one and one-half times their regular rate for all hours worked in excess of 40 hours during a workweek (hereinafter the proposed "RI

Class").

76.     RI Named Plaintiff and members of the RI Class are similarly situated, have been subject to substantially similar pay provisions, and are all subject to Defendant's unlawful policies and practices as described herein.

77.     The class is so numerous that the joinder of all class members is impracticable, because the RI Class, alone or along with Plaintiffs in states with similar law, is more than 40 individuals.

78.     The RI Named Plaintiff's claims are typical of the claims of the RI Class because RI Named Plaintiff, like all members of the RI Class, was employed by Defendant during the Relevant Time Period in Rhode Island (1) whom Defendant forced to work off-the-clock and (2) whom Defendant required to work more than 40 hours per workweek and then failed to pay proper overtime wages as required by RI Wage Laws.

79.     Similarly situated employees are known to Defendant, are readily identifiable by Defendant, and can be located through Defendant's records.

80.     Therefore, RI Named Plaintiff should be permitted to bring this action as a class action for and on behalf of themselves and those Rhode Island employees similarly situated.

**FACTUAL BACKGROUND**

23.     Named Plaintiffs, and members of the Nationwide Collective Class, CT Class, MA Class, NH Class, NJ Class, NY Class, RI Class, and PA Class (collectively "All Putative Collective and Class Members"), were subjected to Santander's policies and practices placed in effect to not pay overtime which had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members

from reporting overtime hours worked while at the same time compelling Plaintiff and All Putative Collective and Class Members to work "off the clock" to avoid triggering overtime wages at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek, all in violation of FLSA and state law.

24. Work that is "off the clock" is defined herein as any work done for an employer which is not compensated and is not counted towards workers' weekly hours for overtime pay purposes. The FLSA defines the terms "employ" to include the words "suffer or permit to work." This means work not required or requested by the employer but is allowed or permitted by the employer to be performed is work time that must be paid for by the employer. For example, an employee may voluntarily continue to work at the end of the shift to finish an assigned task or to correct errors. The reason is immaterial. The hours are work time and are compensable.

## III. GENERAL ALLEGATIONS

25. Santander employs several different types of workers, including but not limited to, BOMs, and other corporate employees.

26. The job duties of a BOM include:

(a) processing customer transactions;

(b) count and balance cash vault;

(c) inventory control and organizing incoming materials;

(d) place work orders;

(e) order and verify weekly cash shipment;

(f) screen, prioritize and route incoming documents and calls;

(g) report production to the district executive;

(h) satisfying sales quotas for opening new accounts;

(i) assisting and supervising tellers;

(j) auditing tellers;

(k) proving teller boxes;

(l) vault custodian duties;

(m) performing bank opening duties;

(n) participating in BOM conference calls;

(o) attending training outside the branch;

(p) attending various meetings in and outside the branch; and

(q) organizing and attending marketing events outside the branch.

27.     Named Plaintiffs' and All Putative Collective and Class Members' duties as a BOM did not include hiring, firing, managing, or disciplining other employees.

28.     Named Plaintiffs' and All Putative Collective and Class Members did not exercise a meaningful degree of independent discretion with respect to the exercise of their duties as a BOM.

29.     Named Plaintiffs' and All Putative Collective and Class Members were not employed in an executive, administrative, or professional capacity by Defendant.

30.     Named Plaintiffs' and All Putative Collective and Class Members were not employees whose suggestions and recommendations as to the hiring or firing and as to the advancement of or any other change of status of other employees would be given any weight by Defendant.

31.     Thus, Named Plaintiffs' and All Putative Collective and Class Members were non-exempt employees throughout the period of their employment who should have been paid by the Defendant for all time worked including overtime for hours worked in excess of 40 hours per week.

32.     Consistent with Santander's policy, pattern and/or practice, Named Plaintiffs' and All Putative Collective and Class Members, regularly worked as a BOM in excess of 40 hours per workweek with each hour over 40 being unpaid and "off the clock" without pay, inclusive of not being paid a legally required overtime rate of 1.5 times her regular rate of compensation for the hours they worked in excess of 40 per workweek.

33.     Santander knew that failing to pay Named Plaintiffs' and All Putative Collective and Class Members for hours worked in excess of 40 per workweek and failure to pay overtime pay would financially injure Named Plaintiffs and the other BOMs and violate the FLSA, and state laws.

## VI.     SPECIFIC ALLEGATIONS DEMONSTRATING THAT SAME OR SIMILAR QUESTIONS OF FACT AND LAW ARE COMMON AND TYPICAL TO NAMED PLAINTIFFS AND ALL PUTATIVE COLLECTIVE AND CLASS MEMBERS.

34.     Santander had an unwritten policy, custom and practice of dissuading employees from reporting overtime hours by subjecting employees who worked overtime to discipline including verbal and written reprimands up to termination from employment. If a branch reported overtime hours, the branch would be questioned by Santander corporate management as to why the overtime was necessary.

35.     As a teller, Plaintiff Sanchez reported directly to BOM Archana Hajarnis ("Hajarnis").

36.     While working as a teller, Plaintiff Sanchez witnessed Hajarnis working off the clock, i.e. working without compensation, in order to adequately perform her responsibilities as BOM.

37.     In or about February 2016, Plaintiff was promoted to a BOM.

38.     In or about January-February 2016, Santander required Plaintiff Sanchez to attend BOM Training in Staten Island, New York.

39.     BOMs employed by Santander from various states, including New York and New Jersey, were present at this training. During the training, BOMs openly discussed in front of Plaintiff the fact that Santander's mandated policies and job duties for BOMs forced them to frequently work off the clock.

40.     Though the Named Plaintiffs worked in different branches located in different states and operating under different local managers, each was required to work significant hours off-the-clock to significantly reduce the reported overtime, and accordingly, the overtime paid by Defendant.

41.     Each of Santander's branches receives a scorecard rating the branch's performance.

42.     The scorecard was used in part to calculate branch manager bonus pay.

43.     The scorecard rating could be adversely affected by overtime hours worked by non-exempt staff at the bank.

44.     Understaffing at Santander branches was a chronic problem, and made it virtually impossible for to BOMs to complete all their duties in a reasonably effective manner within a 40 hour workweek.

45.     Because of the short staffing and the prohibition on working overtime, Sanchez felt compelled to work 10-12 hours per week off the clock, i.e., uncompensated, so that the branch would be able to effectively serve its customers.

46.     BOMs frequently complained to management that they were understaffed and that they were working off-the-clock.

47.     Throughout the Relevant Time Period, Santander maintained policies and

procedures requiring Named Plaintiffs and All Putative Collective and Class Members to report their daily start and stop times, as well as their lunch breaks, and any overtime hours. Santander claimed its policies were in place to ensure Named Plaintiffs and similarly situated BOMs were compensated for all hours worked, including pay for all overtime hours. However, Santander branch and corporate level management had actual or constructive notice and knowledge that these policies were not being adhered to, yet failed to take remedial action to ensure that the policies were enforced.

48.     Throughout the Liability Period, Santander had in place a Scorecard Policy for its BOMs which penalized or reduced BOM compensation when overtime hours were worked and reported.

49.     When combined with the time required to perform her/their duties as a BOM reasonably and effectively, Santander's Scorecard Policy which penalized or reduced BOM compensation when overtime hours were worked and reported had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing BOMs from reporting overtime hours worked while at the same time compelling BOMs to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

50.     Throughout the Relevant Time Period, Santander also had in effect a Cross Selling Policy for its BOMs, which penalized or reduced their compensation if they did not meet mandated account opening/sales targets or quotas.

51.     When combined with the time required to perform her/their duties as a BOM reasonably and effectively, and Santander's previously mentioned Scorecard Policy, Santander's

Cross Selling Policy which penalized BOMs by reducing their compensation if they did not meet mandated account opening/sales targets or quotas had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

52.    Throughout the Relevant Time Period, Santander has had in effect a "Feet on the Street" Policy for its BOMs, including Named Plaintiffs and All Putative Collective and Class Members, which required BOMs to leave the branch to market Santander's products and services with local businesses.

