**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CRYSTAL SANCHEZ, *individually and on behalf of those similarly situated,* | No: 3:17-cv-05775 |
| Plaintiffs, | |
| v. | |
| SANTANDER BANK, N.A., *et al.* | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT
AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS AND
COLLECTIVE**

## TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

   A.   Procedural History ................................................................................. 2

II.    PROPOSED SETTLEMENT TERMS ........................................................ 4

III.   LEGAL ARGUMENT ................................................................................. 5

   A.   Preliminary Approval of the Proposed Settlement is Appropriate. .................................. 5

   B.   The Rule 23 Settlement Class Should Be Provisionally Certified for Purposes of
        Settlement. ........................................................................................... 7

        1.   The Proposed Settlement Class Meets the "Numerosity" Requirement of Rule
             23(a)(1). ....................................................................................... 8

        2.   The Proposed Settlement Class Meets the "Commonality" Requirement of Rule
             23(a)(2). ....................................................................................... 8

        3.   The Proposed Settlement Class Meets the "Typicality" Requirement of Rule 23(a)(3).
             8

        4.   The Proposed Settlement Class Meets the "Adequacy" Requirement of Rule 23(a)(4).
             9

        5.   The Proposed Settlement Class Meets the Predominance and Superiority
             Requirements of Rule 23(b)(3). ............................................................... 10

   C.   The FLSA Collective Should Be Certified for Settlement Purposes. .............................. 11

   D.   The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23. ....... 12

   E.   The Court Should Approve the Proposed Settlement Under the FLSA. ........................ 15

        1.   The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide*
             Dispute. .......................................................................................... 15

        2.   The Parties Have a *Bona Fide* Dispute. ...................................................... 15

        3.   The Proposed Settlement is Fair and Reasonable. ............................................ 16

        4.   The Settlement is Consistent with Public Policy. ............................................ 17

   F.   The Service Payments Are Reasonable and Appropriate. ...................................... 18

G.    The Court should preliminarily approve the Class Counsel's fees and costs request. ..... 19

H.    The Court Should Approve the Proposed Form of Notice and the Parties' Notice Plan.. 21

IV.    CONCLUSION ................................................................................................................. 22

-

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aboud v. City of Wildwood*,
   2013 U.S. Dist. LEXIS 70083 (D.N.J. 2013) ................................................. 22

*Amchem Prods.*, Inc. *v. Windsor*,
   521 U.S. 591 (1997) ................................................................................... 7

*Arpi v. Sternbach Holdings, LLC*,
   2012 U.S. Dist. LEXIS 183648 (S.D.N.Y. 2012) ........................................... 22

*Austin v. Pa. Dep't of Corr.*,
   876 F. Supp. 1437 (E.D. Pa. 1995) ............................................................. 14

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ........................................................................ 9

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................. 19

*Bredbenner v. Liberty Travel, Inc.*,
   2011 U.S. Dist. LEXIS 38663 (D.N.J. 2011) ......................................... passim

*Bullock v. Administrator of Estate of Kircher*,
   84 F.R.D. 1 (D.N.J. 1979) ........................................................................... 14

*Churchill Village, LLC v. Gen. Elec. Co.*,
   361 F.3d 566 (9th Cir. 2004) ....................................................................... 6

*Clark v. Ecolab*,
   2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. 2010) ........................................... 16

*Court Awarded Attorney Fees, Report of Third Circuit Task Force*,
   108 F.R.D. 237 (1985) ............................................................................... 19

*Cullen v. Whitman Med. Corp.*,
   197 F.R.D. 136 (E.D. Pa. 2000) .................................................................. 18

*Curiale v. Lenox Grp.*,
   No. 07-1432, 2008 U.S. Dist. LEXIS 92851 (E.D. Pa. Nov. 14, 2008) ............. 12

*D.R. by MR. v. East Brunswick Bd. of Educ.*,
   109 F.3d 896 (3d Cir. 1997) ....................................................................... 17

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................................... 7

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ......................................................................... 5

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................................... 22

*Farris v. J.C. Penney Co.*,
   176 F.3d 706 (3d Cir. 1999) .............................................................................................. 15

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ................................................................................................ 6

*Grunin v. International House of Pancakes*,
   513 F.2d 114 (8th Cir. 1975) ............................................................................................ 22

*Hall v. Best Buy Co.*,
   274 F.R.D. 154 (E.D. Pa. 2011) ....................................................................................... 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ........................................................................................... 6

*Henderson v. Volvo Cars of N. Am., LLC*,
   2013 U.S. Dist. LEXIS 46291 (D.N.J. 2013) .................................................................. 18

*Imprelis*,
   2013 U.S. Dist. LEXIS, 18332 ......................................................................................... 13

*In re AT&T Corp.*,
   455 F.3d 160 (3d Cir. 2006) ............................................................................................. 19

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000) .................................................................................. 7

*In re Diet Drugs Prod. Liab. Litig.*,
   369 F.3d 293 (3d Cir. 2004) ............................................................................................. 21

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ........................................................................................ 12, 13

*In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 11-md-02284, 2013 U ................................................................................................ 10

*In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*,
   No. 11-md-02284, 2013 U.S. Dist LEXIS 18332 (E.D. Pa. Feb. 11, 2013) ...................... 12

