UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CRYSTAL SANCHEZ, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SANTANDER BANK, N.A., a subsidiary of Santander Holdings, USA, Inc.; GHOUS AGHA, NADIA JOSEPH, KRISTEN RIMEK, JOHN & JANE DOE 1-10 <br><br> Defendants. | CIVIL ACTION NO: 3:17-CV-05775-PGS-DEA |

## PRELIMINARY SETTLEMENT AND RELEASE AGREEMENT

This Preliminary Settlement and Release Agreement (the "Agreement") is entered into by and between Plaintiff Crystal Sanchez ("Named Plaintiff" or "Plaintiff"), and on behalf of the class of individuals that they seek to represent (collectively, with Named Plaintiff, "Plaintiff") and Defendants Santander Bank, N.A. ("Santander"), Nadia Joseph ("Joseph"), and Kristen Rimek ("Rimek") (collectively "Defendants" and, together with Plaintiff, the "Parties").

**RECITALS**

**WHEREAS,** on November 11, 2017 Plaintiff filed a Second Amended Complaint, in which Plaintiff asserted representative claims against Santander for violations of the Fair Labor Standards Act ("FLSA") and New Jersey state wage and hour laws for allegedly failing to pay its Branch Operations Managers ("BOMs") for work allegedly performed off-the-clock, as well as asserting individual claims of sexual harassment, disability discrimination, retaliation, fraudulent inducement, promissory estoppel, and intentional infliction of emotional distress against Defendants arising out of her employment by Santander. The Second Amended Complaint is the currently operative complaint in the above-captioned case;

**WHEREAS,** on June 29, 2021 and November 12, 2021, the Parties engaged in mediation of the above-captioned case before the Hon. Diane M. Welsh (Ret.);

**WHEREAS,** the Parties stipulate and agree that, in order to effectuate settlement, Plaintiff will file a Third Amended Complaint, asserting the same claims and allegations contained in the Second Amended Complaint and to which she will include five additional putative state law class claims against Santander, alleging violations of Pennsylvania, New York, Connecticut, Massachusetts, and New Hampshire wage and hour laws, for allegedly failing to pay its BOMs for work allegedly performed off-the-clock, which will become the operative complaint in the above-

captioned case (the "Litigation"). The Second Amended Complaint and soon-to-be-filed Third Amended Complaint are referred to hereafter jointly as the "Complaint";

**WHEREAS**, the Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. Sec. 216(b), and class certification pursuant to Fed. R. Civ. P. 23 (a) and (b)(3) are met. Should this Settlement not become final, such stipulation to class certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

**WHEREAS**, the purpose of this Agreement is to settle fully and finally all claims as set forth in Section 4 of this Agreement, including all claims asserted in the Litigation and those claims that could have been so asserted under the FLSA or the state laws cited in the Complaint through December 31, 2021, relating to the non-payment of overtime wages to individuals employed in the position of BOM at Santander have filed a consent to join the Sanchez Action and has performed compensable work as a Branch Operations Manager during at least one Eligible Work Week; or did not previously file a consent to join the Sanchez Action and has performed compensable work as a Branch Operations Manager during at least one Eligible Work Week in the applicable class period in New Jersey or New York, from June 29, 2015, or worked in Massachusetts, Pennsylvania, Connecticut, or New Hampshire, from September 8, 2017 or worked in Rhode Island from September 8, 2018, and who have not opted out of the Settlement, in addition to Plaintiff's individual claims against Defendants.

**WHEREAS**, Defendants deny all of the allegations made by Plaintiff in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, so as to avoid the burden, expense, and uncertainty of continuing the Litigation; and

**WHEREAS**, Plaintiff's Counsel analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to Santander's compensation policies and practices, reviewed emails, and analyzed payroll data, took several depositions, filed multiple motions, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiff's Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Plaintiff and the putative class and collective.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions.

1. **DEFINITIONS**

   The defined terms set forth in this Agreement have the meanings ascribed to them below.

   1.1  "Acceptance Period" means the 120-day period that an Eligible Settlement Class Member has to sign and cash a Settlement Check after it is postmarked.