53.    When combined with the time required to perform her/their duties as a BOM reasonably and effectively, and Santander's previously mentioned Scorecard Policy and Cross Selling Policy, Santander's Feet on the Street Policy requiring BOMs to leave the branch to market Santander's products and services with local businesses had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

54.    Additionally, throughout the Relevant Time Period, Santander held "Jump Start

Meetings" which the BOMs were to attend before the branch opened for business to discuss the agenda for the day. These meetings generally took place at approximately 8:30 a.m.

55. When combined with the time required to perform her/their duties as a BOM reasonably and effectively, and Santander's previously mentioned Scorecard Policy, Cross Selling Policy, and Feet on the Street Policy, attendance at Santander's Jump Start Meetings had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

56. Throughout the Liability Period, Santander has had in effect policies and/or procedures mandating BOMs to participate in conference calls once per week. These conference calls generally took place at approximately 8:00 a.m.

57. When combined with the time required to perform her/their duties as a BOM reasonably and effectively, and Santander's previously mentioned Scorecard Policy, Cross Selling Policy, Feet on the Street Policy, and attendance at Santander's Jump Start Meetings, Santander's practice of requiring Plaintiff and the putative class of BOMs to participating in conference calls once per week starting at 8 a.m. had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Plaintiff and the putative class of BOMs from reporting overtime hours worked while at the same time compelling Plaintiff and the putative class of BOMs to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but

failed to correct this unlawful practice of working off the clock.

58.      Throughout the Liability Period, Santander has had in effect a policy and/or procedure which mandates the BOMs to attend weekly operations meetings to discuss their cross-selling efforts.

59.      When combined with the time required to perform her/their duties as a BOM reasonably and effectively, and Santander's previously mentioned Scorecard Policy, Cross Selling Policy, Feet on the Street Policy, attendance at Santander's Jump Start Meetings, and Santander's practice of requiring BOMs to participating in conference calls once per week started at 8 a.m., Santander's practice of requiring Plaintiff and the putative class of BOMs to participate in weekly Operations meetings had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing BOMs from reporting overtime hours worked while at the same time compelling Plaintiff and the putative class of BOMs to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

60.      Throughout the Relevant Time Period, Santander has had in effect a policy and/or procedure which mandates the BOMs to act as Vault Custodian. This required the BOMs to be present at the branch before it opened and after it closed each day.

61.      When combined with Santander's previously mentioned Scorecard Policy, Cross Selling Policy, Feet on the Street Policy, attendance at Santander's Jump Start Meetings, Santander's practice of requiring BOMs to participating in conference calls once per week started at 8 a.m., and Santander's practice of requiring BOMs to participate in Operations Meetings, Santander's practice of requiring BOMs to act as Vault Custodians thereby compelling them to be

at the branch before it opened and after it closed each day, had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

62.     Throughout the Relevant Time Period, Santander has had in effect a policy, custom or practice requiring BOMs, like Plaintiff and those similarly situated, to perform off site visits to open accounts for customers.

63.     When combined with the time required to perform her/their duties as a BOM reasonably and effectively, and Santander's previously mentioned Scorecard Policy, Cross Selling Policy, Feet on the Street Policy, attendance at Santander's Jump Start Meetings, Santander's practice of requiring BOMs to participating in conference calls once per week started at 8 a.m., Santander's practice of requiring BOMs to participate in Operations Meetings, and Santander's practice of requiring BOMs to act as Vault Custodians, Santander's practice requiring BOMs to perform off site visits had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

64.    Throughout the Relevant Time Period, Santander has had in effect a policy, custom or practice of requiring BOMs to assist tellers with closing their teller box. This approximately took between a half hour to an hour and occurs after the branch closes.

65.    When combined with the time required to perform her/their duties as a BOM reasonably and effectively, Santander's previously mentioned Scorecard Policy, Cross Selling Policy, Feet on the Street Policy, attendance at Santander's Jump Start Meetings, Santander's practice of requiring BOMs to participating in conference calls once per week started at 8 a.m., Santander's practice of requiring BOMs to participate in Operations Meetings, and Santander's practice of requiring BOMs to act as Vault Custodians, and Santander's practice requiring BOMs to perform off site visits, Santander's policy, custom or practice of requiring BOMs to assist tellers with closing their teller box which typically took place a half hour to an hour after the branch closes, had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

66.    Throughout the Relevant Time Period, Santander has had in effect a Performance Improvement Plan (PIP) Policy requiring BOMs to be disciplined, up to and including termination, if they do not meet Santander's quotas, goals and/or targets.

67.    Failure to meet Santander's quarterly goals, would also result in a lower score for the branch and could result in discipline, such as counseling, written reprimands, and even termination which had the reasonably foreseeable effect of dissuading, deterring, discouraging,

intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of this, but failed to correct this unlawful practice of working off the clock. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

68.     Throughout the Relevant Time Period, Santander has had in effect a disciplinary policy requiring BOMs be disciplined, up to and including termination, if they reported overtime hours which had the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay. Santander branch and corporate level management had actual or constructive notice and knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

69.     Santander directed Plaintiff and others similarly situated BOMs to take daily a one-half hour unpaid lunch break. However, due to high levels of customer activity and the other hereinabove described duties and responsibilities of the BOMs, it was reasonably foreseeable Named Plaintiffs and All Putative Collective and Class Members, were not able to perform all of their tasks in a reasonable and effective manner while also taking a daily lunch break. Therefore, Named Plaintiffs and All Putative Collective and Class Members would work during their lunch breaks. Santander branch and corporate level management had actual or constructive notice and

knowledge of the foregoing circumstances, but failed to correct this unlawful practice of working off the clock.

70.     Throughout the Liability Period, Santander knowingly and willfully failed to comply with the pay and overtime pay requirements of FLSA and state law.

71.     Instead of enforcing Santander's written policies mandating compliance with federal and state wage and hour laws, Santander management instead knowingly and willfully discouraged its employees from recording and submitting accurate timecards reflecting true and accurate hours worked.

72.     Throughout the Liability Period, Santander knowingly and willfully failed to comply with the overtime pay requirements of FLSA and state law, by permitting Named Plaintiffs and All Putative Collective and Class Members and to perform work for Santander off the clock and in doing so likewise failed to pay Named Plaintiffs and All Putative Collective and Class Members all wages due, including but not limited to overtime wages for all the hours worked in excess of forty (40) hours in a workweek at the rate of one and one-half times their regular rate of pay.

73.     The foregoing facts well establish that the Nationwide Collective, and the CT Class, MA Class, NH Class, NJ Class, NY Class, PA Class, and RI Class, are sufficiently numerous in size, and present questions of law and fact common and typical to both, that is, BOMS being subject to Santander policies and practices having the reasonably foreseeable effect of dissuading, deterring, discouraging, intimidating and/or coercing Named Plaintiffs and All Putative Collective and Class Members from reporting overtime hours worked while at the same time compelling Named Plaintiffs and All Putative Collective and Class Members to work off the clock to avoid triggering overtime pay at a rate of one and one-half times their regular rate for hours worked in

excess of 40 hours during a workweek, all in violation of FLSA and state law. Santander branch and corporate level management had actual or constructive notice and knowledge that these policies were not being adhered to, yet failed to take remedial action to ensure that the policies were enforced.

### VII. AS TO PLAINTIFF SANCHEZ'S PENDENT NJ STATE CLAIMS ALLEGING DISCRIMINATION, WHISTLEBLOWING, WORKERS COMPENSATION RETALIATION, FRAUD & PROMISSORY ESTOPPEL.