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ............................................................................................. 18

*In re Janney*,
   2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009) ............................................................... 20

*In re Mercedes-Benz Tele Aid Contract Litig.*,
   2011 U.S. Dist. LEXIS 101995 (D.N.J. 2011) ............................................................ 18-19

*In re Prudential Ins. Co. of Am.*
   Sales Practice Litig. Agent Actions, 148 F.3d 283 (3d Cir. 1998) ...................................... 7

*In re Safety Components, Inc. Sec. Litig.*,
  166 F Supp. 2d 72 (D.N.J. 2001) ................................................................ 20

*In re SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990) ............................................................ 20

*In re Traffic Executive Ass'n*,
  627 F.2d 631 (2d Cir. 1980) ....................................................................... 6

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ...................................................................... 5

*Jamison v. Butcher & Sherrerd*,
  68 F.R.D. 479 (E.D. Pa. 1975) ................................................................ 14

*Johnston v. HBO Film Mgmt.*,
  265 F.3d 178 (3d Cir. 2001) ...................................................................... 9

*Keller v. T.D. Bank, N.A.*,
  2014 WL 5591033 *15 (E.D. Pa. 2014) (E.D. Pa. 2014) ........................... 13-14

*LaChance v. Harrington*,
  965 F. Supp. 630 (E.D. Pa. 1996) .......................................................... 21

*Lawson v. AT&T Mobility, LLC*,
  687 F.3d 109 (3d Cir. 2012) .................................................................... 22

*Lenahan v. Sears, Roebuck & Co.*,
  2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006) ......................................... 15

*Lusardi v. Lechner*,
  855 F.2d 1062 (3d Cir. 1988) .................................................................. 11

*Lusardi v. Xerox Corp.*,
  118 F.R.D. 351 (D.N.J. 1987) ................................................................ 11

*Lynn's Food Stores, Inc. v. United States*,
  679 F.2d 1350 (11th Cir. 1982) .............................................................. 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1998) ..................................................................... 6

*Morales v. PepsiCo, Inc.*,
  2012 U.S. Dist. LEXIS 35284 (D.N.J. 2012) .......................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ................................................................................. 21

*Officers for Just. v. Civil Serv. Com.*,
  688 F.2d 615 (9th Cir. 1982) .................................................................... 6

*Salinas v. U.S. Xpress, Inc.*,
  2018 WL 1477127*6 (E.D. Tenn. 2018) (E.D. Tenn. 2018) ..................... 14

vi

Section II.B., *supra* ................................................................................................................ 10

*Speed Shore Corp. v. Denda*,
    605 F.2d 469 (9th Cir. 1979) ............................................................................................ 6

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................................. 7

*Wal-Mart Stores v. Dukes*,
    131 S. Ct. 2541 (2011) ...................................................................................................... 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................................... 6

*Weigner v. City of N.Y.*,
    852 F.2d 646 (2d Cir. 1988) ........................................................................................... 21

*Williams*,
    2011 U.S. Dist. LEXIS 102173 ................................................................................... 9, 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................... passim

## I.   INTRODUCTION

Subject to this Court's approval, the Parties have reached a settlement in this class and collective action.[1] With the assistance of two mediation sessions conducted by  former United States Magistrate Judge Honorable Diane M. Walsh (Ret.)  at the JAMS offices in Philadelphia, PA , the Parties reached a settlement on November 12, 2021, whereby  Defendant Santander Bank, N.A. ("Santander" or "Defendant"), while denying any and all liability and disputing the amount of alleged damages, will pay Four Million Two Hundred Fifty Thousand Dollars ($4,250,000) to Plaintiff Crystal Sanchez, other Named Plaintiffs, and the putative collective and class of Santander Business Operations Managers ("BOMs") they represent, in settlement of all the class and collective claims in this action.[2]

As set forth in the Third Amended Complaint, Named Plaintiffs Crystal Sanchez, Rabia Ahmed, Andrea Blanchard, Pearl Monteiro, Shaunsey Jackson, Michelle Romano, Joni Henderson, and Peter Sano assert claims for overtime violations under the Fair Labor Standards Act ("FLSA") and for unpaid straight-time wages and overtime wages under the laws of New Jersey, New York, Massachusetts, Pennsylvania, Connecticut, New Hampshire, and Rhode Island. Plaintiff's claims arise from Defendant Santander's alleged failure to pay its hourly BOMs for all hours worked by allegedly encouraging and accepting off-the-clock work of its BOMs. The Named

---

[1] For purposes of this Memorandum of Law, Plaintiff incorporates by reference the Definitions contained in the Settlement Agreement and Release ("Settlement Agreement"), a copy of which is attached hereto as Exhibit 1-A. Defined terms not otherwise defined herein are defined in the Settlement Agreement.

[2] This Settlement does not resolve Ms. Sanchez's individual pendent state claims brought under, *inter. alia*., New Jersey Law Against Discrimination and the New Jersey Conscientious Employee Protection Act.  The Parties will continue to discuss resolution of such claims, but have not included such individual claims or consideration in conjunction with this settlement.