   1.2  "Branch Operations Manager" or "BOM" means those persons employed by Santander as a Branch Operations Managers in the United States.

   1.3  "Class Counsel" or "Plaintiff's Counsel" means Swartz Swidler, LLC and Mashel Law, LLC.

   1.4  "Court" means the United States District Court for the District of New Jersey.

   1.5  "Defendants" means Santander Bank, N.A., Nadia Joseph, and Kristen Rimek.

   1.6  "Defendants' Counsel" means Holland & Knight, LLP.

   1.7  "Eligible Settlement Class Member" means any and all current and former employees employed by Santander in the position of Branch Operations Manager who:

   1.7.1  have filed a consent to join the Litigation and has performed compensable work as a Branch Operations Manager during at least one Eligible Work Week, as defined in Section 1.8 ("Opt-Ins"); or

   1.7.2  did not previously file a consent to join the Litigation and has performed compensable work as a Branch Operations Manager during at least one Eligible Work Week, as defined in Section 1.8.

   1.8  "Eligible Work Week" means any and all weeks during which an Eligible Settlement Class Member:

   1.8.1  For any individual who filed a consent form to join the lawsuit as an FLSA collective member, the earlier of: (a) three years before the individual filed a consent to join form in the Action; or (b) June 29, 2015 for collective members who worked at least one work week as a BOM in New Jersey and New York; September 8, 2017 for collective members who worked at least one work week as a BOM in Massachusetts, Pennsylvania, Connecticut, or New Hampshire; or September 8, 2018 for collective members who worked at least one work week as a BOM in Rhode Island.

   1.8.2  For any individual who did not file a consent to join the lawsuit as an FLSA collective member: June 29, 2015 for Eligible Class Members who worked at least one workweek as a BOM in New Jersey and New York; September 8, 2017 for Eligible Class Members who worked at least one work week as a BOM in Massachusetts, Pennsylvania, Connecticut, or New Hampshire; or September 8,

    2018 for Eligible Class Members who worked at least one work week as a BOM in Rhode Island.

    For an Eligible Class Member who is currently working as a BOM and worked the final work week in 2021, the final Eligible Work week shall be the final work week of 2021.

1.9  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation, including FICA, FUTA and SUTA obligations.

1.10  "Fairness Hearing" means the hearing on the Motion for Judgment and Final Approval.

1.11  "Gross Settlement Amount" means four million two hundred fifty thousand dollars ($4.25 million), which is the maximum amount that Santander has agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Participating Settlement Class Members; the cost of settlement administration; any Court-approved Service Awards; and the Reserve Fund. Santander will not be required to pay any more than the gross total of four million two hundred fifty thousand dollars ($4.25 million).

1.12  "Last Known Address" or "Last Known Addresses" means the most recently recorded personal mailing address for an Eligible Settlement Class Member as shown in Santander's records.

1.13  "Last Known E-mail Address" or "Last Known E-mail Addresses" means the most recently recorded personal and work e-mail address for an Eligible Settlement Class Member as shown in Santander's records.

1.14  "Last Known Telephone Number" or "Last Known Telephone Numbers" means the most recently recorded personal mobile or home telephone number for an Eligible Settlement Class Member as shown in Santander's records.

1.15  "Litigation" or the "Lawsuit" or the "Action" mean the lawsuit entitled *Crystal Sanchez, et al. v. Santander Bank, N.A.*, United States District Court for the District of New Jersey, Case No. 3:17-cv-05775-PGS-DEA. "Complaint" means the Second Amended Complaint dated November 11, 2017, that was filed by Plaintiff in this Action, in addition to Third Amended Complaint that will be filed by Plaintiff pursuant to this Agreement.

1.16  "Named Plaintiff" means Crystal Sanchez.

1.17  "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions, payments, or allocations for: (a) the Settlement Administrator's fees and costs; (b) Court approved attorneys' fees and costs for Plaintiff's Counsel; (c) any Court-approved Service Awards; and (d) the Reserve Fund.