74.     Plaintiff Sanchez also brings individual pendent states claims of sexual harassment and disability discrimination in violation of New Jersey's Law Against Discrimination (LAD), N.J.S.A., 10:5-1, et. al. unlawful retaliation in violation of New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A., 34:19-1, et. seq., retaliation in violation of New Jersey's Workers Compensation Laws (WCL), N.J.S.A. 34:15-39.1, intentional infliction of emotional harm, constructive discharge, fraudulent inducement and promissory estoppel against Santander and individual Defendants Ghous Agha, Nadia Joseph, and Kristen Rimek. Specifically, Plaintiff Sanchez alleges that while working as a BOM at Santander's branch office located at 920 Route 9, South Amboy, New Jersey, she was the victim of the following:

   a.     Sexual Harassment – After Co-Defendant Ghous Agha began working for Santander a teller, he began to subject Crystal Sanchez to unwelcome sexually offensive and gender based behavior.  Despite Sanchez informing Co-Defendants Kristen Rimek (Branch Manager), Nadia Joseph (District Manager) and Santander's HR Department of Agha's unwelcome, sexually offensive and gender inappropriate behavior, they failed to undertake timely

and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

b. Whistleblowing Claims - Sanchez disclosed to Defendants Rimek, Joseph and Santander her reasonable belief that Agha was the cause of the depletion of large denominations of money in Santander's vault, that is, he was embezzling and otherwise stealing money from the bank. Sanchez suffered retaliation for having disclosed the theft of money committed by Agha. For instance, by the time the second quarter of 2016 ended, Sanchez had opened close to 50 new bank accounts. When she received her incentive bonus, Sanchez discovered that she had only been paid a bonus for about 24 accounts and did not receive the bonus BOMs get quarterly.

c. Disability Discrimination - Because Santander, Joseph, and Rimek failed to provide Sanchez with a reasonable accommodation of an authorized medical leave so that she could receive treatment for her work-related stress and anxiety symptoms and need for medical treatment, Sanchez's medical condition further worsened and eventually became disabling.

d. Workers Compensation Retaliation - Joseph told Sanchez and Rimek that they were not to discuss Sanchez's medical condition otherwise Joseph and Rimek would be required to report Sanchez's medical condition to the bank's HR Department and the bank's workers' compensation carrier. Thereafter, Sanchez reasonably felt compelled to deal with her medical condition on her own, and to not seek help from her employer for fear of facing the wrath of Joseph and an adverse employment action. However,

Sanchez continued to update Rimek regarding Sanchez's ongoing and worsening physical, mental, and emotional condition. Because Santander failed to provide Sanchez with workers' compensation benefits after she informed Joseph and Rimek of her work-related stress and anxiety symptoms and need for medical treatment, Sanchez's medical condition further worsened and eventually became disabling.

e..Intentional Infliction of Emotional Harm/Constructive Discharge/Emotional Distress Disability - Because of the unlawful conduct of Santander, Agha, Joseph and Rimek, Sanchez's work conditions became intolerable with her experiencing memory loss, blurred vision, blackouts of her visions, and loss of cognitive and motor functions. For example, she was frequently unable to stand up or walk straight without stumbling around or into walls, and she had problems talking without forgetting what she was saying, or involuntarily switching between English and Spanish in conversations at work. Consequently, Sanchez felt compelled to inform Joseph and Rimek that she was resigning her position of employment with the bank effective close of business on Friday, August 5, Rimek advised Sanchez she could return to work at the branch in the future.

f.     Fraudulent Inducement/Promissory Estoppel - Santander and Joseph reneged on their promise to increase Sanchez's hourly pay to $16.00/hour in six months if she accepted the position of BOM. Santander and Joseph made misrepresentations to Sanchez solely to induce Sanchez into accepting the BOM position for a lower rate of pay than Sanchez wanted.

Because of Joseph's intentional and knowing misrepresentations, Sanchez

has and continues to sustain economic loss and suffer from severe mental

and emotional distress

## VIII. ALLEGATIONS AS TO PLAINTIFF SANCHEZ'S PENDENT STATE CLAIMS ALLEGING VIOLATIONS OF LAD, CEPA, WORKERS COMP. RETALIATION, FRAUD, PROMISSORY ESTOPPEL AND INTENTIONAL INFLICTION OF EMOTIONAL HARM.

### A. ALLEGATIONS OF SEXUAL HARASSMENT.

75.    Towards the end of February 2016, Ghous Agha was hired as a bank teller.

76.    As BOM, Plaintiff Sanchez Sanchez supervised Agha.

77.    After Agha began working for Santander, he subjected Sanchez to unwelcome

sexually offensive gender based behavior including, but not limited to, the following:

- Repeatedly offering to buy Sanchez food after she told him not to do so;

- Repeatedly making sexually offensive and unwelcome remarks about Sanchez's body including her legs, buttock, face, and petite shape;

- Offering to rub hot oil on Sanchez's body; and

- Being rude, annoying, disrespectful, and insubordinate towards Sanchez such as telling her she was "too serious" and should learn to have "fun," and telling customers how he hated Sanchez as his supervisor because he hates having to report to a female just a few years older than him.

78.    Sanchez reported Agha's sexually offensive and gender inappropriate behavior to Branch Manager Rimek.

79.    Because of Agha's sexually offensive and gender inappropriate behavior, Sanchez requested Rimek to put a stop to Agha's sexual harassment of her.

80.     Despite Sanchez requesting Rimek to take remedial action against Agha, Rimek did not.

81.     Despite reporting Agha's unwelcome, sexually offensive and gender inappropriate behavior to Branch Manager Rimek, Rimek failed to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

82.     Upon information and belief, Rimek informed District Manager Joseph of Sanchez complaining that Agha was subjecting her to unwelcome, sexually offensive and gender inappropriate behavior.

83.     Despite Joseph learning of Agha's sexually offensive and gender inappropriate behavior, Joseph failed to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

84.     Upon information and belief, Rimek informed Santander's Human Resources Department (HR) of Sanchez complaining that Agha was subjecting her to sexually offensive and gender inappropriate behavior.

85.     Other than giving Agha a written warning, which did not stop his sexually offensive and gender inappropriate behavior, Santander failed to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez.

86.     Santander failed to engage in a timely and effective investigation of complaints of sex and/or gender based harassment brought to its attention by Sanchez.

87.     Joseph failed to engage in a timely and effective investigation of complaints of sex and/or gender based harassment brought to its attention by Sanchez.

88.     Rimek failed to engage in a timely and effective investigation of complaints of sex and/or gender based harassment brought to its attention by Sanchez.

89.     Agha's sexually offensive and gender inappropriate behavior towards Sanchez caused Sanchez great mental and emotional distress.

90.     The failure of Rimek, Joseph, and Santander to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez, Sanchez has and continues to suffer from great mental and emotional distress.

91.     Because of Agha's sexually offensive and gender inappropriate behavior towards Sanchez and the failure of Rimek, Joseph, and Santander to undertake timely and reasonable measures to put a stop to the sexual harassment and hostile work environment Agha created for Sanchez, Sanchez suffered mental and emotional distress, became physically ill, and was required to seek medical evaluation and treatment.

## B. ALLEGATIONS AS TO PLAINTIFF SANCHEZ'S WHISTLEBLOWING CLAIM.

92.     When Agha started working as a teller, Sanchez noticed bills in large denominations stored in the vault were depleting at an alarming rate and the money was not lasting the full week as it usually did. Sanchez reported to Rimek her suspicions that Agha was the cause of the depletion of large denominations in the vault, that is, he was embezzling money from the bank. To confirm her suspicions, Sanchez informed Rimek that she would arrange for Agha to come to work on a day he did not normally work so that she could audit him.

93.     On the date of Agha's audit, Sanchez instructed him not to open his cash drawer at his teller window after which she left him to inform Rimek that she would be auditing Agha's cash drawer.

94.     When Sanchez returned to Agha's teller window to perform the audit, Agha had left. A few minutes later Sanchez received a text message from Agha stating he forced balanced his cash drawer.