Plaintiffs, Opt-in Plaintiffs, and the putative class seek an award of the unpaid wages, as well as liquidated damages, attorney's fees and costs. The $4,250,000 settlement will resolve all such claims.

Plaintiffs make this unopposed motion: (1) to certify a settlement class under Federal Rule of Civil Procedure 23(b)(3); (2) to certify a FLSA collective action settlement collective under 29 U.S.C. § 216(b); (3) for preliminary approval of the settlement with respect to the Rule 23 class claims; and (4) for preliminary approval of the settlement under the FLSA.

Although the Parties have already dedicated substantial time and resources to this litigation, the Parties anticipate spending much more time and resources should litigation continue, with both sides spending an exorbitant amount of time and resources on discovery, motion practice, and experts. In the interest of judicial economy, and because the proposed settlement is fair, reasonable and adequate, the Named Plaintiffs respectfully request  the Court order to provisionally certify the class action under Rule 23(b)(3) for settlement purposes, provisionally certify the collective action under 29 U.S.C. § 216(b) for settlement purposes, appoint class counsel for settlement purposes, and grant preliminary approval of the class and collective settlement, class notice, settlement procedure, and the Parties' Settlement Agreement.

### A.    Procedural History

On July 6, 2017, Plaintiff Crystal Sanchez ("Plaintiff Sanchez") filed this action in state court in New Jersey. (See ECF 1-1), alleging, *inter alia,* that Defendants required Plaintiff and other BOMs to work off-the-clock in violation of the New Jersey Wage and Hour Law New Jersey Wage and Hour Law ("NJWHL"), the New Jersey Wage Payment Law ("NJWPL"), and common law. (*Id*. at 18-24).  Defendant removed the action to state court on August 4, 2017. (ECF 1). On August 15, 2017, Plaintiff Sanchez filed her First Amended Complaint, which added a count for

unpaid overtime under the Fair Labor Standards Act ("FLSA") based on the same allegations as those brought under state law.  (ECF 9 at 20-21). Plaintiff then filed a second amended complaint on November 21, 2017 (ECF 30).  In response thereto, Defendant filed a motion to dismiss and/or strike the collective and class allegations form the Complaint, a motion the Court denied. (ECF 38).  Plaintiff file her motion for leave to file a third amended complaint on September 8, 2020, which was opposed and remained pending at time of settlement (ECF 175).  As part of the settlement, the Parties have stipulated to Plaintiffs' filing of the Third Amended Complaint, which was filed on January 28, 2022. (ECF 212, 214).

On March 8, 2019, Plaintiff filed a motion for conditional certification of a collective action under the FLSA. (ECF 100).  On June 21, 2019, Plaintiff filed a motion for equitable tolling of the statute of limitations for putative opt-in plaintiffs. (ECF 116).   The motion for collective certification was referred to Magistrate Judge Arpert for disposition, who issued an Order conditionally granting FLSA collective certification and a Report & Recommendation partially granting Plaintiff's motion for equitable tolling. (ECF 126).

Following certain reconsideration motions, as well as delays due to the beginning of the COVID-19 pandemic, notice was effectuated to BOMs who worked for Defendant on or after March 5, 2017 on April 29, 2020.  Following the Court overruling Defendant's objections to Judge Arpert's decision on Plaintiff's equitable tolling motion, a second notice was sent to BOMs who worked for Defendant prior to March 5, 2017, but at least as recently as September 5, 2016. (ECF 193).

The Parties engaged in extensive discovery prior to reaching settlement. Specifically, Santander produced voluminous documents regarding its wage and hour policies related to BOMs. Plaintiff took a deposition of Defendant's corporate designee under Fed. R. Civ. P. 30(b)(6).

Plaintiff further engaged in motion practice to obtain documents regarding a time-study Defendant performed regarding the working hours and workloads of its BOMs. (ECF 148).  Plaintiff's counsel further interviewed more than a hundred opt-in Plaintiffs to determine the work assignments and working hours of BOMs across a large number of branches and states.

The Parties agreed to participate in a private mediation before Judge Welsh, and attended a mediation in person in Philadelphia in late June 29, 2021.  That mediation was unsuccessful, but the Parties agreed to attend a second mediation on November 12, 2021, which resulted in the current proposed settlement before the Court.

The proposed settlement requires Santander to pay $4,250,000 in exchange for a release of wage and hour claims of class members through the class period. Plaintiff now seeks preliminary approval of that settlement.

## II.      PROPOSED SETTLEMENT TERMS

With the assistance of retired Judge Welsh, the Parties agreed to the following terms:

1.      Santander Bank will pay the Settlement Amount of $4,250,000 into a Qualified Settlement Fund to be distributed to members of the Rule 23 class action and FLSA collective action, subject to the formula described below. Settlement Agreement, Ex. 1-A. Santander will wire the Maximum Settlement Amount to the Qualified Settlement Fund within thirty calendar days of the Order granting Final Approval.  The Administrator shall issue payments from the QSF to class and collective members not later than thirty-five days after the Order granting final approval, provided no appeal is taken.  Should any individual file an appeal as to the final approval order, settlement checks will not be mailed until all appeals are resolved. Settlement Agreement, §§ 2.11, 3.1(b).