1.18  "Order Granting Final Approval" or "Approval Order" means an order to be approved and entered by the Court, which gives final approval to the Settlement and this Agreement, and

enters final judgment, in a form substantially similar to the Proposed Approval Order and Judgment Approving Settlement, to be prepared by the Parties.

1.19 "Order Granting Preliminary Approval" means the Order entered by the Court preliminarily approving, *inter alia*, the approval of a settlement class, the terms and conditions of this Agreement, the manner and timing of providing notice to the Class, and the time period for opt-outs and objections.

1.20 "Participating Settlement Class Members" means each Eligible Settlement Class Member, including any Named Plaintiff, who timely signs and cashes a Settlement Check.

1.21 "Parties" collectively means the Named Plaintiff and Defendants.

1.22 "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Administrator from the Gross Settlement Amount paid by Santander. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Order(s). Interest, if any, earned on any monies in the QSF will become part of the Net Settlement Fund.

1.23 "Releasees" means Santander and each and all of its affiliates, parents, subsidiaries, predecessors, successors, employees and agents.

1.24 "Reserve Fund" means a fund in the amount of twenty-thousand dollars ($25,000.00), allocated from the Gross Settlement Amount, that the Settlement Administrator may use, with approval from the Parties (which will not be unreasonably withheld), to make payments to Eligible Class Members who dispute their allocation amounts.

1.25 "Settlement" means the settlement between the Parties embodied and contained in this Agreement.

1.26 "Settlement Administrator" means the Settlement Administrator to be jointly selected by the Parties.

1.27 "Settlement Agreement" or "Agreement" means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

1.28 "Settlement Check" means the check issued to Eligible Settlement Class Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement.

1.29 "Settlement Hearing" means a hearing set by the Court for the purpose of finally (a) determining the fairness, adequacy and reasonableness of the Agreement; and (b) entering Judgment.

1.30 "Settlement Notice" means the documents entitled Notice of Settlement (for Opt-Ins) and Notice of Settlement and Opportunity to Join Collective Action (for Non-Opt-Ins), to be

approved by the Court in a form substantially similar to the Notices attached hereto as Exhibit A.

## 2. APPROVAL AND NOTICE TO ELIGIBLE SETTLEMENT CLASS MEMBERS

2.1 Binding Agreement. This Agreement is a binding agreement, pending approval of the Court, and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2 Duties of the Settlement Administrator. The Settlement Administrator will be responsible for establishing a QSF account; allocating funds from the Gross Settlement Amount for the Reserve Fund; preparing and mailing the Settlement Notices to Eligible Settlement Class Members; preparing and mailing Settlement Checks; distributing approved Service Awards and attorneys' fees and expenses; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; retaining and providing a copy of the Settlement Checks signed by the Participating Settlement Class Members to Defendants' Counsel; and preparing a declaration describing all duties performed and claims administration statistics.

2.3 The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement except as excluded in section 2.6.1. The Settlement Administrator shall provide such information to counsel for either Party upon request. The Settlement Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notices to Eligible Settlement Class Members, the claims administration process, and distribution of the Settlement Checks.

2.4 Defendant agrees to cooperate with the Settlement Administrator, provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and assist the Settlement Administrator in locating Eligible Settlement Class Members. The Parties agree that it is their mutual goal to maximize participation in the settlement.

2.5 Within 60 days of the execution of this Agreement, Plaintiff will submit to the Court a Motion for an Order Preliminarily Approving the Class Action Settlement and the Proposed Notice of Settlement of the Class Action Lawsuit and Fairness Hearing (the "Motion for Preliminary Approval"). If the Court denies the Motion for Preliminary Approval, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement and/or (b) either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

### 2.6 Class Notice.

**2.6.1** Within thirty (30) calendar days of the date Plaintiff files the Motion for Preliminary Approval, Santander shall give the Settlement Administrator a list, in electronic form, of the names, Last Known Addresses, Last Known E-mail Address, Last Known Telephone Numbers, social security numbers, locations worked and Eligible Work Weeks for each Eligible Settlement Class Member ("Class List").