95. Sanchez reported what had occurred to Rimek and requested her to audit Agha's cash box under dual control.

96. Agha never returned to work at Santander.

97. Thereafter, Sanchez and Rimek performed a dual control audit of Agha's cash drawer and discovered almost $8,000.00 was missing. The results of the audit were reported to Santander's compliance office.

98. A few weeks later, Rimek informed Sanchez that HR had contacted her, and asked if Agha had ever complimented Sanchez or shown a romantic interest in Sanchez.

99. Rimek advised Sanchez that Rimek had informed HR of Sanchez's sexual harassment complaints against Agha and their suspicions that Agha had embezzled money from the bank.

100. Several days after her conversation with Rimek, HR came to the branch to question Sanchez. They told her that Agha had made multiple accusations against her, including an allegation that Sanchez had sexually harassed Agha and at one point tried to have sex with him, but he refused.

101. HR also informed Sanchez of Agha's claim that Sanchez was a racist and that the audit of his cash drawer was nothing more than a set up by Sanchez to make him look bad in the eyes of the bank.

102. Sanchez informed HR that all of Agha's claims were nothing more than outlandish lies.

103. HR instructed Sanchez she was not to talk to anyone about Agha's claims or HR's investigation, and if she did so, Sanchez would be subject to an immediate job termination.

104. HR made Sanchez feel as if she had done something wrong and Agha was the true

victim.

105.    Following her instructions with HR, management and coworkers questioned Sanchez asking if Agha's allegations were true. For example, Rimek was present when the Regional Operations Manager Stephanie Stone asked Sanchez if Agha's allegations about her attempting to have sex with him were true.

106.    Sanchez could not respond to the Regional Operations Manager or anyone else asking her questions about Agha's claims because to do so would have violated HR's instructions to her and risk the loss of her job.

107.    Making Sanchez's work environment even more hostile, Rimek warned Sanchez to be "careful" because she was being "watched."

108.    Thereafter, Rimek informed Sanchez that she learned from speaking with someone at Capital One, Agha's prior employer, that they believed Agha had stolen money from Capital One while working for them.

109.    Apparently, Santander did not do an adequate background and reference check before hiring Agha. Had they done so, Agha would not have been hired and Sanchez would not have had to endure the malicious, wanton, harassing, and willful behavior he directed at her.

110.    Santander and its HR Department never informed Sanchez that the retaliatory false accusations Agha made against her were found to be without merit. Because of this willfully indifferent omission on the part of Santander, Sanchez has and continues to suffer from severe mental and emotional distress.

111.    Sanchez later learned from Rimek that Santander had never reported Agha's theft of monies from the bank to the police.

112.    Sanchez suffered retaliation for having disclosed the theft of money committed by

Agha. For instance, by the time the second quarter of 2016 ended, Sanchez had opened close to 50 new bank accounts. When she received her incentive bonus, Sanchez discovered that she had only been paid a bonus for about 24 accounts and did not receive the bonus BOMs get quarterly.

113.    When Sanchez went to Rimek and questioned why she had not been given an incentive bonus commensurate with opening close to 50 new bank accounts, she was told it was because the bank employee who opened the accounts on the system made too many errors.

114.    Because of Santander's retaliatory conduct, Sanchez has and continues to sustain economic loss and suffer from severe mental and emotional distress.

## C.    ALLEGATIONS AS TO PLAINTIFF SANCHEZ'S CLAIMS OF FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL.

115.    Before accepting the position of BOM in or about February 2016, Sanchez engaged in negotiations with Joseph regarding what the position's pay rate would be.

116.    Sanchez believed that the offered pay rate was insufficient considering the duties, responsibilities and understaffing at the branch; she had performed the duties of the position out of title for the two months prior and was practically performing the jobs of two to three employees

117.    at all times. As such, Sanchez emphasized from the very beginning of negotiations that pay was her primary concern.

118.    Sanchez initially requested pay at the rate of $16.00/hour, which she learned was the minimum standard rate of pay for the position.

119.    Joseph refused and countered with approximately $14.03/hour.

120.    It was eventually agreed between Sanchez and Joseph that Sanchez would begin working for $14.81/hour subject to and with the express understanding Sanchez would receive a raise of $16.00/hour in six months so long as she doubled her sales and maintained sound operations within the branch as she had been.

121. For the next six months, Sanchez worked tirelessly and effectively for Santander.

122. Sanchez more than doubled her sales and maintained excellent bank operation, despite her worsening medical condition and the inadequate assistance.

123. Shortly before the six-month period ended, Sanchez asked Joseph if she would be receiving the raise since she met her end of the negotiated bargain.

124. In response, Joseph tried to manipulate and intimidate Sanchez by asking her what Sanchez would do if Joseph refused to give her the promised raise, and why she shouldn't expect Sanchez to come back in another six months and demand another raise (as was her lawful right).

125. Despite the clear promise and agreement between them, Joseph reneged on her promise and breached their agreement by refusing to grant Sanchez the raise.

126. Joseph made misrepresentations to Sanchez solely to induce Sanchez into accepting the BOM position for a lower rate of pay than Sanchez wanted.

127. Because of Joseph's intentional and knowing misrepresentations, Sanchez has and continues to sustain economic loss and suffer from severe mental and emotional distress.

## D. ALLEGATIONS AS TO PLAINTIFF SANCHEZ'S CLAIMS FOR DISABILITY DISCRIMINATION AND WORKERS' COMPENSATION CLAIM INTERFERENCE AND RETALIATION.

128. On April 13, 2016, Sanchez requested a day off work from Rimek so that she could seek medical treatment. She went to JFK Medical Center where she was diagnosed with vertigo, headaches, nausea and vomiting, and gastritis.

129. Following her visit, she took an extra day off as recommended by her treating physician.

130. When Sanchez returned to work, she reported her condition to Rimek and provided her with a doctor's note explaining and excusing her absences.

131. Several days later, Joseph conducted a routine branch visit and heard about and/or discovered the note.

132. Instead of expressing empathy or concern about Sanchez's hospitalization, she instead reprimanded both Sanchez and Rimek for discussing Sanchez's medical issues at work.

133. Joseph told Sanchez and Rimek that they were not to discuss Sanchez's medical condition otherwise Joseph and Rimek would be required to report Sanchez's medical condition to the bank's HR Department and the bank's workers' compensation carrier.

134. Joseph directed Rimek to throw Sanchez's doctor's note into the trash directly in front of Sanchez, which Rimek did.

135. Thereafter, Sanchez reasonably felt compelled to deal with her medical condition on her own, and to not seek help from her employer for fear of facing the wrath of Joseph and an adverse employment action. However, Sanchez continued to update Rimek regarding Sanchez's ongoing and worsening physical, mental, and emotional condition. Because Santander failed to provide Sanchez with workers' compensation benefits after she informed Joseph and Rimek of her work-related stress and anxiety symptoms and need for medical treatment, Sanchez's medical condition further worsened and eventually became disabling.

136. Because Santander, Joseph, and Rimek failed to provide Sanchez with a reasonable accommodation of an authorized medical leave so that she could receive treatment for her work-related stress and anxiety symptoms and need for medical treatment, Sanchez's medical condition further worsened and eventually became disabling.

## E. ALLEGATIONS OF CONSTRUCTIVE DISCHARGE AND EMOTIONAL DISTRESS DAMAGES RELATED TO ALL CLAIMS.

137. In or around November 2015, Sanchez's psychological distress and physical symptoms began to manifest themselves. Around that time, she initially experienced nausea and

vomiting, headaches, and loss of appetite. These symptoms occurred occasionally for several months, but began occurring more frequently and with greater severity in April

138.    Between April 2016 and August 2016, Sanchez's physical and mental health further deteriorated.

139.    Because of the unlawful conduct of Santander, Joseph, and Rimek as discussed in the previous paragraphs of this Complaint, Sanchez's work conditions had become intolerable with her experiencing memory loss, blurred vision, blackouts of her vision, and loss of cognitive and motor functions. For example, she was frequently unable to stand up or walk straight without stumbling around or into walls, and she had problems talking without forgetting what she was saying, or involuntarily switching between English and Spanish in conversations at work.