4

2.      A Settlement Participant's *pro rata* share of the QSF will be calculated based on the number of workweeks he or she worked during the Relevant Period as a BOM. *Id.* at § 3.4(D).

3.      Fifty percent (50%) of the Settlement Payment to each Settlement Participant shall be considered wages subject to withholding of all applicable local, state, and federal taxes, and the other fifty percent (50%) shall be considered non-wages for the settlement of interest claims, liquidated and/or multiple damages, and any statutory or civil penalties available under any applicable local, state, and federal laws.  *Id.* at § 3.4(F).

4.      The Parties will engage a third-party settlement class administrator to administer the notice, allocation, and distribution of the Qualified Settlement Fund, and who will report periodically to counsel for Plaintiff and Santander and whose fees will be paid from the Qualified Settlement Fund. Settlement Agreement, § 1.26. All costs associated with the settlement, excluding the employer's portion of payroll taxes owed on the W2 payments, will be paid from the QSF.

5.      The settlement provides for a full and final release and waiver of any FLSA and state wage and hour laws, based on the allegations in the complaint, including non-payment or improper payment of overtime compensation under federal, state, or common law while working as a BOM from the beginning of time through December 31, 2021. Settlement Agreement § 4.1) The Agreement does not resolve the individual pendent state law claims brought by Plaintiff Sanchez alleging wrongful termination and hostile work environment. *Id.* at § 4.2.

## III.     LEGAL ARGUMENT

### A.     <u>Preliminary Approval of the Proposed Settlement is Appropriate.</u>

The law favors compromise and settlement of collective and class action suits. *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action

litigation, and it should therefore be encouraged."); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *Officers for Just. v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."); *Speed Shore Corp. v. Denda*, 605 F.2d 469, 473 (9th Cir. 1979) ("It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation."); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion for the trial court. *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Churchill Village, LLC v. Gen. Elec. Co.*, 361 F.3d 566, 575 (9th Cir. 2004); *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). In exercising this discretion, courts should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

Preliminary approval, which is what Plaintiff seeks here, requires only an "initial evaluation" of the fairness of the proposed settlement based on written submissions and an informal presentation by the settling parties. NEWBERG § 11.25. To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); NEWBERG § 11.25 ("If the preliminary evaluation of the proposed settlement does

not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members).

As explained in greater detail *infra.,* the Parties' proposed settlement meets all the requirements for preliminary approval as well as for certification of the class and collective actions.

**B.**  **The Rule 23 Settlement Class Should Be Provisionally Certified for Purposes of Settlement.**

A settlement class will be certified if it meets the requirements of Rule 23(a) and one of the subsections of Rule 23(b). *See, e.g., Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 309 (3d Cir. 1998). Rule 23(e) requires Court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). Notably, a class may be approved for settlement purposes even though that class might otherwise not pass muster under Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011). Here, the Parties' Rule 23 settlement class should be provisionally certified for purposes of settlement.

By reaching a favorable settlement prior to formal discovery, dispositive motions, or trial, the Parties seek to avoid significant expense and delay and instead ensure recovery for the class. *Ehrheart*, 609 F.3d at 594-95 (3d Cir. 2010) ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial."); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.").

The class action proposed here meets the requirements of Rule 23(a) and (b)(3), and, accordingly, the Court should provisionally certify it for purposes of settlement.\

### 1. The Proposed Settlement Class Meets the "Numerosity" Requirement of Rule 23(a)(1).

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Third Circuit typically hold that a putative class of about 40 is sufficient to meet this requirement. *E.g., Ripley*, 287 F.R.D. at 307.

Here, discovery has revealed that there are approximately 764 individuals in the Rule 23 classes, firmly establishing numerosity. Swidler Decl. at ¶ 4, Ex. 1.

### 2. The Proposed Settlement Class Meets the "Commonality" Requirement of Rule 23(a)(2).

Rule 23(a)(2) requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

Here, there is a question of law that is common to the class: whether Santander violated wage-and-hour law by its alleged policy/practice to discourage its BOMs from recording all overtime hours worked. That class members may receive varying amounts is not at odds with the "commonality" requirement. *See, e.g., Ripley*, 287 F.R.D. at 308 (relying on *Dukes*, 131 S. Ct. at 2551) ("while each [p]laintiff's recovery might be different due to the number of hours that he or she worked without proper compensation, the wrong was from [d]efendant's alleged common timekeeping and payroll policies that precluded proper compensation for overtime work.").

Therefore, the "commonality" requirement is met.

### 3. The Proposed Settlement Class Meets the "Typicality" Requirement of Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims and defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The "typicality"

8

requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311. The cause of the injury claimed on behalf of the class must be a result of some alleged "common wrong." *Id.* at 312; s*ee also Williams*, 2011 U.S. Dist. LEXIS 102173, at *10 (finding typicality where named plaintiff "was paid under the same payroll policies as the rest of the [c]lass [c]embers, and those payroll policies form the basis of the [c]omplaints").

Here, the claims of the Named Plaintiffs are typical of the claims of each of their respective state law classes they seek to represent. Plaintiff's claims and the class members' claims are all based on the alleged practices of Santander which resulted in them receiving no compensation for most of the overtime they worked.

Accordingly, the "typicality" requirement is met.