**2.6.2** Within the later of: fifteen (15) calendar days of the Order Granting Preliminary Approval, or within 15 Calendar days after receiving the information described in Section 2.6.1, the Claims Administrator shall mail, via First Class United States mail, postage prepaid, and email, the Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing in the draft form attached as Exhibit A, to all Eligible Class Members using each individual's last known address and email as recorded in Santander's records. The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and shall attempt re-mailings as described below. The Claims Administrator shall notify Class Counsel and Defendants' Counsel of any mail sent to Class Members that is returned as undeliverable after the first mailing as well as any such mail returned as undeliverable after any subsequent mailing(s).

### 2.7 Class Member Opt-Out.

**2.7.1** Any Eligible Settlement Class Member may request exclusion from the Class by "opting out." Additionally, any Eligible Class Member who signed a consent form to opt-in to the collective action filed pursuant to the FLSA may withdraw their consent to participate in the collective action. Class Members who choose to do so must mail a written, signed statement to the Claims Administrator that he or she is opting out of the monetary portion of the Settlement ("Opt-Out Statement"). To be effective, such Opt-Out Statements must be sent via First Class United States Mail and postmarked by a date certain to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which will be thirty (30) calendar days after the Claims Administrator mails the Notice. The 30 day period will begin to run from the first mailing, except for those Class Members whose first mailing was returned to the Claims Administrator as undeliverable, in which case the 30 day period for any such Class Member will begin to run from the date of the second mailing (or, if there are more than 2 mailings, the final mailing) to such Class Member. The end of the "Opt-Out Period" shall be thirty (30) calendar days after the last day on which the Claims Administrator makes a mailing. The Claims Administrator shall, within ten (10) calendar days after the last day on which it makes such a mailing, notify Class Counsel and Defendants' Counsel in writing by email and overnight delivery of the precise date of the end of the Opt-Out Period.

**2.7.2** The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve copies of each Statement on Class

Counsel and Defendants' Counsel not later than three (3) calendar days after receipt thereof. The Claims Administrator also shall, within three (3) calendar days of the end of the Opt-Out Period, file with the Clerk of Court, stamped copies of any Opt-Out Statements. The Claims Administrator shall, within 24 hours of the end of the Opt-Out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendants' Counsel by both email and overnight delivery. The Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Stipulation.

**2.8    Objections to Settlement.**

    **2.8.1** Eligible Settlement Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be sent to the Claims Administrator via First-Class United States mail, postage prepaid, and be received by the Claims Administrator by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which shall be for each Class Member thirty (30) calendar days after the Claims Administrator mails such Notice to such Class Member. The Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email and overnight delivery not later than three (3) calendar days after receipt thereof. The Claims Administrator shall also file the date-stamped originals of any and all objections with the Clerk of Court within three (3) calendar days after the end of the Opt-Out Period.

    **2.8.2** An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any time. Any Class Member who has submitted an Opt-Out Form may not submit objections to the settlement.

    **2.8.3** The Parties may file with the Court written responses to any filed objections not later than fourteen (14) calendar days before the Fairness Hearing.

**2.9    Entry of Order.** At the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter an Order in accordance with this Agreement; (b) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted out; and (c) dismiss the Litigation with prejudice.

**2.10** By 30 days after the conclusion of the Fairness Hearing, Plaintiff's Counsel shall file a Motion for Order Granting Final Approval of the Class and Collective Action Settlement, along with all attorney's fees, costs, service payments, and all related relief.

2.11 Settlement Checks will be mailed, via First Class United States mail, postage prepaid, to Eligible Settlement Class Members by the Settlement Administrator no later than thirty-five (35) calendar days after the Order Granting Final Approval is entered and no appeal of the Order Granting Final Approval is filed. If there is an appeal of the Approval Order by any person, Settlement Notices and Settlement Checks shall not be sent until all appeals are decided and the Settlement remains finally approved.