140.    Consequently, Sanchez felt compelled to inform Joseph and Rimek that she was resigning her position of employment with the bank effective close of business on Friday, August 5, Rimek advised Sanchez she could return to work at the branch in the future.

141.    On or about Friday, August 5, 2016, Sanchez went to work and told Rimek about her previously mentioned symptoms and how poorly she was feeling. Rimek told Sanchez that she could leave work early.

142.    Later that same day of August 5, 2016, Sanchez went to a walk-in Urgent Care Center for evaluation, and the doctor referred her to be evaluated by a Neurologist.

143.    On Saturday, August 6, 2016, Sanchez went to the emergency room at JFK Hospital in Edison, New Jersey because she was experiencing uncontrollable vomiting and feeling as if she was going to black out.

144.    On Monday, August 8, 2016, Sanchez went to a Neurologist and followed up with the doctor at the Urgent Care Center. She was told she was suffering from severe anxiety and major

depression and that she should start treating with a psychotherapist.

145.    The doctor at the Urgent Care Center further recommended that Sanchez not return to work because of the stress she was enduring there.

146.    Thereafter, Sanchez went to see Rimek at the branch and informed Rimek of her medical condition and doctor recommendations. Sanchez informed Rimek that she would not be returning to work.

147.    On or about August 5, 2016, and unbeknownst to Sanchez, Santander terminated Sanchez's health insurance, despite Santander's Human Resource Department having previously

148.    informed her that her health insurance coverage would continue through the first week of September 2016, i.e., one month following Sanchez's last day of work.

149.    Santander failed to provide Sanchez with the proper notice and/or option for continued coverage in violation of COBRA, which resulted in Sanchez incurring significant medical expenses, and prevented her from receiving recommended, necessary, and proper medical treatment. Because of this, Sanchez's already severe emotional distress and pain and suffering was greatly exacerbated.

150.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, Jon and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a hostile work environment and disparate treatment due to Sanchez's sex and/or gender (female) in violation of New Jersey's Law Against Discrimination (LAD).

151.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a hostile work environment, and disparate treatment due to Sanchez's mental health disabilities (anxiety and major depression), and failure to reasonably accommodate those disabilities, all in violation

of New Jersey's LAD.

152.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) Sanchez had her right to receive workers' compensation benefits interfered with and denied in violation of New Jersey's Workers Compensation Laws.

153.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a retaliatory based hostile work environment and constructive discharge in violation of New Jersey's Conscientious Employee Protection Act (CEPA).

154.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) failed to pay Sanchez for all time worked over 40 hours in a workweek including overtime pay at a rate of one and one-half time her regular hour rate of pay for all hours worked in excess of 40 in a workweek.

155.    By their joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez was involuntarily, constructively, and wrongfully discharged from her position of employment at Santander.

156.    Santander is liable as a matter of law for the unlawful acts and omissions of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10).

157.    By their joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under LAD for inciting, aiding, and abetting each other's discriminatory conduct as is outlined above.

158.    By their joint and several acts and omissions, Defendants joint and several acts and

omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under CEPA for inciting, aiding, and abetting each other's retaliatory conduct as is outlined above.

159.     Because of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

160.     As a result of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

## COUNT ONE

### VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq*. FAILURE TO PAY OVERTIME WAGES
### *Named Plaintiffs and those similarly situated v. Defendant Santader*

161.     The foregoing paragraphs are incorporated herein as if set forth in full.

162.     Pursuant to the FLSA, 29 U.S.C. § 201, et seq., Plaintiff and all putative Nationwide Class members are entitled to overtime compensation at their regular rate for all hours worked.

163.     29 U.S.C. § 207(a)(1) provides as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in

commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

164. Neither Plaintiff nor the putative Class members qualify for exemptions under FLSA. Thus, they are not exempt.

165. By authorizing, permitting or otherwise condoning the practice of BOMs working "off the clock" without pay for hours worked in excess of 40 in a workweek, Santander failed to pay overtime for such hours worked in violation of the FLSA.

166. Santander's unlawful conduct has been widespread, repeated, and willful. Santander knew or should have known that its policies and practices were unlawful and unfair.

**WHEREFORE**, Plaintiff Crystal Sanchez requests the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b. Declaring that Santander willfully violated its/their obligations under the FLSA and its attendant regulations as set forth above;

c. Certifying this matter to proceed as a class action;

d. Granting judgment in favor of Plaintiff and against Santander and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff and the putative class worked in excess of forty (40) hours per week for the past three years;

e. Awarding liquidated damages to Plaintiff in an amount equal to the amount of unpaid overtime found owing to them;

h. Awarding reasonable attorney fees and costs incurred by Plaintiff in filing this action;

i. Awarding pre- and post-judgment interest to Plaintiff on these damages; and

j. Such further relief as this court deems appropriate.

## COUNT TWO

### VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW FAILURE TO PAY OVERTIME WAGES
### *NJ Named Plaintiffs and NJ Class v. Santander*

167.    The foregoing paragraphs are incorporated herein as if set forth in full.

168.    Pursuant to the NJWHL, N.J.S.A., 34:11-56.1, et seq., Plaintiff and all putative Class members are entitled to overtime wages overtime paid at a rate of one and one-half times their regular rate for hours worked in excess of 40 hours during a workweek

169.    N.J.S.A., 34:11-56a4 provides in relevant part: "Every employer shall pay to each of his employees' wages at a rate of not less than …for 40 hours of working time in any week and 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week, except this overtime rate shall not include any individual employed in a bona fide executive, administrative, or professional capacity…" (emphasis added).

170.    Neither Plaintiff nor the putative Class members qualify for exemptions under NJWHL. Thus, they are not exempt.

171.    Santander failed to pay Plaintiff and the putative Class members for hours worked over forty (40) hours in a week for the defined class period.

172.    Santander's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices were unlawful and unfair.

173.    As a result of Defendant's violations of the NJWHL, Plaintiff and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied overtime wages in accordance with the NJWHL in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment and post judgment interest, reasonable attorneys' fees and costs pursuant to the NJWHL.

## COUNT THREE

### VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW FAILURE TO PAY MINIMUM WAGES
*NJ Named Plaintiffs and NJ Class v. Santander*

174.    The foregoing paragraphs are incorporated herein as if set forth in full.

175.    N.J.S.A., 34:11-56a states: "It is declared to be the public policy of this State to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to their health, efficiency and well-being."

176.    Effective January 1, 2014, the minimum wage rate in New Jersey was $8.25 per hour.

177.    Effective January 1, 2015, the minimum wage rate in New Jersey was $8.38 per hour.

178.    Effective January 1, 2016, the minimum wage rate in New Jersey remained at $8.38 per hour.

179.    Effective January 1, 2017, the minimum wage rate in New Jersey became $8.44 per hour.

180.    By authorizing, permitting or otherwise condoning the practice of BOMs working "off the clock" without pay for hours worked in excess of 40 in a workweek, Santander failed to pay minimum wage for such hours worked in violation of New Jersey's Minimum Wage Act (NJMWA)

181.    Defendant Santander's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices were unlawful and unfair.

182.    Because of Defendant's violations of the NJMWA, Plaintiff and others similarly situated have suffered damages by being denied pay for all of their hours worked, by being denied minimum wages in accordance

with the NJMWA in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment and

post judgment interest, reasonably attorneys' fees and costs.

## COUNT FOUR

### VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW
### *NJ Named Plaintiffs and NJ Class v. Santander*

183. The foregoing paragraphs are incorporated herein as if set forth in full.

184. The New Jersey Wage Payment Law (WPL) requires an employer to pay its

employees all wages due under the New Jersey Wage and Hour Law (NJWHL)at least twice during

a calendar month. N.J.S.A. 34:11-4.2.