### 4.      The Proposed Settlement Class Meets the "Adequacy" Requirement of Rule 23(a)(4).

Rule 23(a)(4) requires "the representative parties" to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement "encompasses two distinct inquiries [1] whether the named plaintiffs' interests are sufficiently aligned with the absentees, and [2] [whether] it tests the qualifications of counsel to represent the class." *Cmty. Bank*, 418 F.3d at 303 (internal quotation marks omitted); *accord, e.g.,* B*eck v. Maximus, Inc.,* 457 F.3d 291, 296 (3d Cir. 2006); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 185 (3d Cir. 2001); *Ripley*, 287 F.R.D. at 309.

Here, the Named Plaintiffs have common interests with the putative class members for the same reasons they satisfy typicality: their claims arise from the same factual and legal circumstances as claims of the class. Additionally, Named Plaintiffs have vigorously prosecuted

the interests of the class by obtaining a highly favorable settlement. Finally, Named Plaintiffs are represented by counsel who have zealously and competently represented the class' interests and have extensive experience litigating employment class actions, including wage and hour class and collective actions. *See* Swidler Decl. ¶¶ 5-11; Mashel Decl. ¶ 2. The adequacy requirement is therefore satisfied.

### 5.     The Proposed Settlement Class Meets the Predominance and Superiority Requirements of Rule 23(b)(3).

Once the requirements of Rule 23(a) are satisfied, a court may certify a class under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members" (the "predominance" requirement), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the "superiority" requirement). Fed. R. Civ. P. 23(b)(3).  "The matters pertinent to these findings include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id*.

"[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc). *Accord, e.g., In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, No. 11-md-02284, 2013 U.S. Dist. LEXIS 149323, at *18 (E.D. Pa. 2013). As set forth in Section II.B., *supra,*

10

Santander's alleged conduct challenged in the instant action is common to all class members and harmed all class members in the same way.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal quotation marks omitted); *see also, e.g., Imprelis*, 2013 U.S. Dist. LEXIS 149323, at *19; *Ripley*, 287 F.R.D. at 310. Here, class-wide resolution of this matter is superior to individual claims because the amount of the claims of most class members is comparatively small, whereas the size of the class is quite large.  Furthermore, the manageability of a class action – a component of the superiority inquiry – is a less important consideration when certification is sought of a settlement class, as is the case here.  *See, e.g., Dugan*, 2013 U.S. Dist. LEXIS 136305, at *11.

Thus, the "superiority" requirement is met.

**C.      The FLSA Collective Should Be Certified for Settlement Purposes.**

Satisfying the more stringent requirements of Rule 23 also qualifies the collective to be certified as a collective action. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167 n.68 (E.D. Pa. 2011). Courts in the Third Circuit apply the so-called "*Lusardi* factors" to certification of an FLSA opt-in class. These factors are: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendants] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, at *48 (D.N.J. 2011) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988). *Accord Williams*, 2011 U.S. Dist. LEXIS 102173, at *28. "Because the analysis required for final certification largely overlaps with class certification analysis under Federal Rule of Civil

Procedure 23(a), the Court need only address the *Lusardi* factors in passing"; "there is little difference between the two approaches." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *49 (internal quotation marks & brackets omitted).

As set forth above, Plaintiff's claims in this matter arise from alleged conduct that is common to all the collective members and not based on "disparate factual and employment settings," nor subject to defenses that "appear to be individual to each plaintiff." Furthermore, the procedural and fairness considerations will be satisfied through due process considerations set forth in the Settlement Agreement; the putative class members will receive notice the settlement, which will include, among other things, an explanation of how the settlement funds will be distributed and how the class members may object to the settlement. Accordingly, , as the *Lusardi* factors are met, the FLSA class should be provisionally certified for settlement purposes.

### D.   The Court Should Preliminarily Approve the Proposed Settlement Under Rule 23.

In deciding a motion for preliminary approval of a Rule 23 class action settlement, a court considers whether: (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  *E.g.*, *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995); *In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 11-md-02284, 2013 U.S. Dist LEXIS 18332, at *7 (E.D. Pa. Feb. 11, 2013); *Curiale v. Lenox Grp.*, No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *26 (E.D. Pa. Nov. 14, 2008).[3] The

---

[3] The Third Circuit has adopted a more rigorous nine-factor test for final approval of class action settlements.  *GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). However, "the standard for preliminary approval is far less demanding." *Curiale*, 2008 U.S. Dist. LEXIS 92851, at *27 n.4 (internal quotation marks omitted).

presence of these factors "establishes an initial presumption of fairness." *GMC*, 55 F.3d at 785. *Accord, e.g., Imprelis*, 2013 U.S. Dist. LEXIS, 18332, at \*8.  All of these factors are present here.

First, the settlement negotiations here occurred at arm's length. Here, the Parties engaged in *two* private mediation sessions before the Honorable Diane M. Welsh, which culminated in an agreement only after the Parties reached an impasse at the end of the first session.