2.12 Settlement Checks issued pursuant to this Agreement shall expire one-hundred (180) calendar days after they are postmarked. If a Settlement Check has not been cashed by any Eligible Settlement Class Member within thirty-five (35) calendar days after it is postmarked, the Settlement Administrator shall send a letter or postcard, and email to the Eligible Settlement Class Member inquiring whether they received the Settlement Check and reminding them of the expiration of the Acceptance Period. After the Acceptance Period expires, the Settlement Administrator will issue a stop payment order on all uncashed or returned checks. In the event an Eligible Settlement Class Member reports a lost or destroyed Settlement Check within the Acceptance Period, the Settlement Administrator shall issue a stop payment order on the original check and issue a new check. In no event shall an Eligible Settlement Class Member be issued a replacement check until any prior check sent to them has been cancelled.

2.13 Thirty (30) calendar days before the close of the Acceptance Period, the Settlement Administrator shall generate and provide Plaintiff's Counsel with a list of the names for all Eligible Settlement Class Members who have not signed and cashed a Settlement Check. Within ten (10) calendar days after such date, the Class Administrator send a letter to these Eligible Settlement Class Members reminding them of the deadline. The Claims Administrator will work with counsel for the Parties to re-issue any checks that are lost or damaged. If any settlement checks have not been cashed by the 120-day period, those remaining amounts shall be handled in accordance with section 3.1(c) of this Agreement.

2.14 The Settlement Administrator shall take all reasonable steps to obtain the correct address of Eligible Settlement Class Members for whom the Settlement Notice is returned by the United States Postal Service as undeliverable and shall make all reasonable attempts to ensure that the Settlement Notice and Settlement Check are successfully delivered. The Settlement Administrator will notify Plaintiff's Counsel and Defendants' Counsel of any mailing sent to any Eligible Settlement Class Member that is returned as undeliverable. To the extent any such mailing is returned as undeliverable, that Eligible Settlement Class Member shall be permitted the greater of the balance of the remaining Acceptance Period or thirty (30) calendar days from any re-mailing of the Settlement Notice to sign and cash their Settlement Check. The Settlement Administrator shall issue a stop-payment order on all returned checks.

2.15 If within thirty (30) calendar days after the close of the Acceptance Period an Eligible Settlement Class Member reports a lost or destroyed check, and informs the Settlement Administrator that she or he did not receive a check or otherwise requests reissuance of her or his Settlement Check, the Settlement Administrator shall reissue a check to the Eligible Class Member provided that the Settlement Class Member's funds have not been turned

over to the State Controller fund. Reissuance to a given Eligible Settlement Class Member will not require reissuance to any other Eligible Settlement Class Member.

2.16 After following the procedure above in Sections 2.12-2.15, if a Settlement Check is not cashed within 180 days of payment, it shall be paid to the State Controller Fund in the name of the absent Class Member.

2.17 Plaintiff's Counsel and Defendants' Counsel have the right to make inquiries and receive any information from the Settlement Administrator related to the claims administration process. The Settlement Administrator will periodically update Plaintiff's Counsel and Defendants' Counsel regarding returned mailings for which it is unable to obtain corrected addresses.

2.18 Retention/Filing of Copies of Settlement Checks. The Settlement Administrator shall on a weekly basis compile and transmit to Defendants' Counsel and Plaintiff's Counsel statistics on the number of individuals who have signed and cashed Settlement Checks. At the end of the Acceptance Period, the Settlement Administrator shall provide copies of signed and cashed checks to Plaintiff's Counsel and Defendants' Counsel. Santander shall file with the Court a summary list of the Participating Settlement Class Members.

2.19 Effect of Court Failure to Approve Settlement. In the event that the Court fails to approve the Settlement and/or this Agreement, the Parties (a) must attempt to renegotiate the Settlement for the purpose of obtaining Court approval of a renegotiated Settlement and Agreement and/or (b) either or both Parties may seek reconsideration or appellate review of the decision denying approval of the Settlement or Agreement. In the event reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement modification is not approved, and the Parties decide to forego further negotiation of a settlement, the Litigation will proceed as if no settlement had been attempted. In that event, nothing in the Settlement or Agreement may be used by or against any Party under Rule 408 of the Federal Rules of Evidence.