185. The WPL further states the following

> It shall be unlawful for any employer to enter into or make any agreement
> with any employee for the payment of wages of any such employee
> otherwise than as provided in this act, except to pay wages at shorter
> intervals than as herein provided, or to pay wages in advance. Every
> agreement made in violation of this section shall be deemed to be null and
> void, and the penalties in this act provided may be enforced notwithstanding
> such agreement; and each and every employee with whom any agreement
> in violation of this section shall be made by any such employer, or the agent
> or agents thereof, shall have a right of civil action against any such employer
> for the full amount of his wages in any court of competent jurisdiction in
> this State.

> N.J.S.A. 34:11-4.7.

186. Because of Santander's unlawful actions, the Plaintiff and the NJ Class have been

damaged.

## COUNT FIVE

### UNJUST ENRICHMENT

### *Named Plaintiffs and those similarly situated v. Santander*

187. The foregoing paragraphs are incorporated herein as if set forth in full.

188.    By misclassifying the Named Plaintiffs and similarly situated employees as exempt from overtime, Defendant Santander unlawfully failed to pay Plaintiff and the putative Class members for hours worked over forty (40) hours in a week for that respective period at a rate of 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week.

189.    By failing to pay Plaintiff and the putative Class members for hours worked over forty (40) hours in a week for that respective period at a rate of 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week, Santander has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

190.    By failing to pay Plaintiff and the putative Class members minimum wages for hours worked over forty (40) hours in a week, Santander has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

191.    It would be inequitable for Santander to be permitted to retain the unpaid wages it avoided paying to Plaintiff and the Class overtime wages at a rate of 1 1/2 times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week. Therefore, Santander should be compelled to disgorge to the Plaintiff and the Class all amounts it retained and received as a result of its wrongful and inequitable practices.

192.    It would be inequitable for Santander to be permitted to retain the unpaid wages it avoided paying to Plaintiff and the Class minimum wages for hours worked over forty (40) hours in a week. Therefore, Santander should be compelled to disgorge to the Plaintiff and the Class all amounts it retained and received as a result of its wrongful and inequitable practices.

## COUNT SIX

### VIOLATION OF CT WAGE LAWS
### *CT Named Plaintiff and CT Class v. Santander*

193. The foregoing paragraphs are incorporated herein as if set forth in full.

194. The Connecticut Wage Laws requires an employer to pay its employees all wages due and requires employers to pay its employees overtime at 1 ½ times their regular rate for all hours worked over 40 per workweek.

195. Because of Santander's unlawful actions, CT Named Plaintiff and the CT Class have been damaged. by being denied pay for all of their hours worked, by being denied wages in accordance with CT Wage Laws in amounts to be determined at trial, and are entitled to recovery of such amounts, statutory damages, liquidated damages, prejudgment and post judgment interest, reasonable attorneys' fees and costs, as well as all other relief accorded under the law.

### COUNT SEVEN

### VIOLATION OF MA WAGE LAWS
### *MA Named Plaintiff and MA Class v. Santander*

196. The foregoing paragraphs are incorporated herein as if set forth in full.

197. The Massachusetts Wage Laws requires an employer to pay its employees all wages due and requires employers to pay its employees overtime at 1 ½ times their regular rate for all hours worked over 40 per workweek.

198. Because of Santander's unlawful actions, MA Named Plaintiff and the MA Class have been damaged. by being denied pay for all of their hours worked, by being denied wages in accordance with MA Wage Laws in amounts to be determined at trial, and are entitled to recovery of such amounts, statutory damages, liquidated damages, prejudgment and post judgment interest, reasonable attorneys' fees and costs, as well as all other relief accorded under the law.

### COUNT EIGHT

### VIOLATION OF NH WAGE LAWS
*NH Named Plaintiff and NH Class v. Santander*

199.    The foregoing paragraphs are incorporated herein as if set forth in full.

200.    The New Hampshire Wage Laws requires an employer to pay its employees all wages due and requires employers to pay its employees overtime at 1 ½ times their regular rate for all hours worked over 40 per workweek.

201.    Because of Santander's unlawful actions, NH Named Plaintiff and the NH Class have been damaged. by being denied pay for all of their hours worked, by being denied wages in accordance with NH Wage Laws in amounts to be determined at trial, and are entitled to recovery of such amounts, statutory damages, liquidated damages, prejudgment and post judgment interest, reasonable attorneys' fees and costs, as well as all other relief accorded under the law.

### COUNT NINE

### VIOLATION OF NY WAGE LAWS
*NY Named Plaintiff and NY Class v. Santander*

202.    The foregoing paragraphs are incorporated herein as if set forth in full.

203.    The New York Wage Laws requires an employer to pay its employees all wages due and requires employers to pay its employees overtime at 1 ½ times their regular rate for all hours worked over 40 per workweek.

204.    Because of Santander's unlawful actions, NY Named Plaintiff and the NY Class have been damaged. by being denied pay for all of their hours worked, by being denied wages in accordance with NY Wage Laws in amounts to be determined at trial, and are entitled to recovery of such amounts, statutory damages, liquidated damages, prejudgment and post judgment interest, reasonable attorneys' fees and costs, as well as all other relief accorded under the law.

### COUNT TEN

## VIOLATION OF PA WAGE LAWS
### *PA Named Plaintiff and PA Class v. Santander*

205.    The foregoing paragraphs are incorporated herein as if set forth in full.

206.    The Pennsylvania Wage Laws requires an employer to pay its employees all wages
due and requires employers to pay its employees overtime at 1 ½ times their regular rate for all
hours worked over 40 per workweek.

207.    Because of Santander's unlawful actions, PA Named Plaintiff and the PA Class
have been damaged. by being denied pay for all of their hours worked, by being denied wages in
accordance with PA Wage Laws in amounts to be determined at trial, and are entitled to recovery
of such amounts, statutory damages, liquidated damages, prejudgment and post judgment interest,
reasonable attorneys' fees and costs, as well as all other relief accorded under the law.

### REQUEST FOR RELIEF

**WHEREFORE**, Named Plaintiffs hereby demand judgment be entered against Santander
as follows:

   a.    Certifying this case as a class action in accordance with Rule 23(b)(2)
         an(b)(3) of the Federal Rules of Civil Procedure;

   b.    Declaring that Santander violated its obligations under the CT Wage Laws,
         MA Wage Laws, NH Wage Laws, NJ Wage Laws, NY Wage Laws, and
         PA Wage Laws;

   c.    Certifying this matter to proceed as a class action;

   d.    Granting judgment in favor of Plaintiff and against Santander and awarding
         the lost wages and overtime compensation calculated at the rate of one and
         one-half (1.5) of Plaintiff's regular rate multiplied by all hours that Plaintiff
         worked in excess of forty (40) hours per week for the Relevant Time Period;

   e.    Judgment for Named Plaintiffs and All Putative Collective and Class
         Members for all statutory, compensatory, liquidated and consequential
         damages, or any other damages authorized by law or equity, sustained
         because of defendants' unlawful conduct, as well as prejudgment and post-

judgment interest;

f.   An award to Named Plaintiffs and All Putative Collective and Class Members for their reasonable attorneys' fees, costs, including expert fees, and expenses as authorized by law;

g.   Such further relief as this court deems appropriate.

## COUNT ELEVEN

**VIOLATION OF NEW JERSEY LAW AGAINST DISCRIMINATION (SEX AND DISABILITY DISCRIMINATION – HOSTILE WORK ENVIRONMENT, DISPARATE TREATMENT, FAILURE TO ACCOMMODATE, AIDING AND ABETTING LIABILITY AND CONSTRUCTIVE DISCHARGE.**
*Plaintiff Sanchez v. Defendants*

208.   Plaintiff repeats and re-alleges each allegation of paragraphs 1-172 of this Second Amended Complaint as if set forth at length herein.