Second, there has been an extensive exchange of information between the Parties prior to mediation, as the case was extensively litigated prior to mediation.  Before mediation, the Parties had engaged in significant discovery, which including engaging in disputed motion practice related to discovery.  During discovery, Santander produced written policies regarding time-keeping systems and reporting requirements of BOMs, as well as parts of a time-study completed by the bank which covered its BOMs. This discovery enabled Plaintiff's counsel to evaluate the strengths and weaknesses of the claims and calculate estimates of class-wide damages.

Moreover, in anticipation of mediation, Santander produced significant pay and hour information for the collective and putative class.  Such information was critically analyzed in computing exposure and damages prior to mediation. Swidler Decl. ¶ 4.

Additionally, Plaintiff had previously successfully obtained conditional certification under the FLSA and had obtained some equitable tolling.

Thus, this is case which settlement was reached only after the Parties engaged in significant litigation and discovery, and one in which the Parties had a full understanding of the risks and benefits of continued litigation versus settlement.

Third, counsel for Plaintiffs have considerable experience and success in prosecuting, defending, and settling wage and hour claims, including Rule 23 class actions and FLSA collective actions. *See* Swidler Decl. ¶¶ 5-11; Mashel Decl. ¶ 2; *see also, e.g., Keller v. T.D. Bank, N.A.*, 2014

WL 5591033 *15 (E.D. Pa. 2014) (Restrepo, J.) (finding Swartz Swidler "has considerable experience handling class and collective action disputes.") *Salinas v. U.S. Xpress, Inc.*, 2018 WL 1477127, *6 (E.D. Tenn. 2018) ("Plaintiffs' counsel has substantial experience litigating complex wage and hour actions, including class actions and certified collective actions with tens of thousands of class members").

The recommendation of settlement by such experienced counsel is entitled to significant weight. *See, e.g., A*ustin v. Pa. Dep't of Corr., 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class"); *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) *citing Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481-82 (E.D. Pa. 1975) (finding that counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")e litigation and consequently far more able to weigh its relative strengths and weaknesses").

Fourth, there have thus far been no objections to the proposed settlement, though, candidly, that may be because notice has not yet been sent to putative class members; that awaits the Court's certification of a settlement class, as discussed above, and approval of the form of notice, as discussed below. Named Plaintiffs have expressed acceptance of the settlement.

In short, as the settlement was a product of arm's length negotiations, the negotiations followed the exchange of substantial discovery, the counsel involved are experienced with wage and hour collective and class action litigation, and the Plaintiffs have expressed their acceptance of the settlement, the Court should "apply an initial presumption of fairness" to the settlement and grant preliminary approval of same. *Warfarin*, 391 F.3d at 535. Considering the uncertainties and costs associated with protracted litigation, Santander has agreed to settle this action for a

significant amount - $4,250,000. The settlement amount represents a fair value of the attendant risks of litigation, even though recovery could be greater if this case was won at trial and survived through appeal. If Santander prevailed in its defenses to the Plaintiff's claims, the putative class would recover nothing. And it is well-settled that a settlement of a class action may be appropriate even where the settlement is only a fraction of the ultimate total exposure should the case be won at trial. *See Lenahan v. Sears, Roebuck & Co.,* 2006 U.S. Dist. LEXIS 60307, at *48 (D.N.J. 2006) (approving $15 million settlement when maximum exposure at trial may have been as high as $104 million because of the uncertainty of the final disposition of a trial).

### E.    The Court Should Approve the Proposed Settlement Under the FLSA.

The decision to approve the settlement of an FLSA collective action lies within the trial court's discretion. *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982). In exercising that discretion, the Court should be mindful of the strong presumption in favor of settlement. *E.g., Farris v. J.C. Penney Co.*, 176 F.3d 706, 711 (3d Cir. 1999); *Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284, at *3 (D.N.J. 2012).

#### 1.    The Proposed Settlement is a Fair and Reasonable Resolution of a *Bona Fide* Dispute.

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50 (citing *Lynn's*, 679 F.2d at 1354). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate guarantor of fairness. *Lynn's,* 679 F.2d at 1353-54; *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *51. If the proposed settlement reflects a "reasonable compromise of disputed issues," the court should approve the settlement.  *Lynn's*, 679 F.2d at 1354; *accord Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *52.

#### 2.    The Parties Have a *Bona Fide* Dispute.

15

The Parties' agreement settles several disputed legal and factual issues.

Plaintiff filed the action claiming that Santander discouraged and/or required its BOMs from reporting all their hours worked.  They further alleged that due to chronic understaffing of branches, BOMs could not complete their duties without work significant unreported overtime each workweek.  At all times, Santander has disputed its liability on these claims, asserted several substantive and procedural defenses to liability and, even assuming its liability, maintained that damages were limited.

Santander contended that it at all times maintained official written practices that required all BOMs to report all hours worked and contended that it paid all overtime as reported by its BOMs. Santander denied that it discouraged lawful overtime reporting and contended that it did not have any knowledge of company-wide off-the-clock work performed by BOMs.

Consequently, there are *bona fide* disputes between the Parties that were resolved through the arm's length mediated settlement.  *Bredbenner,* 2011 U.S. Dist. LEXIS 38663, at *50-52.