3. **SETTLEMENT TERMS**

3.1 **Settlement Payments.**

(A) Santander agrees to pay up to a gross amount of four million two hundred fifty thousand dollars ($ 4.25 million), which shall fully resolve and satisfy any and all amounts to be paid to Eligible Settlement Class Members, any Court-approved Service Awards as more fully set forth herein, the Reserve Fund, the Settlement Administrator's fees and costs and any claim for attorneys' fees and costs. Santander will not be required to pay more than this amount under the terms of this Agreement.

(B) Within thirty (30) calendar days of the Order Granting Final Approval, Santander shall deposit the Gross Settlement Amount into the QSF.

(C) Any portion of the Net Settlement Fund that is unclaimed by Eligible Settlement Class Members who do not timely sign and cash their Settlement Check, or that otherwise remains in the QSF or under the control of the Settlement Administrator upon the final accounting of the settlement funds, shall be paid to the State Controller Fund in the name of the absent Class Member, if such Settlement Check is not cashed within 180 days of issuance.

(D) The final accounting and donations shall occur no later than two hundred fifty (250) calendar days after the last Settlement Check is mailed.

## 3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.

(A) In their Motion for Order Granting Final Approval, Plaintiff's Counsel may ask the Court to approve payment of up to one-third (1/3) of the Gross Settlement Amount as an award of attorneys' fees. In addition, Plaintiff's Counsel shall seek reimbursement of reasonable actual case-related costs and expenses from the Gross Settlement Amount. These amounts shall constitute full satisfaction of any claim for attorneys' fees or costs, and Plaintiff agrees that she shall not seek, nor be entitled to, any additional attorneys' fees or costs under any theory or from any source, incurred in relation to this case, for any collective or putative class claims.

## 3.3 Service Awards to Certain Plaintiffs.

(A) In their Approval Motion, Named Plaintiff will apply to the Court to receive $10,000.00 from the Gross Settlement Amount for the services she rendered to the Collective and the Class.

(B) In their Approval Motion, any state class claim representative may apply to the Court to receive a service payment of up to $5,000.00.

(C) If these amounts are reduced, the amount by which the Service Awards are reduced will be allocated to the Net Settlement Amount.

## 3.4 Distribution of Payments.

(A) The payments from the Gross Settlement Amount to Plaintiff's Counsel for any Court-approved attorneys' fees and costs will be wired to Plaintiff's Counsel Mashel Law, LLC and Swartz Swidler, LLC, pursuant to the allocation agreed to by Plaintiff's Counsel by the Settlement Administrator thirty-five (35) calendar days after the Order Granting Final Approval is entered. However, if there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided.

(B) The Settlement Checks will be mailed to Eligible Settlement Class Members by the Settlement Administrator along with the Settlement Notices in accordance with Section 2.11. However, if there is an appeal of the Order Granting Final Approval by any person, no payments under this Section shall be made until all appeals are

decided. If there is an appeal of the Approval Order by any person, no payments under this Section shall be made until all appeals are decided.

(C) Service Awards, allocated from the Gross Settlement Amount, shall be paid to the Named Plaintiff from the QSF by the Settlement Administrator within thirty-five (35) calendar days after the Order Granting Final Approval is entered.

(D) The allocation to Eligible Settlement Class Members for their Settlement Checks will be made from the Net Settlement Fund. The estimated proportionate share of the Net Settlement Fund for each Eligible Settlement Class Member will be determined by the Settlement Administrator pursuant to the following formula:

To calculate the proportionate share for which each Eligible Settlement Class Member is eligible:

(1) Add all weeks worked by all Eligible Settlement Class Members during the Relevant Period to obtain the "Total Denominator;"

(2) Divide the number of weeks worked for each individual Eligible Settlement Class Member by the Total Denominator to obtain each individual's "Percentage of the Net Settlement Fund;" and

(3) Multiply each individual's Percentage of the Net Settlement Fund by the Net Settlement Fund to determine each Eligible Settlement Class Member's potential "Settlement Award."