209.   The New Jersey Law Against Discrimination (LAD), N.J.S.A., 10:5-1 et seq., prohibits unlawful employment discrimination/hostile work environment against any person because of, inter alia., their sex or disability (handicap).

210.   Hostile work environment harassment involves harassing conduct for the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

211.   Sanchez experienced severe and pervasive sexually harassing work environment while employed at Santander because of her sex (female) and disabilities (anxiety disorder and major depression). Accordingly, Sanchez falls under the protections of the LAD.

212.   An employer is strictly liable for damages caused to Sanchez by the unlawful harassment committed or permitted by managers, supervisors, and by non-supervisory employees named in this Complaint as well as others.

213.    Santander is strictly liable for damages caused to Sanchez by the unlawful harassment committed or permitted by managers, supervisors, and by non-supervisory employees named in this Complaint as well as others.

214.    Santander is strictly liable for damages caused to Sanchez by the failure of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), and others in the management team at Santander and to put a stop to the unlawful harassment caused to Sanchez by others.

215.    Santander is strictly liable for damages caused to Sanchez because it knew or should have known about the abuse and harassment of Sanchez, had control over other employees who were harassing Sanchez, yet failed to take prompt appropriate corrective action to put a stop to the harassment.

216.    An employer will also be found liable if they fail to establish, publicize, and enforce an anti-harassment policy that contains an affective grievance procedure – one that is known to the victim and that timely stops the harassment.

217.    Santander is liable for damages caused to Sanchez because it failed to establish and effectively publicize and enforce an anti-harassment policy that contains an effective grievance procedure.

218.    Santander is liable for damages caused to Sanchez because it failed to establish reasonably and effectively publicize and enforce policies prohibiting racial and sexual based harassment that contains an effective grievance procedure.

219.    Santander violated New Jersey's LAD by failing to put a stop to the sexual harassment and hostile work environment Sanchez was subjected to during her employment.

220.    Santander violated New Jersey's LAD by allowing the harassment to continue and

escalate in retaliation for Sanchez reporting that she was subjected to harassment and a hostile work environment because of her sex and disabilities.

221.    New Jersey Division of Civil Rights regulations require employers to provide reasonable accommodations for the handicapped. N.J.A.C. 13:13-2.DCR states that this requirement of reasonable accommodation is implicit in the LAD provision that an individual may not be denied employment opportunities because of a handicap unless the nature and extent of the handicap reasonably precludes job performance.

222.    Santander is liable to Sanchez under LAD for failing to reasonably accommodate Plaintiff's disabilities.

223.    Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), or any one or more of them, are liable to Sanchez for inciting, aiding and abetting Santander in furtherance of the defendant corporation's failure to reasonably accommodate Plaintiff's medical conditions.

224.    By their joint and several acts and omissions, defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) subjected Sanchez to a hostile work environment due to Sanchez's sex (female) and disabilities (anxiety disorder and major depression) in violation of New Jersey's LAD.

225.    By their joint and several acts and omissions, Defendants joint and several acts and/or omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez was involuntarily, constructively, and wrongfully discharged from her position of employment at Santander in violation of LAD.

226.    Santander is liable as a matter of law for the unlawful acts and/or omissions of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10).

227.     By their joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10) are individually liable under LAD for inciting, aiding, and abetting each other's discriminatory conduct as is outlined above.

228.     The legislature has determined that persons subjected to unlawful discrimination may suffer diverse and substantial hardships which give rise to remedies under LAD, including compensatory damages; economic loss; physical and emotional distress; search and relocation difficulties; anxiety caused by a lack of information, uncertainty and resultant planning difficulty; career, education, family and social disruption; adjustment problems, and severe emotional trauma, illness, homelessness, or other irreparable harm resulting from the strain of employment controversies.

229.     A person subject to unlawful discrimination is also afforded the remedy of punitive damages. See N.J.S.A. 10:5-27.1.

230.     The legislature has also determined that the prevailing party may be awarded reasonable counsel fees. N.J.S.A. 10:5-27.1.

231.     Because of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present, and future.

232.     As a result of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction,

and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE**, Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings, USA, Ghous Agha, Nadia Joseph, Kristen Rimek, John and Jane Does (1-10), and XYZ Corporations (1-10), jointly and severally, and requests the following relief:

a.  Judgement directing the Defendants make Plaintiff whole for all losses she has suffered in terms of lost wages (back pay and front pay damages), benefits, insurance and pension coverage, and any other fringe benefits of her employment;

b.  Judgement awarding Plaintiff compensatory damages for all probable damages and injuries, including emotional distress, suffered because of Defendants' failure to prevent or put a stop to the harm caused to Plaintiff in violation of New Jersey's Law Against Discrimination;

c.  Judgment awarding Plaintiff punitive damages on the grounds that Defendants' acts in failing to prevent the harm caused Plaintiff, as required under law, was especially egregious or that same occurred as a result of the wanton and willful disregard for the rights of Plaintiff;

d.  Judgment awarding Plaintiff accrued interest and costs of suit;

e.  Directing Defendants to pay Plaintiff Sanchez for all of her attorneys' fees and costs incurred to the full extent permitted under N.J.S.A. 10:5-1 et seq. and Rendine v. Pantzer, 141 N.J. 292 (1995);

f.  Plaintiff requests equitable relief in the form of the Court declaring that the practices of the named Defendants contested herein violate New Jersey law as set forth herein;

g.  Plaintiff requests equitable relief in the form of the Court ordering the named
    Defendants to cease and desist all conduct inconsistent with the claims made herein
    going forward, both as to the specific Plaintiff and as to all other persons similarly
    situated; and

h.  Granting Plaintiff such relief as the Court deems just and proper.

## COUNT TWELVE

**VIOLATION OF NEW JERSEY'S CONSCIENTIOUS EMPLOYEE PROTECTION ACT
– HOSTILE WORK ENVIRONMENT, FAILURE TO PROVIDE A PROMISED RAISE,
AIDING AND ABETTING LIABILITY AND CONSTRUCTIVE DISCHARGE CLAIMS**
*Plaintiff Sanchez v. Defendants*

233.  Plaintiff repeats and re-alleges each allegation of paragraphs 1-172 of this Second
Amended Complaint as if set forth at length herein.

234.  New Jersey's Conscientious Employee Protection Act (CEPA) allows an employee
an action for retaliation when the employee discloses, threatens to disclose, objects to, or refuses
to participate in certain actions that the employees reasonably believe are either illegal or a
violation of public policy and is then subject to a course of retaliator conduct by the employer.

235.  Sanchez disclosed to Defendants Joseph, John and Jane Does (1-10) and XYZ
Corporations (1-10), her reasonable belief that Agha was the cause of the depletion of large
denominations in Santander's vault, that is, he was embezzling and otherwise stealing money from
the bank.

236.  Sanchez is a person protected under CEPA as the acts that she complained of are
violations of law and regulations and rules related thereto and/or violations of clear mandates of
public policy.

237.  Shortly after making her disclosures, Sanchez was subject to retaliation in the form

of a hostile work environment, denial of a promised pay raise, and constructive discharge from employment.

238.  Santander is liable as a matter of law for the unlawful acts and/or omissions of Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10).

239.  By their joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10) are individual liable under CEPA for inciting, aiding and abetting each other's retaliatory conduct as is outlined above.

240.  The legislature has determined that persons subjected to unlawful discrimination may suffer diverse and substantial hardships which give rise to remedies under CEPA, including compensatory damages: economic loss; physical and emotional distress; search and relocation difficulties; anxiety caused by a lack of information, uncertainty and resultant planning difficulty; career, education, family and social disruption; adjustment problems; and severe emotional trauma, illness, homelessness, or other irreparable harm resulting from the strain of employment controversies.