### 3.    The Proposed Settlement is Fair and Reasonable.

The terms of the proposed settlement are fair. As noted above, courts look to the adversarial nature of a case as an indicator of the fairness of the settlement. *Lynn's,* 679 F.2d at 1353-54; *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *50-51; *Clark v. Ecolab*, 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. 2010). The Parties' settlement negotiations also demonstrate fairness. The Parties engaged retired United States Magistrate Judge Diane M. Welsh, and engaged in two private mediation sessions.  Where the Parties attend private mediation with a competent and well-respected mediator, it is "virtually insure[d] that the negotiations were conducted at arm's length and without collusion between the parties." *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *30. *Accord, e.g., Castagna*, 2011 U.S. Dist. LEXIS 64218, at *14.

16

The settlement here carries other indicia of fairness.  Throughout the process, Plaintiff was represented by competent counsel experienced in wage-and-hour class litigation.  (Swidler Decl. § 5) (Mashel Decl. § 2). Plaintiff Sanchez did not agree to settle her individual claims as part of the proposed class settlement, and therefore there is not even an appearance that Plaintiff Sanchez utilized the class settlement to benefit the resolution of her individual claims. Furthermore, the settlement was consummated after substantial investigation, which included, *inter alia*, the production of a sample of class-wide time and payroll data, so that the parties were fully informed of the legal issues and evidence. Significantly, Plaintiff and the putative collective action members will receive the settlement money promptly, avoiding the risks and delay inherent in continued litigation. These factors clearly establish fairness. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *29-30, 50-52.

Accordingly, the proposed settlement is fair and reasonable.

### 4.    The Settlement is Consistent with Public Policy.

Like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlements, since "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."  *D.R. by MR. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997).

Here, the settlement is consistent with that policy because it resolves a pending case on more than 700 class members and avoids a jury trial and likely appeals.  Because the settlement represents a fair settlement of a *bona fide* dispute, public policy weighs heavily in favor of approval. *Id. See also Farris*, 176 F.3d at 711.

17

### F.   **The Service Payments Are Reasonable and Appropriate.**

Service payments are the norm in wage-and-hour class litigation. *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *64. Their purpose is to compensate representative plaintiffs "for the services they provided and the risks they incurred during the course of the litigation." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000). Plaintiff Sanchez here took risks as the Rule 23 and FLSA class representative. Her services included the filing of a hybrid collective/class action that provides a large group of current and former Santander employees with the opportunity to recover a portion of their allegedly unpaid compensation. Plaintiff Sanchez assisted counsel in investigating the claims and provided documents and information as part of the informal discovery the Parties engaged in prior to settlement negotiation.  Plaintiff Sanchez further attended the mediation (remotely).

The other representative Plaintiffs are: Rabia Ahmed, Andrea Blanchard, Pearl Monteiro, Shaunsey Jackson, Michelle Romano, Joni Henderson, and Peter Sano.

At the final approval stage, Plaintiff intends to seek Court approval for the payment of $10,000 to Plaintiff Sanchez and awards of $5,000 for the other representative Named Plaintiffs: Rabia Ahmed, Andrea Blanchard, Pearl Monteiro, Shaunsey Jackson, Michelle Romano and Joni Henderson. Settlement Agreement § 3.3. The Service Payments are well within the accepted range in this District as numerous courts have awarded service awards equal to or higher than those proposed here.  *See e.g., In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 282, 284 (3d Cir. 2009) ($10,000 service award); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663, at *68  ($10,000 for each representative plaintiff); *Henderson v. Volvo Cars of N. Am., LLC*, 2013 U.S. Dist. LEXIS 46291 (D.N.J. 2013) (six named plaintiffs received service award of either $5,000 or $6,000); *In*

*re Mercedes-Benz Tele Aid Contract Litig.*, 2011 U.S. Dist. LEXIS 101995, at *16-17 (D.N.J. 2011) ($5,000 to each representative plaintiff).

Because the amounts requested are well within the range routinely granted by courts within this district, it is respectfully request the Court preliminarily approve the service awards.

### G.    The Court should preliminarily approve the Class Counsel's fees and costs request.

Plaintiffs seek the Court approve Class Counsel a fee award representing 33 1/3% of the Gross Settlement Fund, totaling $1,416,666.   Plaintiffs further seek recover of documented litigation costs.

The final decision regarding the reasonableness of class counsel's fees and costs should be made during the Final Approval Hearing, following notice to class members and the objection period. The reasonableness of such fees and costs are better evaluated after such period, as this Court will be made aware of any objections by then and class counsel will spend a substantial amount of additional time and effort working on this matter from the date of the instant motion through the date of the Final Approval Hearing.

However, it is worth noting that the attorney's fees and costs in this matter are requested as a percentage of the settlement, which is the favored method for calculating attorney's fees in such cases. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006); *In re Prudential Ins. Co. America Sales Practice Litig. Agent*, 148 F.3d 283, 333 (3d Cir. 1998); *Court Awarded Attorney Fees, Report of Third Circuit Task Force*, 108 F.R.D. 237 (1985); *Bredbenner*, 2011 U.S. Dist. LEXIS 38663 at *52-53 (D.N.J. 2011) (common fund distribution for attorney's fees in hybrid FLSA/Rule 23 wage and hour case). The percentage-of-recovery method "is the prevailing methodology used by courts in this Circuit for

19

wage-and-hour cases." *Bredbenner*, 2011 U.S. Dist. LEXIS at *53 (citing *Chemi v. Champion Mortg.*, 2009 U.S. Dist. LEXIS 44860 (D.N.J. 2009)); *In re Janney*, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. 2009); *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307 (D.N.J. 2006).