(E) To effectuate the terms of the Settlement and to correct for mathematical or factual errors in the allocation to Eligible Settlement Class Members, the Settlement Administrator will also allocate Twenty-Five Thousand ($25,000) from the Gross Settlement Amount to create a Reserve Fund, which the Settlement Administrator may use, with approval from the Parties, to make payments to Eligible Class Members who dispute their allocation amounts, to individuals who were not identified as Class Members but have a good faith claim for participation, or for any other reasonable purpose necessary to effectuate the Settlement.

(F) Tax Characterization of Payments.

(1) For tax purposes, 50% of the payment to an Eligible Settlement Class Member pursuant to this Section 3.4 shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages and other non-wage relief.

(2) Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages shall be made without

withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Settlement Checks and Service Awards and issuing IRS Forms W-2 and Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding, and be reported to the IRS and to each payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099. Any Service Award pursuant to Section 3.3 shall be deemed non-wage compensation in its entirety.

(3) The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Participating Settlement Class Member receiving a Settlement Check or Service Award. Santander makes no representations, and it is understood and agreed that Santander has made no representations, as to the taxability of any portions of the settlement payments to any Participating Settlement Class Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiff. The Settlement Notices will advise Eligible Settlement Class Members to seek their own tax advice prior to acting in response to that Settlement Notice. Neither Plaintiff's Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

(4) None of the amounts paid to the Named Plaintiff or Participating Settlement Class Members shall create any credit for, be included in, or otherwise affect the calculation or the accrual of any employee benefits in any plans, programs, agreements or policies sponsored, maintained or contributed to by Santander, including for purposes of any bonus of any kind.

## 4. RELEASE OF CLAIMS

4.1 All Eligible Settlement Class Members who did not opt-out, upon the Court's Order Entering Final Approval, waive, release, and forever discharge any claim he or she has or may have from the beginning of time through December 31, 2021, against Santander, and its/their affiliates, parents, subsidiaries, predecessors, successors, employees and agents, whether known or unknown, as asserted in this case or that could have been so asserted in this case, under the FLSA or state wage and hour laws, based on the allegations in the complaint, that accrued while the Eligible Settlement Class Member worked for Santander as a Branch Operations Manager, including any claims for non-payment or improper payment of overtime compensation under any federal, state, or local law or regulation or common law, including but not limited to claims under the federal Fair Labor Standards Act and the wage and hour laws of, New Jersey, Connecticut, Massachusetts, New Hampshire, Pennsylvania, Rhode Island and/or New York relating to their employment at Santander as Branch Operations Managers. This includes claims for liquidated damages,

attorneys' fees, costs, and expenses. This release specifically includes the release of any and all claims for unpaid work performed under the Massachusetts Wage Act and the Massachusetts Minimum Wage Law, M.G.L. Ch. 149 and M.F.L. Ch. 151 et al. based on the allegations plead in the operative complaint. Additionally, it releases any and all claims for liquidated damages, attorneys' fees, costs, and expenses.

4.2 The release provided in this Agreement explicitly carves out and does not release the individual pendent state law claims under the New Jersey Law of Discrimination, New Jersey Conscientious Protection Act, and claims for worker's compensation retaliation, fraud, promissory estoppel, and intention infliction of emotional distress as plead by Plaintiff Crystal Sanchez in the Second Amended Complaint.

4.3 By signing the Agreement, Named Plaintiff becomes a party to the Agreement.

## 5. VOIDING THE AGREEMENT

5.1 If the Court rejects the Settlement and/or this Agreement, fails to approve and enter the Order Granting Final Approval in the form submitted by the Parties, or fails to enter a Final Judgment, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions expressly stated in this Agreement to survive, and Santander shall have no obligations to make any payments under the Settlement or this Agreement.

5.2 In the event that the Agreement is not approved by the Court or if there is no Order Granting Final Approval, the Parties shall resume the Litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement, and the approval of any settlement class for purposes of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated *nunc pro tunc*.