241.  Because of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been rendered vocationally disabled, and has and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

242.  As a result of the joint and several acts and omissions, Defendants joint and several acts and omissions, Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the

form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE**, Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly and severally, and requests the following relief:

    a. Directing the Defendants to make Plaintiff Sanchez whole for any and all losses she has suffered in the past, present and in the future in terms of lost wages, benefits, insurance and pension coverage, and any other fringe benefits of his employment;

    b. Directing the Defendants, in lieu of reinstating Plaintiff Sanchez to her former position with Santander, to fully compensate her with front pay and benefits for the retaliatory acts;

    c. Directing Defendants to pay Plaintiff Sanchez compensatory and consequential damages for all non-economic damages including, but not limited to, mental and emotional distress damages, suffered as a result of Defendants' retaliatory acts in violation of New Jersey's Conscientious Employee Protection Act;

    d. Directing the Defendants to pay Plaintiff Sanchez punitive damages because the acts of Defendants and its agents, servants and employees were especially egregious, evil minded and/or were committed with a wanton and willful disregard for the rights of Plaintiff;

e.  Directing Defendants to pay Plaintiff Sanchez for all her attorneys' fees and costs incurred to the full extent permitted under N.J.S.A. 34:19-1 et seq., and Rendine v. Pantzer, 141 N.J. 292 (1995);

f.  Awarding interest and costs of suit;

g.  Plaintiff requests equitable relief in the form of the Court declaring that the practices of the named Defendants contested herein violate New Jersey law as set forth herein;

h.  Plaintiff requests equitable relief in the form of the Court ordering the named Defendants to cease and desist all conduct inconsistent with the claims made herein going forward, both as to the specific Plaintiff and as to all other persons similarly situated;

i.  Plaintiff requests equitable relief in the form of the Court ordering Defendant Santander to expunge and other purge from its files and records including, but not limited to, Plaintiff's personnel file maintained by the said Defendant any reference which violates the statutes implicated in the above captioned action; and

j.  Granting Plaintiff such relief as the Court deems just and proper.

## COUNT THIRTEEN

### COMMON LAW PUBLIC POLICY CLAIM
### (PIERCE CLAIM)
### *Plaintiff Sanchez v. Defendants*

243.  Plaintiff repeats each allegation set forth in paragraphs 1 and including 172 and the Seventh Count of this Second Amended Complaint as if set forth more fully at length herein.

244.  In Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980), the Supreme Court established a New Jersey public policy exception to at-will-employment. The Supreme Court established that:

An employee has a cause of action [in tort or contract or both] for wrongful discharge when the discharge is contrary to a clear mandate of public policy. The sources of public policy include legislation; administrative rules, regulations, and decisions; and judicial decisions. In certain instances, a professional code of ethics may contain an expression of public policy.

245.    The public policies of the State of New Jersey underpinning Plaintiff Sanchez's complaints are found, inter alia, in the statutes, codes, and regulations applicable to business practices, fraud and international law.

246.    The above facts establish a public policy violation.

247.    Because of the retaliatory actions undertaken by Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly and severally, Plaintiff Sanchez has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

248.    Because of the retaliatory actions undertaken by Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE**, Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## COUNT FOURTEEN

## VIOLATION OF N.J.S.A. 34:15-39.1 ET. SEQ. (WORKERS COMPENSATION RETALIATION)
### *Plaintiff Sanchez v. Defendants*

249.    Plaintiff repeats and re-alleges each allegation of paragraphs 1 through 172 and the Fifth through Eighth Counts of the Second Amended Complaint as if set forth at length herein.

250.    The New Jersey Workers Compensation Act, N.J.S.A. 34:15-1 et. seq., ("the Act") requires employers to compensate their employees for personal injuries caused by an "accident arising out of and in the course of their employment," without proof of fault.

251.    It is unlawful under the Act for an employer to discharge or discriminate against an employee because such employee has claimed or attempted to claim worker's compensation benefits from his employer.

252.    For violations of the Act, employers are subject to fines and/or imprisonment of up to 60 days.

253.    The Act provides for reinstatement with back pay for any employee who is the subject of such discrimination.

254.    An employee discharged because such discrimination has a common-law right of action for wrongful discharge.

255.    Because of the unlawful joint and several acts and/or omissions of Defendants Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchas has and continues to sustain economic loss and pecuniary harm.

256.    As a result of the joint and several acts and omissions of the Defendants, Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), Sanchez has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including,

but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

257.    WHEREFORE, Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## COUNT FIFTEEN

## FRAUDULENT INDUCEMENT AND PROMISSORY ESTOPPEL

### *Plaintiff Sanchez v. Defendants*

258.    Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 172 and the First through the Ninth Count of this Complaint as if set forth at length herein.

259.    In or about February 2016, Santander and Joseph made a clear and definite promise to Sanchez that Sanchez would receive a raise to $16.00/hour in six months so long as she doubled her sales and maintained sound operations within the branch as she had been.

260.    In reliance on this promise, Sanchez accepted a position as BOM.

261.    Had Santander and Joseph not made this promise, Sanchez would not have accepted the position of BOM and would have instead remained a full-time bank teller.

262.    Santander and Joseph made this promise to Sanchez with the expectation that Sanchez would rely on the promise.

263.    Thereafter, Sanchez reasonably relied on the promise made by Santander and Joseph as evidenced by the fact that she more than doubled her sales and maintained excellent bank operations.

264. Despite the clear promise and agreement between them, Santander and Joseph reneged on their promise and breached their agreement by refusing to grant Sanchez the raise.

265. Santander and Joseph never had any intention of honoring the promises and agreement Joseph made with Sanchez.

266. Santander and Joseph made misrepresentations to Sanchez solely to induce Sanchez into accepting the BOM position for a lower rate of pay than Sanchez wanted.

267. Because of Joseph's intentional and knowing misrepresentations, Sanchez has and continues to sustain economic loss and suffer from severe mental and emotional distress.

268. Because of the unlawful acts and omissions of Santander and Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

269. As a result of the unlawful acts and omission of Defendants Santander, Joseph, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly and severally, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

**WHEREFORE**, Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA and Nadia Joseph, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## COUNT SIXTEEN

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *Plaintiff Sanchez v. Defendants*

270.    Plaintiff repeats and re-alleges each allegation of paragraphs 1 through and including 172 and the First through and including Tenth Counts of the Second Amended Complaint as if set forth at length herein.

271.    The acts of the Defendants Santander, Joseph, Rimek, Agha, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, was done with malice, intent and/or with the reckless indifference to causing Plaintiff Sanchez emotional distress.

272.    Because of the unlawful acts and omissions of Santander, Agha, Joseph, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff has been and continues to suffer economic losses and pecuniary damage in the form of lost income and benefits past, present and future.

273.    As a result of the unlawful acts and omissions of Defendants Santander, Agha, Jospeh, Rimek, John and Jane Does (1-10) and XYZ Corporations (1-10), jointly or severally, Plaintiff has been and continues to suffer non-economic damages in the form of humiliation, stress, anxiety causing her mental and emotional anguish and dysfunction, and physical manifestations of same including, but not limited to, nervousness, anxiousness, sleeplessness, loss of appetite, anxiety attacks, upset stomach and stomach pains all or some of which may be permanent.

274.    WHEREFORE, Plaintiff Crystal Sanchez demands judgment against the Defendants Santander Holdings USA, Ghous Agha, Nadia Joseph, Kristen Rimek, jointly or severally, for compensatory, consequential, and punitive damages, reasonable attorney fees, interest, costs of suit and such other relief the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable in this action.

MASHEL LAW, L.L.C.
500 Campus Drive, Suite 303
Morganville, New Jersey 07751
(P): (732) 536-6161
(F): (732) 536-6165
(E): smashel@mashellaw.com
Attorneys for Plaintiffs

Date:

Stephan T. Mashel, Esquire
N.J. ID. No.: 031851986

Justin L. Swidler, Esq.
SWARTZ SWIDLER, LLC
1101 Kings Hwy N. Ste. 402
Cherry Hill, NJ 08034
Attorneys for Plaintiffs