Even in cases where statutory attorney's fees attach, such as in FLSA cases, the percentage-of-recovery doctrine is still the preferred manner to calculate attorney's fees. The lodestar method, whereby the attorney's time is multiplied by the reasonable hourly rate, remains *disfavored* because "regardless [of] how a total settlement structure is formally structured … every dollar given to class counsel means one less dollar for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir. 2001); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 821-22 (rejecting lodestar fee and directing that percentage-of-recovery should have been utilized even though the agreement for fees was ostensibly distinct from the agreement to pay class members because of "economic reality" of such arrangement).

In common fund cases, fee awards generally range anywhere from nineteen percent (19%) to forty-five percent (45%) of the settlement fund. *See In re Gen. Motors*, 55 F.3d at 822; *citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990).  Here, class counsel intends to request a fee of thirty-three and one-third percent (33 1/3%) of the settlement fund, totaling $333,333. This percentage is in line with what is routinely provided in such cases. *See, e.g. Bredbenner*, 2011 U.S. Dist. LEXIS at *60-61; *In re Safety Components, Inc. Sec. Litig.*, 166 F Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3% in common fund case and citing to ten cases from this Circuit holding the same).

Hence, while counsel will further substantiate this request prior to the Final Settlement Hearing (after any objections will be known), a preliminary determination that the fee request is fair is appropriate.

**H.**   **The Court Should Approve the Proposed Form of Notice and the Parties'**
**Notice Plan.**

To satisfy due process, notice to class members must be "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *LaChance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa. 1996) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The form of notice must be sufficient to accomplish this purpose in accordance with the dictates of Fed. R. Civ. P. 23(c)(2) and 23(e). Furthermore, "[a]lthough the notice need not be unduly specific … the notice document must describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs Prod. Liab. Litig.*, 369 F.3d 293, 308-10 (3d Cir. 2004) (internal quotations omitted). *Accord Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988).

Here, the form and method of the notices of the Parties' proposed settlement satisfies all due process considerations and meets the requirements of the Federal Rules of Civil Procedure. In particular, the Notice of Settlement, attached to Swidler Decl. as Ex. 1-B, provides detailed information about the settlement terms, including the claims being released, the amount to be paid, and how each settlement member's payment will be calculated. It also sets forth the amount to be requested in attorney's fees, costs, and service awards. In addition, the Notices provide information about the date for the Fairness Hearing, settlement class members' rights to object (and deadlines and procedures for objecting) or opt-out. Further, the Notices provide potential class members with contact information for the claims administrator and undersigned counsel.

The proposed notice procedure also satisfies due process considerations. The proposed notice procedure, including individualized mailing and emailing, as well as procedural safeguards

21

such as skip tracing for undelivered notices has been recognized as the best notice that practicably can be given to absent class members.  Settlement Agreement § 2.6; *see, e.g., Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175 (1974); *Lawson v. AT&T Mobility, LLC*, 687 F.3d 109, 123-24 (3d Cir. 2012); *In re Diet Drugs*, 369 F.3d at 308-310; *Grunin v. International House of Pancakes*, 513 F.2d 114, 121-22 (8th Cir. 1975). The forty-five (45) day deadline for opt-ing out, or objecting is generally acceptable. *See, e.g., Aboud v. City of Wildwood*, 2013 U.S. Dist. LEXIS 70083, at *23 (D.N.J. 2013) ("The court finds that a 45-day opt-in period is appropriate here"); *Arpi v. Sternbach Holdings, LLC*, 2012 U.S. Dist. LEXIS 183648, at *4 (S.D.N.Y. 2012) (45 days).

Accordingly, the form of the Notices and proposed notice procedures satisfy both due process and the requirements of Rule 23 and should be approved.

## IV.  CONCLUSION

Plaintiff respectfully requests that this Court grant her Motion: (1) to certify a settlement class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only; (2) to certify a FLSA collective action opt-in settlement class under 29 U.S.C. §216(b) for settlement purposes only; (3) for preliminary approval of the settlement as embodied in the attached Settlement Agreement with respect to the Rule 23 class claims; and (4) for preliminary approval of the settlement as embodied in the attached Settlement Agreement with respect to FLSA collective action claims.

Respectfully submitted.

| | |
|---|---|
| */s Stephan T. Mashel* | */s/ Justin L. Swidler* |
| Stephan T. Mashel, Esq. | Justin L. Swidler, Esq. |
| Amy Blanchfield | Richard S. Swartz, Esq. |
| **MASHEL LAW, L.L.C** | **SWARTZ SWIDLER, LLC** |
| 500 Campus Drive, Suite 303 | 1101 Kings Highway North, Ste. 402 |

22

Morganville, New Jersey 07751      Cherry Hill, NJ 08034
Phone: 732-536-6161              Phone: (856) 685-7420
Fax: 732-536-6165                Fax: (856) 685-7417

Date: January 28, 2022