## 6. LIMITED CONFIDENTIALITY

6.1 The Parties and their respective counsel will not issue any public statement, press release, website postings, social media posting, or press outreach disclosing the identities of the Defendants. If contacted by the media at any time, the Parties and Counsel will say only that, "The Parties have worked together to reach a fair resolution of this dispute" or words to that effect. Notwithstanding, Plaintiff's Counsel may continue to operate and distribute publicly available information in a form to be agreed upon by the parties and counsel on Plaintiff's counsel's website (www.swartz-legal.com).

## 7. PARTIES' AUTHORITY

7.1 The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 8. MUTUAL COOPERATION

8.1   The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, Plaintiff's Counsel shall, with the assistance and cooperation of Defendants and their counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 9. NOTICES

9.1   Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiff and/or Settlement Class:

Justin L. Swidler
Richard Swartz
Swartz Swidler, LLC
1101 Kings Highway N, Ste. 402
Cherry Hill, New Jersey 08034
Telephone: (856) 685-7420
Email: jswidler@swartz-legal.com
           rswartz@swartz-legal.com

Stephan T. Mashel
Amy C. Blanchfield
Mashel Law, LLC
500 Campus Drive, Suite 303
Morganville, New Jersey 07751
Telephone: (732) 536-6161
Email: smashel@mashellaw.com
           ablanchfield@mashellaw.com

To Defendants:

Christina T. Tellado
Valerie Brown
Holland & Knight LLP
Cira Centre
2929 Arch Street, Suite 800

>Philadelphia, PA 19104
>Telephone: (215) 252-9600
>Email: Christina.Tellado@hklaw.com
>Valerie.Brown@hklaw.com

**10.    NO ADMISSION OF LIABILITY**

10.1   Defendants deny all of the allegations made by Named Plaintiff in the Litigation and deny that they are liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

**11.    INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

10.1   <u>Further Acts</u>. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

10.2   <u>No Assignment</u>. Plaintiff's Counsel and Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action, and any attempt to do so shall be of no force or effect.

10.3   <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

10.4   <u>Binding Effect</u>. This Agreement shall be binding upon the Parties and, with respect to Plaintiff, her spouse, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

10.5   <u>Arms' Length Transaction; Materiality of Terms</u>. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

10.6   <u>Captions</u>. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

10.7   <u>Construction</u>. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this

Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

10.8 <u>Governing Law</u>. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New Jersey, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

10.9 <u>Continuing Jurisdiction</u>. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

10.10 <u>Waivers, etc. to Be in Writing</u>. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

10.11 <u>Notice</u>. The Settlement Notices will advise all Eligible Settlement Class Members of the binding nature of the release and that by not opting out of the settlement, they are bound by the release provisions in this Agreement.

10.12 <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

10.13 <u>Facsimile, Electronic and Email Signatures</u>. Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

10.14 <u>Signatories</u>. This Agreement is valid and binding if signed by Santander's authorized representative, and the Named Plaintiff Crystal Sanchez.

*[The remainder of this page is intentionally blank]*

WE AGREE TO THESE TERMS.

Dated: January 21, 2022                           SANTANDER BANK, N.A. for DEFENDANTS:

                                    By:    *Michael Pagano*

                                    Its:   Sr. Director, Employee Relations

Dated: Jan 19, 2022                               PLAINTIFF CRYSTAL DOMINGUEZ
                                                  F/K/A CRYSTAL SANCHEZ

                                    By:    Crystal Dominguez (Jan 19, 2022 15:51 EST)

APPROVED AS TO FORM AND CONTENT

Dated: January 20, 2022              By:   _____
                                           JUSTIN SWIDLER
                                           SWARTZ SWIDLER LLC
                                           On Behalf of Class Counsel and Counsel for PLAINTIFF

Dated: January 19, 2022              By:   _____
                                           STEPHAN T. MASHEL
                                           MASHEL LAW, LLC
                                           On Behalf of Class Counsel and Counsel for PLAINTIFF

Dated: January 28, 2022              By:   _____
                                           CHRISTINA T. TELLADO
                                           HOLLAND & KNIGHT, LLP
                                           On Behalf of Counsel for DEFENDANTS Santander
                                           Bank, N.A., Nadia Joseph, and Kristen Rimek

-18-